# IN THE UNITED STATE DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 1 8 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | C. A. No.  H-05-1268 |
| ANTHONY MERCIER, SR., ANTHONY MERCIER, JR., CHARLES MERCIER, and MERCIER INSURANCE AGENCY, INC., | § § § § § § | |
| Defendants. | § | |

## DEFENDANTS' REPLY TO "PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO *RULE 12(B)(2) or 12(B)(3)*

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff[1] in its Response for the first time in this lawsuit alleges that personal jurisdiction is proper because the Merciers supposedly "directed" fraudulent conduct toward Plaintiff in Texas.    The Merciers directed no conduct, fraudulent or otherwise, toward Plaintiff or Texas.    The Merciers sold life insurance for Old Line Life Insurance Company("Old Line) and All American Life Insurance Company ("All American")[2], two foreign corporations, not American General Life Insurance Co.  Plaintiff is the Plaintiff in

---

[1] American General Life Insurance Company is Plaintiff.  It called itself "AGLIC" in its Complaint (Complaint, first paragraph).  The Merciers therefore, in their Motion to Dismiss, referred to Plaintiff as "AGLIC". In Plaintiff's Response to Defendants' Motion to Dismiss, Plaintiff now calls itself "American General Life." Plaintiff in its Response also refers to other "American General" entities.  To avoid confusion, the Merciers will refer to Plaintiff as "Plaintiff."

[2] The Merciers did little or nothing with All American after 2001.  Tony Mercier, Sr. Could not even find any life insurance policies issued for All American. (App., p.80, ¶24) Therefore, the Merciers will mention only Old Line in this Reply, but all discussion is just as applicable to All American.

this case only because it allegedly assumed Old Line's obligations after the Merciers' last sales for Old Line.

## Summary

Plaintiff, without offering a shred of evidence, accuses the Merciers of "a multi-million dollar fraud" consisting of sending to Old Line applications for life insurance which contained false statements, the Merciers allegedly knowing they were false. The Merciers deny all such allegations under oath.[3] While Plaintiff's allegations are harsh and outrageous, it is not the only time Plaintiff has made such allegations. The Complaint is apparently a form complaint used by Plaintiff against former agents. (*See* Tab A, Ex. A-5, attached hereto, for a substantially identical complaint against an unrelated agent.)

Plaintiff attempts to blur the distinction between various companies owned by American International Group, Inc., and seems to assert that they are all the same and transactions with one are transactions with all. They are not the same. (App. pgs. 2-4, 41-64, 65)) They are separate corporations, and none is a party to this lawsuit (except Plaintiff).

I.      **Plaintiff has not established a basis for specific personal jurisdiction.**

A.      *Plaintiff has not proved a prima facie case that the Merciers*

1.      *had substantial contacts with Texas*

2.      *during which they purposefully directed tortious actions toward Texas*

3.      *knowing that they would harm Old Line in Texas, and*

4.      *that Old Line was injured in Texas.*

B.      *Plaintiff has not shown that the Merciers had substantial or continuous systematic contacts with Texas to establish general jurisdiction.*

C.      *Fair play and substantial justice call for denial of jurisdiction.*

---

[3] The Merciers' Appendix attached hereto (Tabs A-E) contains evidence addressing Plaintiff's allegations.

**D.** **Plaintiff makes no showing at all for personal jurisdiction over Tony Mercier, Jr. or Mercier Insurance Agency.**

**II.** **The R.I.C.O. statute provides no basis of jurisdiction or venue because due process requires that under *§1965(b)* venue be proper in the Southern District as to one defendant under *§1965(a),* and venue is not proper as to any of the Merciers under *§1965(a).***

**III.** **Venue is not proper because a substantial part of the cause of action did not arise in Texas.**

**I.A. (Restated):** *For specific jurisdiction, Plaintiff was required to prove, but did not prove that the Merciers purposefully performed significant tortious conduct in Texas giving rise to Plaintiff's cause of action.*

Due process requires that a defendant's conduct and connections to the forum state are such that the defendant could "reasonably anticipate being haled into court" there to answer for his conduct. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct 1482, 1487 (1984); *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct 2181, 2183.

In order to hold an out-of-state resident to Texas jurisdiction in a tort case, the defendant must have purposefully directed tortious actions at the allegedly harmed party in the forum state, knowing that the allegedly harmed party would suffer significant harm in the forum state. *Burger King*, 471 U.S. at 472, 105 S.Ct at 2182; *Calder v. Jones*, 465 U.S. at 789-790, 104 S.Ct. at 1487. These intentional tortious activities must be significant. The fact that a defendant performs an intentionally wrongful act and that harm in the forum state is "foreseeable" is not enough. *Burger King*, 479 U.S. at 474; *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3rd 865, 868, 869 (5ᵗʰ Cir. 2001) – allegations that "defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident" does not establish sufficient minimum contacts; *Wilson v. Belin,* 20 F.3rd 644, 648 (5ᵗʰ Cir 1994) - libel published in Texas, held; no personal jurisdiction over non-resident defendants who spoke the alleged libel to a Texas

reporter, in part because the defendants did not write the story and plaintiff was not a Texas resident; that a tort was committed "in whole or in part in Texas" is not dispositive; *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772-773 (5th Cir. 1988) - tortiously interfering with a contract with a Texas resident plaintiff was insufficient for personal jurisdiction in part because there was no evidence that defendant aimed his tortious activities at Texas, or knew that the brunt of plaintiff's injury would be felt there; *Michiana Easy Livin' Country, Inc. v. Holten*, No.04-0016, Slip Op. p. 15, 16 (Tex. 2005) (App. 5,19-20).

The defendant's conduct toward the forum state must be more than "random," "fortuitous" or "attenuated." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478 (1984) Defendant must have "purposefully availed" himself of the benefits and protections of the forum state. *Wilson v. Belin*, 20 F.3d at 647.

If the allegedly harmed party was not injured in the forum state or suffered no damage there due to its non-residence, defendant's contacts are not substantial. See *Keeton*, 465 U.S. at 775-776, 104 S.Ct. at 1479; *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 412 (1984).

Plaintiff, in its Response, understates the requirement for due process in tort cases. Plaintiff contends that committing "even just a single act" may be the basis for personal jurisdiction over a non-resident if the alleged tortfeasor knows that a resident of the forum state will feel "the brunt of the injury." (P's Response, pgs. 9-11) However, "neither [the Supreme Court of Texas] nor the United States Supreme Court has ever said so." *Michiana*, Slip Op., p. 15 (App., p. 19) – rejecting a contention that a Michigan/Indiana company was subject to Texas jurisdiction where it made fraudulent statements to a Texas resident and delivered a defective RV to him in Texas. Defendant's activities, instead, must be extensive

in the forum state, the Court held, rejecting what it called "directed-a-tort" jurisdiction. (Id, p. 18, 20-21)

The Texas Supreme Court in *Michiana* specifically disapproved (App., p.24) *Mem. Hosp. Sys. v. Fisher Ins. Agency,* 835 SW2d 645, 650-651 (Tex. App. - Houston [14th Dist.] 1992, no writ), relied on by Plaintiff on this point in its Response (pgs. 10, 11, 17, 18), and distinguished most of the other cases cited by Plaintiff (P's Response, pgs. 9-12) on the basis that in those cases defendant's conduct was more extensive "and was aimed at getting extensive business from the forum state." *Michiana,* Slip Op., p. 17. (App., p.21)

The Texas Supreme Court distinguished *Calder v. Jones,* a libel case, on the basis that there the National Enquirer sold 600,000 copies in the forum state, California, which "constituted a substantial presence in the state." In all the cases cited by Plaintiff the contacts in the forum state were much more extensive than the Merciers' contacts with Texas.

The Merciers' producers' agreements were with Old Line, a Wisconsin corporation whose principal office was in Milwaukee, not with Plaintiff. The Merciers sold no policies for Plaintiff and had no producer agreement with Plaintiff. The Merciers sold no policies for Old Line (or Plaintiff) in Texas. (Tony, Sr., App. p.78, ¶8-9, 23-28; Tony, Jr., App. P.87, ¶ 5-9, 11-12; Charles, App., p.91-94, ¶6-9, 17, 20,24-29); P's Responses, Ex. D, Ex. 1-3)

The Merciers do not know what applications Plaintiff contends are fraudulent, because Plaintiff does not allege which ones, but the Merciers have never sent in any application which they knew or suspected contained false information. The Merciers had nothing to do with the medical exams for the applications. (Tony, Sr., App.,p.78-81, ¶5, 10-23; Tony, Jr., App. p.88-90, ¶10, 14-29); Charles, App.,p.91-94 ¶5,10-23)

The Merciers dealt strictly with Old Line. Insurance applications were sent to Mr. Walker in Augusta, Georgia, their supervisor for Old Line, or to Old Line's offices in

Milwaukee, or to wherever Mr. Walker directed. It was the Merciers' intent that the applications go to those corporate offices. The policies for Old Line were issued by Old Line from Milwaukee. The Merciers do not know where the policies were reviewed or where decisions were made for issuance. (Tony, Sr.,App.,p.78-81, ¶ 7, 17, 20, 29-31; Tony, Jr. App., p.87-90, ¶ 7, 9, 13, 24; Charles, App., p.91-94, ¶5-9, 17, 20, 24-30)

In short, the Merciers had no contacts with Texas. Even if Plaintiff's unproven allegations are accepted at face value, the Merciers in South Carolina sent fraudulent applications from South Carolina applicants to Dallas at Old Line's request with the goal of getting Old Line in Wisconsin to issue life insurance policies in Wisconsin to insureds in South Carolina. None of the factors important to due process is present. The alleged tort did not target Texas, but Wisconsin. Old Line was not a resident of Texas. Old Line did not suffer the alleged injury in Texas, but in Wisconsin, where it issued the policy. See *Burger King*, 471 U.S. at 472; *Southmark*, 851 F2d at 772-773; *Wilson v. Belin*, 20 F3d at 648. The Merciers had "random," "fortuitous" or "attenuated" contacts with Texas, if any.. *Burger King*, 471 U.S. at 475.

Plaintiff has the burden to prove a prima facie case for personal jurisdiction by factual statements, not conclusory statements, contained in affidavits. *Bullion vs. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990); *Panda Brandywine Corp.*, 253 F.3d at 869 Even non-conclusory allegations in Plaintiff's Complaint are not sufficient since the Merciers dispute them by affidavits. See *Wilson v. Belin*, 20 F.3d at 648

Plaintiff offers no proof that the Merciers sent applications to Old Line or Plaintiff in Dallas or anywhere else. Plaintiff produces from a file (of what company?) copies of two applications and some extraneous correspondence unrelated to insurance applications. (P's Response, Ex. F, Glass Aff., Ex. 1-3) Also, the applications show they are for Old Line

in Wisconsin. (Glass Aff., Ex. F, Ex. 2)   Conclusory affidavits and two inconclusive applications do not amount to prima facie proof of a "multi-million dollar fraud" committed by the Merciers in Texas against Texans..

Plaintiff attempts to buttress its failed jurisdiction contentions by claiming that Old Line is the same as American General Corporation, and that American General Corporation and its subsidiaries operated in "an integrated corporate environment," presumably in Texas. (P's Response, pgs. 4-7) Plaintiff cites no authority for this contention.  In this argument, Plaintiff seriously mis-states the facts, including its own evidence.[4]

Each corporation is a separate entity.  Plaintiff never provides the chains of ownership of Old Line and of Plaintiff, which are (App., p.2-4, 42, 43, 45-46, 51-52, 53): Old Line was owned by USLIFE, a New York corporation, and Plaintiff was owned by AGC Life Insurance Company, a Missouri corporation which officed in Tennessee and was not even licensed in the insurance business in Texas until 2003 (App.,p.2-4, 43, 43, 45-46, 51-52, 56-60).[5]  So much for the Texas connections.  Even if Old Line's activities could be attributed to an upstream corporation in the stream leads to New York, not Texas.

A subsidiary corporation is a separate legal entity from its parent corporation.  A

---

[4] Plaintiff states:
(1) Old Line and All American ("Old Line") were wholly-owned subsidiaries of American General Corporation (p.4) – False.   Plaintiff's proof is that Old Line was an "indirect" subsidiary. (Response, Ex. B, Wohn Aff., ¶3-4) The correct relationship is charted in App., p 65.; Ex. A-4.
(2) The Merciers were insurance agents for a Texas Corporation (American General Corp.) (pgs. 4, 6-7) – False.  The producer applications which Plaintiff relies on (Ex. D-1 – D-3) state "Old Line Life Appointment / Application for Existing All American Life Agents / Agencies.  The Old Line Life Insurance Company of America," which is a Wisconsin corporation. (App. p.2, ¶3, p.43, 53, 65)
(3) The application informed the Merciers that Old Line was a member of American General, headquartered in Houston (at p. 6) – False.  The applications say Old Line is a member of the "American General Financial Group" a "marketing name" for American General Corporation "and its subsidiaries."  It says nothing about American General Corporation's headquarters.
(4) The Compliance Manuals state that Old Line and All American were subsidiaries of American General located in Houston, Texas. (p. 7) – False.  It states only that they are members of the American General Financial Group.

[5] Those parent corporations were owned by American General Corporation. (App., p.65)

parent corporation is a separate entity from its subsidiaries. *Matter of Chrome Plate, Inc.*, 614 F2d 990, 996 (5th Cir. 1980, cert. den., 449 U.S. 842) For jurisdictional purposes, it is "well settled" that the activities of a subsidiary in the forum state cannot be attributed to the parent so as to maintain personal jurisdiction over the parent. *Southmark*, 851 F3d at 773-774; *Alpine View Co., Ltd. v Atlas Copco AB*, 205 F3d 208, 218 (5th Cir. 2000).

Plaintiff as successor in interest to Old Line is the real party in interest, and is therefore the entity required to bring this action, and it did. *Fed. R. Civ. P., Rule 17(a)* Upstream corporations with "American General" in their names do not have any lawsuit against the Merciers, and therefore are not parties to this lawsuit. See *Farrell Const. Co. vs. Jefferson Parish, La.* 896 F2d 136, 141 (5th Cir. 1990); *Lubbock Feed Lots, Inc. vs. Iowa Beef Processors*, 630 F2d 250, 256-257 (5th Cir. 1980) The Merciers' conduct toward a Wisconsin corporation (Old Line) was not conduct toward upstream corporations in Texas (nor New York, Missouri or Tennessee).

Blurring "American General" corporations together leads Plaintiff to make erroneous statements throughout its Response, such as that the Merciers were "insurance agents for a Texas corporation" (P's Response, p.1 4) – clearly false; the Merciers directed "tortious activities" or "fraudulent activities" at "a Texas corporation" (P's Response, p. 16, p. 18) – equally false.

Plaintiff is Plaintiff only because it allegedly assumed Old Line's liabilities on its policies. (Complaint, first page, P's Response, Ex. B, Wohn Aff., ¶9, 10) Otherwise, Old Line would be plaintiff in this case. The fact that Plaintiff is a Texas resident is a mere "fortuity" which has no effect on personal jurisdiction. See *Panda Brandywine*, 253 F.3d at 869. Therefore, for purposes of personal jurisdiction over the Merciers, the actions of the Merciers must be viewed as they were with Old Line up to the time of the merger of Old Line

and Plaintiff March 31, 2003, shortly after which the Merciers' relations were severed. (App., p.81, ¶25-28; p.88, ¶ 7-11; p. 92, ¶8-9, 14-27)

Plaintiff claims that it "felt" the result of the Merciers' alleged fraud on Old Line. (P's Response, pgs. 10-12) The Merciers cannot know of or be responsible for after-the-fact merger of Old Line with Plaintiff. (*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417 (1984) – the "unilateral activity" of plaintiff cannot satisfy the requirement of contact with the forum state.

Plaintiff has not shown sufficient contacts for specific jurisdiction.

**I. B. (Restated):    Plaintiff has not shown a basis for general jurisdiction.**

The Merciers demonstrated in their Motion to Dismiss that they have not engaged in the substantial or "continuous and systematic contacts" in Texas required for general jurisdiction. The standard is high, and requires that defendant's contacts be of a sort that approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat., Inc.*, 223 F3d 1082, 1086 (9th Cir. 2000) (cited by Plaintiff)

Plaintiff claims the Merciers are actively selling insurance in Texas. (P's Response, p. 13) They are not. Tony, Sr. sold 2 or 3 policies in 2004. Tony, Jr. sold none. Charles sold 15 policies in 2004. (D's Motion to Dismiss, pgs. 8-10) They have done nothing in 2005. Holding a license is a factor, but is not dispositive. *Bancroft & Masters, Inc.*, 223 F3d at 1086.

The Merciers' contacts were sporadic, and neither substantial nor continuous nor systematic. See *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F3d 208, 218 (5th Cir. 2000)

Plaintiff has not established general jurisdiction.

**C.    Exerting personal jurisdiction over the Merciers is not fair play and substantial justice.**

Plaintiff does not adequately refute the Merciers' argument in their Motion to Dismiss (pg. 10-11). Plaintiff again claims that the Merciers directed their activities at a Texas corporation, but do not say which one. Plaintiff? Not true. American General Corp.? Not true and not a party.

**D.     Plaintiff makes no showing at all for personal jurisdiction over Tony Mercier, Jr. or MERCIER INSURANCE AGENCY, INC.**

Personal jurisdiction must be separately assessed for each defendant. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487 (1984) Plaintiff has not proved any link between Defendant MERCIER INSURANCE AGENCY and this lawsuit. Plaintiff states that the Merciers sold life insurance policies through MERCIER INSURANCE AGENCY during the "pertinent time frame." (P's Response, p. 11) Plaintiff offers no proof of that. The Merciers proved it did not. (Sr. Aff. [Motion], ¶7-9)

Plaintiff offers no proof against MERCIER INSURANCE AGENCY for general jurisdiction. Plaintiff presents no evidence that Defendant Anthony Mercier, Jr. sent any application to Texas or sold insurance policies in Texas. (Tony, Jr. Aff. [Motion]) He did not.

Therefore, Plaintiff has not established personal jurisdiction over MERCIER INSURANCE AGENCY or Anthony Mercier, Jr.

**III.     Venue and personal jurisdiction are not proper under R.I.C.O.**

The Merciers agree that *18 U.S.C., §1965(b)* generally has been held to provide for nationwide jurisdiction, but only if other defendants are properly before the Court pursuant to *18 U.S.C., §1965(a)*. The "ends of justice" do not require it otherwise. *Anchor Glass Container Corp. v. Stand Energy Corp.*, 711 F. Supp. 325, 330-331 (S.D. Miss. 1989) *Bigham v. Envirocare of Utah, Inc.*, 123 F.Supp.2d 1046, 1049 fn 3 (S.D.Tex 2000)18 *U.S.C., §1956(a)* provides for venue in R.I.C.O. cases in any district in which defendant

"resides is found, has an agent or transacts his affairs." "Transacts his affairs" means his "personal affairs." *Anchor Glass*, 711 F.Supp. at 329

Venue would not be proper against any Mercier under §1965(a). Therefore, since none of the Merciers is properly before the Court by virtue of §1965(a) the "ends of justice" do not provide for personal jurisdiction over them pursuant to *§1965(b)*. Even if there were personal jurisdiction over the Merciers under R.I.C.O., venue would be improper under *18 U.S.C., §1965(a)*, and this lawsuit should be dismissed.

## IV.  Venue is not proper in the Southern District of Texas.

Plaintiff claims that the burden of proof of improper venue is on the Merciers, (P's Resp., p. 19) despite the cases cited by the Merciers in their Motion to Dismiss. (at pgs. 3, 11)[6]

Regardless of who has the burden of proof, venue is not proper in the Southern District of Texas. The Merciers' affidavits show that no events giving rise to the claim occurred in Texas. (See pg. 5-6, supra) Plaintiff's proof does not counter this. Plaintiff has itself filed several lawsuits in South Carolina to cancel policies presumably at issue here. Plaintiff there claimed that venue was proper in South Carolina because the events occurred in South Carolina. (App., p.96, ¶8-13, p. 98)

Moreover, Plaintiff's complaint is about applications allegedly sent to Texas from South Carolina. For venue purposes, the place from which a writing is sent is crucial, not where it is received. *Bigham*, 123 F. Supp. 2d at 1049 fn 2. See *Stroman Realty, Inc. v. Antt*, 20 F.Supp.2d 1050, 1057 (S.D.Tex. 1998), citing *Jarrett v. North Carolina*, 868

---

[6] Plaintiff attempts to distinguish those cases on the basis that *§1391(b)* was amended to change the venue fact from "where the cause of action arose" to where "a substantial part of the event or events giving rise to the claim occurred." The amendment did not change the burden of proof. See *Laserdynamics, Inc. v. AcerAmerica Corp.*, 209 F.R.D., 388, 390 (S.D. Tex. 2002), holding (after the amendment) that the burden of proof is on plaintiff.

F.Supp. 155, 158-159 (D.S.C. 1994)

Plaintiff claims that it was injured in Houston, because in Houston it issued policies and American General Life paid commissions, incurred risk, etc. However, whatever the Merciers allegedly did was done to Old Line, not Plaintiff and Old Line's policies were issued in Wisconsin. (See pg. 6, supra) The Court looks to defendant's conduct, not plaintiff's, in determining venue. "Actions taken by a plaintiff do not support venue." *Bigham,* 123 F.Supp.2d at 1048. Where the effects are felt is not of itself a proper basis for venue. *Bigham,* 123 F.Supp.2d at 1049 fn 2.

Venue is improper in the Southern District of Texas.

The Merciers' Motion to Dismiss should be granted.

Respectfully submitted,

*LAW OFFICES OF DAVID F. BEALE*

*David F. Beale*

*DAVID F. BEALE*
TBC# 01952000
S.D. of T. #68530
440 Louisiana, Suite 1750
Houston, TX 77002
Tel: 713-863-0404 / Fax: 713-223-0700
*Attorney in Charge for Defendants.*

## CERTIFICATE OF SERVICE

I hereby certify that I served Plaintiff with a true and correct copy of the foregoing by serving Plaintiff's attorney of record, David McDowell, BRACEWELL & GIULIANI, LLP, South Tower Pennzoil Place, 711 Louisiana, Suite 2300, Houston, Tx 77002, by certified mail, return receipt requested this 18t[h] day of July, 2005.

*David F. Beale*

**DAVID F. BEALE**

TABLE OF Contents

# TABLE OF CONTENTS
## Appendix

**TAB-A:**   AFFIDAVIT OF DAVID F. BEALE ........................ 000001

Exhibi t A-1 ......................................... 000005
a true and correct copy of the Opinion by the Supreme Court
of Texas on May 27, 2005 in the case of *Michiana Easy
Livin' Country Inc. vs. Holten*, No. 04-0016 (Tex. May 27,
2005).

Exhibit A-2 ......................................... 000041
a true and correct copy of public records: Lexis-Nexis
Directory of Corporate Affiliations, 2000; Best's Insurance
Reports, 2002; Lexis-Nexis Corporate Affiliations, 2004.

Exhibit A-3 ......................................... 000056
a true and correct copy of public record, Missouri Secretary of
States, 2002 Annual Registration Reports for AGC Life
Insurance Company, 2002, 2003 and 2004; Missouri
Secretary of State "Statement of Change of Reg. Agent and/or
Registered Office, 2002; Texas Dept. of Insurance 2005, "AGC Life
Insurance Company" profile, 7/06/05.

Exhibit A-4 ......................................... 000065
chart of the relevant corporate structure based on the public
documents

Exhibit A-5 ......................................... 000066
a true and correct copy the Clerk's files of the Plaintiff's
Original Complaint in *American General Life Insurance
Company vs. Russell Chaisson,* No. H-05-1785 in the United
States District Court for the Southern District of Texas.

**TAB-B:**   AFFIDAVIT OF ANTHONY G. MERCIER, SR. .............. 000078

**TAB-C:**   AFFIDAVIT OF ANTHONY G. MERCIER, JR. .............. 000087

**TAB-D**    AFFIDAVIT OF CHARLES MERCIER ..................... 000091

**TAB-E**    AFFIDAVIT OF KRISTINA M. ANDERSON ................ 000095

TAB A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No.: __H - 05 - 1268__ |
| ANTHONY MERCIER, SR., ANTHONY MERCIER, JR., CHARLES MERCIER, and MERCIER INSURANCE AGENCY, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

..................................................................................

| | | |
|---|---|---|
| STATE OF TEXAS | § § | AFFIDAVIT OF DAVID F. BEALE |
| COUNTY OF HARRIS | § | |

BEFORE ME, the undersigned authority, on this day personally appeared the person known to me to be DAVID F. BEALE, who being by me duly sworn, upon his oath, deposed and stated that he is over the age of 21, has never been convicted of a felony and is competent to make this affidavit and that he has personal knowledge of the following facts:

"1.    Exhibit A-1, attached hereto, is a true and correct copy which I downloaded from the Internet of the Opinion by the Supreme Court of Texas on May 27, 2005 in the case of *Michiana Easy Livin' Country Inc. vs. Holten*, No. 04-0016 (Tex. May 27, 2005).

000001

"2.   Exhibit A-2, attached hereto, is a true and correct copy of public records which show that in the year 2000 American General Corporation wholly owned as a direct subsidiary American General Life Insurance Company and USLIFE Corporation.   USLIFE Corporation was a New York corporation with its principal place of business in New York.

"3.   Exhibit A-2 further shows that in 2000 USLIFE in turn owned as direct subsidiaries (1) All American Life Insurance Company, an Illinois corporation with its principal place of business in Illinois, and (2) The Old Line Life Insurance Company of America, a Wisconsin corporation with its principal place of business in Wisconsin.

"4.   Exhibit A-2 further shows that in 2002 American International Group, Inc. was the parent corporation of American General Corporation, which wholly owned as a direct subsidiary AGC Life Insurance Company, which in turn wholly owned as a direct subsidiary American General Life Insurance Corporation.

"5.   Exhibit A-3 shows that AGC Life Insurance Company was a Missouri corporation with its principal place of business in Tennessee.

"6.   Exhibit A-2 further shows that in 2002 USLIFE Corporation continued to own All American Life Insurance Company, an Illinois corporation, and The Old Line Life Insurance Company, a Wisconsin corporation.

"7.     Exhibit A-2 further shows that in 2004 American International Group, Inc. wholly owned as a direct subsidiary AIG American General Corporation (formerly American General Corporation) (p. 137), which owned AGC Life Insurance Corporation, still a Missouri corporation officing in Tennessee, which in turn wholly owned as a direct subsidiary American General Life Insurance Company.

"8.     Exhibit A-2 further shows that in 2004 AIG American General Corporation wholly owned as a direct subsidiary USLIFE Corporation, a New York corporation (at p. 139) which in turn wholly owned as direct subsidiary The Old Line Life Insurance Company of America, A Wisconsin corporation. All American Life Insurance Company is no longer shown to exist.

"9.     Exhibit A-3, attached hereto, is (1) a series of public records from the Missouri Secretary of State and the State of Missouri Department of Insurance and the Secretary of State of Texas which were downloaded from the Internet and (2) a true and correct copy of public records, which show that during the events in question in this lawsuit AGC Life Insurance Company was a Missouri corporation with its principal office and place of business in Tennessee, and it was not licensed to transact business in Texas until 2005.

"10.    Exhibit A-3 also shows that The Old Line Life Insurance Company

merged, in Wisconsin, with and into American General Life Insurance Company, effective March 31, 2003.

"11.    Exhibit A-4 is a chart that I made which shows the relevant corporate structure based on the public documents.

"12.    Exhibit A-5 is a true and correct copy I downloaded from the Internet from the Clerk's files of the Plaintiff's Original Complaint in *American General Life Insurance Company vs. Russell Chaisson,* No. H-05-1785 in the United States District Court for the Southern District of Texas.

"Further, Affiant sayeth not."


_____
**DAVID F. BEALE**


SUBSCRIBED and sworn to before me on this _15th_ day of _July_, 2005.


_____
**Notary Public in and for
The State of Texas**



SHARRON B BEALE
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 03-25-2008

# IN THE SUPREME COURT OF TEXAS

No. 04-0016

MICHIANA EASY LIVIN' COUNTRY, INC., D/B/A MICHIANA R.V., PETITIONER,

v.

JAMES G. HOLTEN, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

**Argued January 6, 2005**

JUSTICE BRISTER delivered the opinion of the Court, in which CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, JUSTICE OWEN, and JUSTICE GREEN joined.

JUSTICE MEDINA filed a dissenting opinion, in which JUSTICE O'NEILL joined.

JUSTICE WAINWRIGHT and JUSTICE JOHNSON did not participate in the decision.

James Holten decided to buy a $64,000 Coachmen recreational vehicle sight unseen. Eschewing every RV dealer in Texas, he sought a lower price from Michiana Easy Livin' Country, Inc., an outlet store that only did business in Indiana. Holten called Michiana in Indiana, sent payment to Indiana, paid for delivery from Indiana, and agreed to resolve every dispute in Indiana. But when a dispute actually arose, he filed suit in Texas.

The trial court and court of appeals denied Michiana's special appearance. Because of a



EXHIBIT
A-1

conflict in the decisions of the courts of appeals,[1] we have jurisdiction to review this conclusion.[2] Finding Michiana does not have minimum contacts with Texas, we reverse.

# I

## A. Petition and Brief

We first address two questions of error preservation.

First, Holten argues that Michiana cannot assert a minimum-contacts challenge because it was raised for the first time in Michiana's brief on the merits rather than in its petition for review.[3] In its petition for review, Michiana stated the issue presented as follows:

> Whether factually and legally sufficient evidence exists in the Clerk's Record to support the implied finding by the trial court that Michiana committed a tort in Texas — the only basis for personal jurisdiction over Michiana by Texas courts.

Both the opinion below and the petition for review here list undisputed facts showing that Michiana had no contact with Texas or Texans except for the alleged tort. Michiana's petition is correct — the sole ground on which the court of appeals based jurisdiction was the commission of a tort in Texas.[4] The argument that this conclusion was incorrect necessarily included the subsidiary argument detailed in Michiana's brief — that without that ground, jurisdiction did not exist. This

---

[1] *See infra* notes 25-26.

[2] TEX. GOV'T CODE § 22.001(a)(2), § 22.225(c).

[3] *See* TEX. R. APP. P. 55.2 ("The petitioner's brief on the merits must be confined to the issues or points stated in the petition for review . . . .").

[4] 127 S.W.3d 89, 96-99.

000006

is all the rules require.[5]

## B. The Record in Pretrial Hearings

Second, the appellate record contains no reporter's record of the special appearance hearing. Though candidly conceding that no oral testimony or new exhibits were presented at that hearing, Holten nevertheless argues we must presume evidence was presented that supports the trial court's order.

It is difficult to state a bright-line rule regarding unrecorded pretrial proceedings, as they come in so many shapes and sizes. Many pretrial "hearings" take place entirely on paper, while others involve a personal appearance in court.[6] In some the parties must file all evidence with the clerk;[7] in others they must present it in open court;[8] in most the manner of presentation is discretionary;[9] in at least one the answer is unclear.[10]

---

[5] TEX. R. APP. P. 55.2(f) (providing that issues presented "will be treated as covering every subsidiary question that is fairly included").

[6] *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam) ("Unless required by the express language or the context of the particular rule, the term 'hearing' does not necessarily contemplate either a personal appearance before the court or an oral presentation to the court.").

[7] *See, e.g.*, TEX. R. CIV. P. 87(3)(b) (motion to transfer venue); *id.* 166a(c) (summary judgment).

[8] *See, e.g., Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 687 (Tex. 1968) (holding temporary injunction may not be proved by affidavit unless parties agree otherwise); *see also Union Carbide Corp. v. Moye*, 798 S.W.2d 792, 794 (Tex. 1990) (Hecht, J., concurring) (arguing trial court is "obliged . . . to hear live testimony when it is necessary to resolve issues that cannot be determined on a written record").

[9] *See, e.g.*, TEX. R. CIV. P. 120a(3) (special appearance); 193.4(a) (privilege objections); 199.6 (deposition objections); *compare Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 702 (Tex. 2003) (noting five-day certification hearing included twelve bound volumes of exhibits and six volumes of testimony) *with Snyder Communications, L.P. v. Magana*, 142 S.W.3d 295, 297 (Tex. 2004) (per curiam) (noting thirty-minute certification hearing included only brief deposition testimony of one claimant).

[10] *Union Carbide Corp.*, 798 S.W.2d at 793 (reserving question whether transfer of venue alleging local prejudice required or allowed oral testimony).

000007

What is clear is that a reporter's record is required only if evidence is introduced in open court; for nonevidentiary hearings, it is superfluous.[11] If all the evidence is filed with the clerk and only arguments by counsel are presented in open court, the appeal should be decided on the clerk's record alone.[12]

The difficulty of course is that the absence of a reporter's record does not tell us whether a pretrial hearing was nonevidentiary, or evidentiary but not preserved. Presuming them all the former unfairly penalizes a party that presents evidence in open court that the other party does not bother to preserve. But presuming them all the latter would require *every* hearing to be recorded — whether evidentiary (to show what was presented) or not (to show nothing was). Besides being wasteful, this would frustrate the intent of our appellate rule requiring a reporter's record only "if necessary to the appeal."[13]

For some years now the trend has been away from full evidentiary hearings in open court for most pretrial matters. While we have generally encouraged oral hearings when arguments may be helpful,[14] both the Legislature and this Court have discouraged oral presentation of testimony and

---

[11] *Tilton v. Moyé*, 869 S.W.2d 955, 957 (Tex. 1994); *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993).

[12] *Parmelee*, 850 S.W.2d at 181.

[13] Tex. R. App. P. 34.1.

[14] *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam) ("An oral hearing on a motion for summary judgment may be helpful to the parties and the court, just as oral argument is often helpful on appeal.").

000008

evidence when they can be fairly submitted in writing.[15] Counsel can almost always direct the trial court's attention to pertinent deposition excerpts, discovery responses, or affidavits in less time than it takes to recreate them in open court. Presuming that most pretrial proceedings are evidentiary would not only discourage this trend, but would encumber thousands of routine hearings by requiring formal proof that no proof was offered.

Accordingly, we have in the past presumed that pretrial hearings are nonevidentiary absent a specific indication or assertion to the contrary.[16] If the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court, then a complaining party must present a record of that hearing to establish harmful error.[17] But otherwise, appellate courts should presume that pretrial hearings are nonevidentiary, and that the trial court considered only the evidence filed with the clerk.

It is true that a dozen years ago in *Piotrowski v. Minns* we stated: "[a] litigant who fails to request that the reporter record pretrial proceedings risks waiver of any complaint with respect to

---

[15] *See, e.g.*, Act of June 17, 1983, 68th Leg., R.S., ch. 385, § 2, 1983 Tex. Gen. Laws 2119, 2124 (repealing TEX. REV. CIV. STAT. art. 2008, which provided for plea of privilege hearings); TEX. R. CIV. P. 120(a) (amended to allow proof by affidavit in special appearances, 785-786 S.W.2d (Tex. Cases) xlviii (1990)).

[16] *See Tilton*, 869 S.W.2d at 957 ("The order at issue, however, indicates that the trial court's consideration of the motion to compel was based only on the argument of counsel. Additionally, at oral argument, counsel for Smith conceded that the trial court took no testimony at the hearings. Thus, no statement of facts is necessary."); *Otis Elevator Co.*, 850 S.W.2d at 181 ("The court of appeals held that defendants were precluded from raising their complaint on appeal because they had failed to bring forward a statement of facts from [other pretrial] hearings. This holding, too, is incorrect. There is no indication or assertion that any other hearing to which [plaintiff] alludes involved the taking of evidence.").

[17] *See, e.g.*, TEX. R. APP. P. 44.1, 61.1; *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) ("Since an evidentiary hearing was held, the Walkers had the burden of providing us not only a petition and affidavit, but also a statement of facts from the hearing.") (citation omitted); *see also RP&R, Inc. v. Territo*, 32 S.W.3d 396, 401 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (reversing temporary injunction as record contained no testimony from claimant).

5

error occurring during those proceedings."[18]  But the appellant there conceded that the special

appearance hearing was evidentiary.[19]  Moreover, since that time the rules have changed so that court

reporters no longer attend court and make a record only "when requested" but now must do so

"unless excused by agreement of the parties."[20]  The former rule implied a lack of diligence when

the losing party requested no record;[21] the current rule implies an agreement that no record was made

because none was needed.

Either party, of course, may allege that a hearing was evidentiary, but that allegation must

be specific.  Merely asserting that the trial court "considered evidence at the hearing" is not enough

— trial courts do that when a hearing is conducted entirely on paper, or based solely on affidavits

and exhibits filed beforehand.  Instead, there must be a specific indication that exhibits or testimony

was presented in open court *beyond* that filed with the clerk.  As the rules of professional conduct

prohibit assertions that a hearing was evidentiary when it was not,[22] and as events in open court can

usually be confirmed by many witnesses, there is no reason to expect that such assertions will be

lightly fabricated.

---

[18] 873 S.W.2d 368, 370-71 (Tex. 1993).

[19] *Id.* at 370.

[20] *Compare* TEX. R. APP. P. 11(a), 49 TEX. B.J. 961 (1986, superseded 1997) *with* TEX. R. APP. P. 13.1(a) (adopted in 1997); *see also* TEX. GOV'T CODE § 52.046(a) (requiring a court reporter to attend court and make a record "on request"); *id.* § 54.046(c) (granting Supreme Court authority to adopt rules governing court reporter's duties in civil proceedings).

[21] *Piotrowski,* 873 S.W.2d at 370-71.

[22] TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03 (requiring candor toward tribunal); TEX. LAWYER'S CREED: A MANDATE FOR PROFESSIONALISM IV(6) ("I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.").

6

000010

Our appellate rules are designed to resolve appeals on the merits, and we must interpret and apply them whenever possible to achieve that aim.[23] Accordingly, we decline to presume the special appearance hearing here was evidentiary when everyone concedes it was not.

## II

### A. Background

As its name invertedly suggests, Michiana is located in Indiana a few miles from the Michigan border. It is a separate legal entity from the manufacturer or any other dealers of Coachmen RVs. It has neither employees nor property in Texas, and is not authorized to do business here. It does not advertise in Texas or on the Internet, and thus did not solicit business from Holten or anyone else in Texas.

The sale at issue here was initiated entirely by Holten. Seeking a cheaper price than he could get from any of Coachmen's many dealers in Texas, Holten called the Coachmen factory. He was informed that Coachmen did not sell directly from the factory, but that a lower price could be obtained from Michiana, a "factory outlet." Holten obtained Michiana's number from the factory and placed the call that initiated the transaction here.

The RV was constructed and equipped outside Texas. It was paid for outside Texas. It was shipped to Texas at Holten's request and entirely at his expense.

The question presented is whether suit can be brought in Texas based on a nonresident's alleged misrepresentations in a telephone call with a Texas resident. The courts of appeals are split

---

[23] *Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex. 2002) (per curiam).

000011

on this question of specific jurisdiction[24] — some holding it would violate constitutional standards,[25] and others (including the lower court here) that it would not.[26]

## B. Purposeful Availment

For half a century, the touchstone of jurisdictional due process has been "purposeful availment." Since *Hanson v. Denckla*, "it is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[27]

Three aspects of this requirement are relevant here. First, it is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'"[28]

Second, the acts relied on must be "purposeful" rather than fortuitous.[29] Sellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another

---

[24] *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 796 (Tex. 2002) ("Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum.").

[25] *City of Riverview, Michigan v. Am. Factors, Inc.*, 77 S.W.3d 855, 858 (Tex.App.—Dallas 2002, no pet.); *Hayes v. Wissel*, 882 S.W.2d 97, 98-100 (Tex.App.—Fort Worth 1994, no pet.); *Laykin v. McFall*, 830 S.W.2d 266, 269 (Tex.App.—Amarillo 1992, no pet.); *C.W. Brown Mach. Shop, Inc. v. Stanley Mach. Corp.*, 670 S.W.2d 791, 793 (Tex.App.—Fort Worth 1984, no writ).

[26] 127 S.W.3d at 95; *Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897, 904 (Tex. App.—Dallas 2003, no pet.); *Ahadi v. Ahadi*, 61 S.W.3d 714, 720 (Tex. App.—Corpus Christi 2001, pet. denied); *Ring Power Sys. v. Int'l de Comercio y Consultoria*, 39 S.W.3d 350, 353-54 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Mem. Hosp. Sys. v. Fisher Ins. Agency*, 835 S.W.2d 645, 650-51 (Tex. App.—Houston [14th Dist.] 1992, no writ).

[27] 357 U.S. 235, 253 (1958) (emphasis added).

[28] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

[29] *Id.*

8

000012

state" are subject to the jurisdiction of the latter in suits based on their activities.[30] By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous."[31]

Third, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction.[32] Jurisdiction is premised on notions of implied consent — that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there.[33] By contrast, a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction.[34]

### C. Stream of Commerce

In the context of product sales, a nonresident need not have offices or employees in a forum state in order to meet the purposeful availment test. In *International Shoe Co. v. Washington*, a nonresident corporation had neither offices nor inventory in the state of Washington, but did have a dozen resident salesmen on commission who exhibited samples, solicited orders, and transmitted them to other states for shipment to resident consumers.[35] The operation of a sales and distribution

---

[30] *Id.* at 473 (citing *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).

[31] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

[32] *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 79 (10th ed. 1993)("Avail: . . . to be of use or advantage to: profit.").

[33] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002).

[34] *Burger King*, 471 U.S. at 473.

[35] 326 U.S. 310, 313-14 (1945).

9

000013

network rendered the nonresident subject to the state's jurisdiction.[36]

Thus, a nonresident that directs marketing efforts to Texas in the hope of soliciting sales is subject to suit here in disputes arising from that business. Advertising in telephone directories in Texas cities,[37] operating an office for sales information and support,[38] and certain activities over the Internet[39] all meet this standard.

It is less clear whether a nonresident "purposefully avails" itself of a forum when it benefits from a major market without doing any of the marketing. Almost twenty years ago, four justices of the United States Supreme Court held that a nonresident's mere awareness that thousands of its products were ultimately being sold in the forum state established purposeful availment;[40] four others held that "additional conduct" was required (e.g., designing the product for or advertising it in the forum State);[41] the ninth held that, assuming "additional conduct" was required, regular sales resulting in thousands of products reaching the forum state over many years would suffice "[i]n most circumstances."[42]

Since that time, we have noted that our cases appear to follow the "additional conduct"

---

[36] *Id.* at 320.

[37] *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 436 (Tex. 1982).

[38] *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (per curiam).

[39] *See, e.g., Reiff v. Roy*, 115 S.W.3d 700, 705-06 (Tex.App.—Dallas 2003, pet. denied) (surveying Texas law on Internet activities).

[40] *Asahi Metal Ind. Co., Ltd. v. Superior Court*, 480 U.S. 102, 121 (1987) (Brennan, J., concurring in part).

[41] *Id.* at 112 (O'Connor, J., plurality opinion).

[42] *Id.* at 122 (Stevens, J., concurring in part).

000014

standard.[43]  Thus, for example, we have held that shipping hundreds of tons of raw asbestos to Houston was insufficient to establish jurisdiction absent evidence that a nonresident participated in the decision to send it there.[44]

Whichever of these standards is ultimately correct, Michiana's conduct meets none of them. Michiana did not place large numbers of RVs in a "stream of commerce" flowing to Texas; as we have noted before, stream-of-commerce jurisdiction requires a stream, not a dribble.[45]  Nor is there any evidence of any "additional conduct" — Michiana did not design, advertise, or distribute RVs in Texas.  Exercising jurisdiction here would go far beyond anything we have approved in other commercial cases.

### D. Single Sales

The court of appeals relied on several cases by intermediate courts in Texas holding that a single contact with the state is sufficient to establish jurisdiction.[46]  But the United States Supreme Court has emphatically answered the question whether a single contract with a Texas resident can automatically establish jurisdiction — "the answer clearly is that it cannot."[47]

Both the United States Supreme Court and this Court have found no purposeful availment in cases involving isolated sales solicited by consumers who proposed to use the product in a state

---

[43] *CMMC v. Salinas*, 929 S.W.2d 435, 400 (Tex. 1996) ("If anything, *Keen* suggests that we would follow Justice O'Connor's formulation of the stream-of-commerce rule in Texas.").

[44] *CSR Ltd. v. Link*, 925 S.W.2d 591, 595-96 (Tex. 1996).

[45] *CMMC*, 929 S.W.2d at 439.

[46] 127 S.W.3d at 96.

[47] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18, 478 (1985).

000015

where the defendant did no business. In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme

Court held that dealers who sold a car in New York could not be sued in Oklahoma just because the

buyers were involved in a collision there:

> [W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.[48]

The facts here are not the same as those in *Woodson*, but do not differ in any material respect.

Michiana *knew* Holten would take his RV to Texas, while it was merely *foreseeable* to the defendant

in *Woodson* that its buyer would drive his Audi to Oklahoma.[49] But in either case the choice was

entirely that of the purchaser; the seller had no say in the matter. Under Holten's theory, Michiana

could be sued in any state or country from which he chose to place his call and take delivery. But

as the Supreme Court stated, "unilateral activity . . . cannot satisfy the requirement of contact with

the forum State."[50]

This Court addressed the same question in 1996 in *CMMC v. Salinas*.[51] In that case, a French

---

[48] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

[49] *Id.* at 296-97.

[50] *Id.* at 298.

[51] 929 S.W.2d 435 (Tex. 1996).

000016

manufacturer had made no effort to market its winepress equipment in Texas, had made only one other sale in Texas, and did not initiate the sale at issue to a Texas buyer.[52] We held that the Due Process Clause prohibited specific jurisdiction of a tort suit in Texas based on injuries resulting from alleged defects.[53] As Michiana's contacts here are certainly no more and arguably somewhat less than those in *CMMC*, the result must be the same, as the Due Process Clause has not changed in the interim.

It is true that in some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state. A long-term franchise agreement may establish minimum contacts because, though it stems from a single contract, it involves many contacts over a long period of time.[54] Similarly, a life-insurance policy may stem from a single contract, but necessarily involves a series of contacts until death does the parties part.[55]

Certainly a nonresident corporation ought to be subject to suit in any jurisdiction where it "enjoys the benefits and protection of the laws of that state."[56] Here, it is hard to imagine what possible benefits and protection Michiana enjoyed from Texas law. Holten paid for the RV in advance, and could not have planned on taking it to Indiana regularly for service. Everything

---

[52] *Id.* at 436.

[53] *Id.* at 439.

[54] *Id.* at 480.

[55] *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

[56] *Int'l Shoe*, 326 U.S. at 319.

000017

Michiana wanted out of the contract it had in hand. Indeed, it is hard to imagine how Michiana would have conducted its activities any differently if Texas had no law at all.

Clearly, Michiana anticipated some profit from this single sale, at least until the litigation started. But "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State."[57] We find none here.

### III

The court of appeals affirmed on the basis of two contacts between Michiana and Texas: (1) misrepresentations Michiana allegedly made in response to a phone call from Holten, and (2) Michiana's arrangements with a shipper to deliver the RV to Holten for use in Texas. Neither is sufficient.

### A. Shipping to Texas

The second ground is easily disposable. Delivery in Texas was at Holten's sole request and sole expense. If a seller of chattels is subject to suit wherever a customer requests delivery, then the chattel has become its agent for service of process — a conclusion the United States Supreme Court has expressly rejected.[58]

We too rejected this argument in *CMMC*, in which we stated: "The sole question in this case is whether the Fourteenth Amendment permits a state court to take personal jurisdiction over a foreign manufacturer merely because it knew its allegedly defective product would be shipped to that

---

[57] *Woodson*, 444 U.S. at 299.

[58] *Id.* at 296.

000018

state. *We answer no*, and thus reverse . . . ."[59] Accordingly, we must do the same here.

## B. Committing a Tort "in" Texas

The court of appeals relied most heavily on the first ground — Holten's allegation that Michiana committed a tort in Texas.

Allegations that a tort was committed in Texas satisfy the Texas Long-Arm Statute,[60] but not necessarily the U.S. Constitution; the broad language of the former extends only as far as the latter will permit.[61] Thus, for example, the plaintiffs in both *Woodson* and *CMMC* alleged torts, and the defendants surely foresaw that defective products could harm local buyers — but in neither case was that enough to establish jurisdiction.[62]

The court below joined many of its sister courts in stating the following as a rule of jurisdiction: "If a tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions."[63] But neither this Court nor the United States Supreme Court has ever said so.

---

[59] 929 S.W.2d 435, 436 (Tex. 1996) (emphasis added). *CMMC* also made clear that, to the extent of any conflict, our earlier opinion in *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91 (Tex. 1988) should not be read to extend stream-of-commerce jurisdiction to a single sale. 929 S.W.2d at 439-40.

[60] Tex. Civ. Prac. & Rem. Code § 17.042(2).

[61] *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977).

[62] *Woodson*, 444 U.S. at 288; *CMMC*, 929 S.W.2d at 437; *see also Antonio v. Marino*, 910 S.W.2d 624, 628 (Tex. App.—Houston [14th Dist.] 1995, no writ) (holding nonresident shipowner whose agent assaulted and denied wages to seamen in Texas port had not purposefully availed itself of Texas as ship's location was fortuitous).

[63] 127 S.W.3d at 95; *Morris v. Powell*, 150 S.W.3d 212, 221 (Tex.App.—San Antonio 2004, no pet.); *Stern v. KEI Consultants, Ltd.*, 123 S.W.3d 482, 490 (Tex.App.—San Antonio 2003, no pet.); *AmQuip Corp. v. Cloud*, 73 S.W.3d 380, 386 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Ahadi v. Ahadi*, 61 S.W.3d 714, 720 (Tex.App.—Corpus Christi 2001, pet. denied); *Shapolsky v. Brewton*, 56 S.W.3d 120, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 731 (Tex. App.—Fort Worth 2001, no pet.);

000019

To the contrary, twenty years ago the United States Supreme Court wrote: "Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction."[64] This Court too has expressly rejected jurisdiction "based solely upon the effects or consequences of an alleged conspiracy" in the forum state.[65] Instead, it is "the defendant's conduct and connection with the forum" that are critical.[66]

It is true that on one occasion the United States Supreme Court found specific jurisdiction based on alleged wrongdoing intentionally directed at a forum resident. In *Calder v. Jones*, a reporter and editor collaborated on an allegedly defamatory article, but they did so knowing the article was for their employer, the *National Enquirer*, which sold more than 600,000 copies in the forum state every week.[67] Whether or not a jury found the article defamatory, there was no question the defendant's article constituted a substantial "presence" in the state.

Texas courts that base jurisdiction on torts committed during the receipt of an out-of-state phone call apparently assume that *Calder* would have come out the same way if the defamation had occurred in a single unsolicited phone call a nonresident answered from a single private individual

---

*Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see also Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir.1988).

[64] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[65] *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995).

[66] *Burger King*, 471 U.S. at 474 (quoting *Woodson*, 444 U.S. at 297).

[67] *Calder v. Jones*, 465 U.S. 783, 785 n.2 (1984).

UU0020

in the forum state. But if "the defendant's conduct and connection with the forum" must play a critical role, the two cases cannot be the same.

A companion case decided by the same Court on the same day as *Calder* shows that the important factor was the extent of the defendant's activities, not merely the residence of the victim. In *Keeton v. Hustler Magazine, Inc.*, the victim of another allegedly defamatory article sued not in the state where she lived, but in a different state with a longer statute of limitations.[68] Noting that the defendant had sold more than 10,000 copies of its magazine every month in the forum state, the Supreme Court held that "it must reasonably anticipate being haled into court there."[69]

Our dissenting colleagues cite no other authority that a single conversation with a private citizen constitutes purposeful availment of any jurisdiction in which that citizen happens to live. While torts were alleged in some of the cases cited in the dissent, the defendant's conduct in each case was much more extensive and was aimed at getting extensive business in or from the forum state.[70] Exercising jurisdiction here would go far beyond anything we have approved in other tort cases.

---

[68] 465 U.S. 770, 772, 778 (1984).

[69] *Id.* at 781.

[70] *See D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir. 1985) (basing jurisdiction on nonresident's transfer of its distributorship rights in forum state); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189-90 (5th Cir. 1984) (basing jurisdiction on acts that sought to obtain business in Texas); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333-34 (5th Cir. 1982) (basing jurisdiction on defamatory phone call to district attorney attempting to wrest business from resident); *Miss. Interstate Exp. Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006, 1008 (5th Cir. 1982) (basing jurisdiction on nineteen shipping contracts between nonresident broker and resident trucking firm). Especially troubling is the Court's reliance on *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985), in which not only were the dispositive acts entirely different from anything here (i.e., a post-sale shipment of a defective replacement part to the forum state), but the court *expressly acknowledged* that jurisdiction *would not* exist on facts *identical* to those here. *Id.* at 1171 ("[T]he mere knowledge that [defendant] was selling to [forum state] residents would be insufficient to support the exercise of jurisdiction.").

17

000021

## C. The Consequences

Several problems arise if jurisdiction turns not on a defendant's contacts, but on where it "directed a tort." First, it shifts a court's focus from the "relationship among the *defendant*, the forum, and the litigation"[71] to the relationship among the *plaintiff*, the forum . . . and the litigation."[72] The place where a plaintiff relies on fraud may determine the choice of law,[73] but choice-of-law analysis considers all parties, local courts, legal policies, interested states, and the interstate and international systems.[74] By contrast, minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant.[75]

Second, directed-a-tort jurisdiction confuses the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits. If purposeful availment depends on whether a tort was directed toward Texas, then a nonresident may defeat jurisdiction by proving there was no tort.[76]

---

[71] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)) (emphasis added).

[72] *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added).

[73] *See, e.g., Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, (Tex. App.–Houston [14th Dist.] 2003, no pet.); RESTATEMENT (SECOND) CONFLICT OF LAWS § 148(2)(a).

[74] RESTATEMENT § 6.

[75] *Burger King*, 471 U.S. at 481-82.

[76] *See, e.g., Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995) (holding opposition to silica regulation could not form basis of jurisdiction as it was constitutionally protected activity); *Mabry v. Reid*, 130 S.W.3d 385, 389 (Tex. App.-Beaumont 2004, no pet.) (affirming order granting special appearance as some evidence supported trial court's factual determination that either there was no settlement agreement or it was not fraudulent); *Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897, 904 (Tex. App.—Dallas 2003, no pet.) (affirming order denying special appearance as some evidence supported trial court's factual determination that nonresidents committed misrepresentation); *French v. Glorioso*, 94 S.W.3d 739, 746-47 (Tex.App.—San Antonio 2002, no pet.) (affirming order granting special appearance as some evidence supported trial court's factual determination that nonresident never made any misrepresentations to resident); *Runnells v. Firestone*, 746 S.W.2d 845, 851-52 (Tex. App.—Houston [14th Dist.] 1988), *writ denied*, 760 S.W.2d 240 (Tex. 1988) (affirming order granting special appearance as some evidence supported trial court's factual

000022

Personal jurisdiction is a question of law for the court, even if it requires resolving questions of fact.[77] But what if a judge and jury could disagree? May a trial judge effectively grant summary judgment in a local jurisdiction by deciding contested liability facts in favor of the defendant? And if a jury absolves a defendant of tort liability, is the judgment void because the court never had jurisdiction of the defendant in the first place?[78]

Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter.

Third, in cases dealing with commerce, a plaintiff often has the option to sue in either contract or tort. Here, for example, Holten alleged tort, contract, and statutory claims, as Texas law often allows a plaintiff to do.[79] If directing a tort at Texas is enough, then personal jurisdiction arises when plaintiffs allege a tort, but not when they allege breach of contract. Thus, the *defendant's* purposeful availment depends on the form of claim selected by the *plaintiff.*

Fourth, changes in technology have made reliance on phone calls obsolete as proof of purposeful availment. While the ubiquity of "caller ID" may allow nonresidents to know a caller's

---

determination that there was no contract).

[77] *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002).

[78] *See CSR Ltd. v.* Link, 925 S.W.2d 591, 594 (Tex. 1996).

[79] *See, e.g., PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 83 (Tex. 2004) (noting that Texas law allows consumers to assert warranty claims as breach of contract or violation of DTPA); *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (holding Texas law allows party fraudulently induced to sign contract to sue in contract or tort).

000023