# United States District Court Southern District of Texas

## Case Number: _H-05 - 1268_

## ATTACHMENT

Description:

☐ State Court Record      ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part _4_ of _____

☐ Exhibit to: _____ TAB-C, TAB-D, TAB-E _____
   number(s) / letter(s) _____

Other: _____ Defendant's Reply to " Plaintiff's
_____ Response In Opposition to Def's
_____ Motion to Dismiss Pursuant
_____ to Rule 12(B)(2) or 12(B)(3)

TAB C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AMERICAN GENERAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No.:  H - 05 - 1268** |
| | ) | |
| **ANTHONY MERCIER, SR.,** | ) | |
| **ANTHONY MERCIER, JR.,** | ) | |
| **CHARLES MERCIER, and** | ) | |
| **MERCIER INSURANCE** | ) | |
| **AGENCY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF ANTHONY G. MERCIER, JR.**

PERSONALLY appeared before the undersigned notary authorized to administer

oaths, came ANTHONY G. MERCIER, JR., who being duly sworn deposes and states as

follows:

1. I am over the age of 18 and competent to make this Affidavit.

2. I have personal knowledge of all facts stated in this Affidavit.

3. My name is Anthony G. Mercier, Jr.

4. I make this Affidavit knowing it will be used in a civil action filed against me by American General in Federal Court in the State of Texas.

5. I signed a producer Agreement with All American which then merged with Old Line sometime in 2001.

6. When All American merged with Old Line in 2001, I did not renew my

Page 1 of 4

000087

contract and never wrote for Old Line.

7.     To the best of my knowledge, I wrote only one (1) or two (2) policies with
       All American in or prior to 2001.

8.     To the best of my knowledge at some point in 2003 their was another merger
       of some kind and Old Line began to call itself American General.

9.     I never signed an agreement to write for Old Line or American General and I
       never wrote for Old Line or American General.

10.    Throughout the time that I wrote applications for policies for All American, I
       followed the procedures set forth in my producer agreement

11.    I wrote one (1) or two (2) policies for All American prior to or in 2001,
       which is prior to when any merger took place.

12.    These one (1) or two (2) policies are the subject of this litigation against me.

13.    The entire time I wrote life insurance for All American, I was working under
       the direction of Bob Walker who is a Vice President in Augusta, Georgia.

14.    As a part of taking applications for insurance for All American, I was required
       to perform only a cursory examination of the facts given to me by the
       applicant.

15.    I would meet with the applicant, discuss what policy they were interested in
       and then they or myself would hand write in their responses to the particular
       questions on the applications.

16.    I was not required to verify the information given by the applicant or question
       it unless it was something obvious to me at the time the information was
       relayed that would cause me to believe the applicant's statement was untrue.
       If any information was untrue, the application would be changed to reflect the
       truth or the application would be rejected.

17.    My examination was minimal in nature because no policy was issued by All
       American without the policy being thoroughly examined by underwriting for
       the company in question.

18.    The independent insurance companies have the ability to input all of the

000088

information provided, such as social security number, dates of birth, drivers license numbers, etcetera, into a computer system which can verify the information provided.

19.     I do not possess such a system and have no way to verify the information that any applicant provides me other than simply looking at the social security card (which contains no photo) or drivers license I am presented with.

20.     I have never been asked by any Insurance Company to do a more thorough review of an applicant because all Insurance Companies utilize underwriting to thoroughly check these applications before issue.

21.     My only responsibility other than taking the application and transmitting it to Mr. Walker's office in Augusta, Georgia, was to make a phone call to EQUIFAX which schedules independently a medical exam of the applicant and reports the information obtained from the exam directly back to the Insurance Company.

22.     I am not a part of the medical exam, receive no information from the exam and am not present for the exam.

23.     What occurs at the medical exam is between the applicant, the medical examiner and the Insurance Company in question.

24.     Throughout the time that we were dealing with All American we were under the companies mid-west operations and communicated and sent out applications to Chicago, Illinois.

25.     I am unable to respond with any real detail to these allegations made by the Plaintiff because they have not accused me of anything specific.

26.     I do not know what about the one (1) or two (2) policies I wrote that the Plaintiff is complaining about or what information contained in the policies is allegedly false. Plaintiff also does not state what I supposedly knew was false information.

27.     I know that I only wrote one (1) or two (2) policies for All American and nothing after 2001 and that to the best of my knowledge, none of the information presented in these applications was or is false.

28.     To the best of my knowledge, if anything was determined by All American to

Page 3 of 4

000089

be false, I was never notified about it or asked to obtain any additional information to clarify anything submitted.

29.   I have never presented any information on an application that I knew or even suspected to be false.

FURTHER AFFIANT SAYETH NOT.

Anthony G. Mercier, Jr.

SWORN TO before me this _14th_ day of July, 2005.

Notary Public for the State of South Carolina

Commission expires  6/16/13

000090

TAB D

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AMERICAN GENERAL LIFE**<br>**INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No.:** __H - 05 - 1268__ |
| | ) | |
| **ANTHONY MERCIER, SR.,** | ) | |
| **ANTHONY MERCIER, JR.,** | ) | |
| **CHARLES MERCIER, and** | ) | |
| **MERCIER INSURANCE** | ) | |
| **AGENCY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF CHARLES MERCIER

PERSONALLY appeared before the undersigned notary authorized to administer oaths, came CHARLES MERCIER, who being duly sworn deposes and states as follows:

1. I am over the age of 18 and competent to make this Affidavit.

2. I have personal knowledge of all facts stated in this Affidavit.

3. My name is Charles "Chuck" Mercier.

4. I make this Affidavit knowing it will be used in a civil action filed against me by American General in Federal Court in the State of Texas.

5. Throughout the time that I wrote applications for policies for All American and Old Line Insurance, I followed the procedures set forth in my producer agreement.

6. To the best of my knowledge, I never signed any producer agreement with

000091

American General. I signed a producer Agreement with All American which then merged with Old Line sometime in 2001. Almost all the policies I wrote under this Agreement were for Old Line. I am unable to find any policies that I wrote for All American and do not believe that I did write any for All American after its merger with Old Line.

7. The entire time I wrote life insurance for Old Line, I was working under the direction of Bob Walker who is the IMO and in charge of marketing for Old Line in Augusta, Georgia.

8. To the best of my knowledge at some point in 2003 their was another merger of some kind and Old Line began to call itself American General.

9. When Old Line began to call itself American General is when my contract was terminated with Old Line and I stopped taking insurance applications for them.

10. As a part of taking applications for insurance, I was required to perform only a cursory examination of the facts given to me by the applicant.

11. I would meet with the applicant, discuss what policy they were interested in and then they or myself would hand write in their responses to the particular questions on the applications.

12. I was not required to verify the information given by the applicant or question it unless it was something obvious to me at the time the information was relayed that would cause me to believe the applicant's statement was untrue. If any information was untrue, the application would be changed to reflect the truth or the application would be rejected.

13. My examination was minimal in nature because no policy was issued by Old Line without the policy being thoroughly examined by underwriting for the company in question.

14. The independent insurance companies have the ability to input all of the information provided, such as social security number, dates of birth, drivers license numbers, etcetera, into a computer system which can verify the information provided.

15. I do not possess such a system and have no way to verify the information that any applicant provides me other than simply looking at the social security

Page 2 of 4

000092

card (which contains no photo) or drivers license I am presented with.

16. I have never been asked by any Insurance Company to do a more thorough review of an applicant because all Insurance Companies utilize underwriting to thoroughly check these applications before issue.

17. My only responsibility other than taking the application and transmitting it to Mr. Walker's office in Augusta, Georgia, was to make a phone call to EQUIFAX which schedules independently a medical exam of the applicant and reports the information obtained from the exam directly back to the Insurance Company.

18. I am not a part of the medical exam, receive no information from the exam and am not present for the exam.

19. What occurs at the medical exam is between the applicant, the medical examiner and the Insurance Company in question.

20. Throughout the time that we were dealing with All American and then Old Line we were under the companies mid-west operations and communicated and sent out applications to initially Chicago, Illinois, and then Milwaukee, Wisconsin.

21. I have never presented any information on an application that I knew or even suspected to be false.

22. I am unable to respond with any real detail to these allegations made by the Plaintiff because they have not accused me of anything specific.

23. I do not know what policies the Plaintiff is complaining about or what information contained in the policies is allegedly false.  Plaintiff also does not state what applications I supposedly knew contained false information.

24. I have, however, gathered every policy in my office that I have a copy of when I was writing for All American and then Old Line.  I do not find any policies for All American.  It is my recollection that I did not write any policies for All American after about 2001.

25. I am unable to find any application for insurance taken by me for Old Line which was submitted after January 2003.  I am unable to find any application for insurance taken by me for All American which was submitted after

Page 3 of 4

December 2002.

26.  This means that I am not in possession of any policy I would have submitted for Old Line after Old Line's merger with American General on March 31, 2003; or for All American after All American's merger with American General in December 2002.

27.  I am at this time unaware of the existence of any such policy. To the best of my knowledge, I did not submit any policies to Old Line or American General after March 31, 2003.

28.  In submitting all of these applications for policies, my office would either send them by facsimile to Bob Walker in Augusta, Georgia or to wherever Mr. Walker directed. It was my intent that such applications would go to Old Line, which as I understood it was in Milwaukee, Wisconsin.

29.  Throughout this time from December 1999 until January 2003 all the Old Line Policies that we wrote were issued from Milwaukee, Wisconsin.

30.  I am without knowledge as to where the policies were reviewed or where decisions were made on issuance, I know only that every policy in my possession from Old Line Insurance Company was issued from Milwaukee, Wisconsin.

FURTHER AFFIANT SAYETH NOT.

_____
Charles Mercier

SWORN TO before me this
__11th__ day of July, 2005.

_____
Notary Public for the State of South Carolina
1-3-2007

000094

TAB E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AMERICAN GENERAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No.:  H - 05 - 1268** |
| | ) | |
| **ANTHONY MERCIER, SR.,** | ) | |
| **ANTHONY MERCIER, JR.,** | ) | |
| **CHARLES MERCIER, and** | ) | |
| **MERCIER INSURANCE** | ) | |
| **AGENCY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF KRISTINA M. ANDERSON

PERSONALLY appeared before the undersigned notary authorized to administer oaths, came KRISTINA M. ANDERSON, who being duly sworn deposes and states as follows:

1. I am over the age of 18 and competent to make this Affidavit.

2. I have personal knowledge of all facts stated in this Affidavit.

3. My name is Kristina M. (Michelle) Anderson.

4. I am an attorney licensed to practice law in the States of South Carolina and Georgia.

5. I am in good standing with the Bars of South Carolina and Georgia and actively practice in both states.

6. I am admitted to practice law in the United States District Court for the District of South Carolina and the United States District Court of Georgia

Page 1 of 2

000095

for the Northern, Southern and Middle Districts.

7.      I make this Affidavit knowing it will be used on behalf of the Defendants in the above-captioned civil action in Federal Court in the State of Texas.

8.      I have reviewed numerous cases filed by American General in the District Court of South Carolina to rescind issued policies for life insurance.

9.      Specifically, I reviewed twelve (12) such Complaints filed by American General in 2003 and 2004 seeking recission of life insurance policies written for insureds in the State of South Carolina.

10.     One such Complaint with all attachments thereto is attached hereto as Exhibit "A" and incorporated herein by reference.  This is the case of: *American General Life Insurance Company v. Pete A. Sherlock and Lillie Sherlock C/A No.: 1 04 2424 27.*

11.     The Complaint by American General pleads that **the District Court of South Carolina "is a proper venue for this declaratory judgment action since the Defendants reside in North Augusta, South Carolina and a substantial part of the acts or omissions giving rise to this dispute occurred in North Augusta, South Carolina**."

12.     This jurisdiction and venue portion of American General's *Sherlock* Complaint is the same for all the Complaints filed by American General that were reviewed by the undersigned.

13.     The Complaint in question, *American General v. Sherlock*, is a Complaint to rescind a life insurance policy written by Charles Mercier and Anthony G. Mercier, Sr.,  Defendants in the within action filed by American General in Houston, Texas.

FURTHER AFFIANT SAYETH NOT.

*Kristina M. Anderson*
Kristina M. Anderson

SWORN TO before me this
__14th__ day of July, 2005.

*Julie Padgett*
Notary Public for the State of South Carolina
*1-3-2007*

Page 2 of 2

000096

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

**FILED**

JUL 2 1 2004

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

American General Life Insurance
Company,

)
)
)

       Plaintiff,

)
)

Case Number:

.1  04  2424  27

v.

)
)
)

**COMPLAINT FOR DECLARATORY
JUDGMENT**

Pete A. Sherlock and Lillie Sherlock,

)
)

       Defendants.

)
)
)

Plaintiff, American General Life Insurance Company, as successor in interest to The Old

Line Life Insurance Company of America ("AGLIC"), by and through its attorneys, files this

complaint for Declaratory Judgment against the Defendants, Pete A. Sherlock and Lillie

Sherlock, and alleges and says:

### THE PARTIES

1.     AGLIC is a life insurance company organized under the laws of, and maintains a

principal place of business in, the State of Texas and is a citizen of the State of Texas.

2.     Upon information and belief, Pete A. Sherlock maintains a primary residence

located at 101 Thistle Court, North Augusta, South Carolina 29861 and is a citizen of the State of

South Carolina.  Pete Sherlock may be served by sending a copy of the Complaint by certified

mail, restricted delivery, return receipt requested to Post Office Box 7033, North Augusta, South

Carolina 29861.

3.     Upon information and belief, Lillie Sherlock maintains a primary residence

located at 101 Thistle Court, North Augusta, South Carolina 29861 and is a citizen of the State of

South Carolina.  Lillie Sherlock may be served by sending a copy of the Complaint by certified

000097 

EXHIBIT "A"

mail, restricted delivery, return receipt requested to Post Office Box 7033, North Augusta, South Carolina 29861.

**JURISDICTION AND VENUE**

4.     This Court is a proper venue for this declaratory judgment action since the Defendants reside in North Augusta, South Carolina and a substantial part of the acts or omissions giving rise to this dispute occurred in North Augusta, South Carolina.

**FACTUAL BACKGROUND**

5.     AGLIC is, and during all relevant times has been, in the business of underwriting and issuing policies of life insurance and is authorized to transact the business of insurance in the State of South Carolina.

**I.     Policy Number MM0353786**

6.     On or about May 25, 2002, Pete A. Sherlock, as named insured and owner, applied in writing to AGLIC seeking the issuance of a life insurance Policy number MM0353786 (the "Policy"). The application for the Policy is attached as Exhibit A and is incorporated by reference as if fully set forth herein.

7.     In completing the life insurance application seeking the issuance of the Policy, Pete A. Sherlock knew that he was required to provide truthful, accurate and honest answers to the questions presented on the application.

8.     In completing the life insurance application seeking the issuance of the Policy, Pete A. Sherlock knew that AGLIC would rely upon the answers recorded on the application in determining whether he was insurable and qualified for the policy for which he applied.

9.     In completing the life insurance application seeking the issuance of the Policy, Pete A. Sherlock knew that he might be subject to civil and/or criminal penalties in the event he

-2-

000098

knowingly made a false statement in order to obtain an insurance policy and/or insurance benefits.

10.     In completing Part A of the life insurance application seeking the issuance of the Policy, Pete A. Sherlock represented that he was born on January 31, 1952, that his Social Security number is 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, that he lived at 101 Thistle Court, N. Augusta, South Carolina, 29861 and that his South Carolina driver's license number was 2055649.

11.     In completing Part A of the life insurance application seeking the issuance of the Policy, Pete A. Sherlock represented, acknowledged, and agreed that "[t]he above statements are true and complete to the best of my knowledge and belief . . . this application: (1) will consist of Part A, Part B, and if applicable, related forms."

12.     In completing Part A of the life insurance application seeking the issuance of the Policy, Pete A. Sherlock allegedly signed Part A of the application.

13.     On May 28, 2002, Pete A. Sherlock, as named insured and owner of the Policy, completed Part B of the application for life insurance.

14.     In completing Part B of the life insurance application seeking the issuance of the Policy, Pete A. Sherlock provided material information in response to questions presented on the application pertaining to, among other things, the health, medical condition and identity of the proposed insured.

15.     In completing Part B of the application seeking the issuance the Policy from AGLIC, Pete A. Sherlock represented that he was born on January 31, 1952; that his Social Security number is 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; that he has been self-employed for 35 years; and that he has a net worth of approximately $200,000 and a personal income of $75,000.

000099

16.    In completing Part B of the application seeking the issuance of the Policy from AGLIC, Pete A. Sherlock represented, acknowledged, and agreed that "[t]he above statements are true and complete to the best of my knowledge and belief . . . this application: (1) will consist of Part A, Part B, and if applicable, related forms."

17.    In completing Part B of the application seeking the issuance of the Policy from AGLIC, Pete A. Sherlock allegedly signed Part B of the application.

18.    On May 28, 2002, Pete A. Sherlock submitted to medical examination, during that medical examination Pete A. Sherlock allegedly provided the medical examiner with his South Carolina driver's license.   The South Carolina driver's license provided during the medical examination bore the number 002055649.   The medical examination form is attached as Exhibit B and is incorporated by reference as if fully set forth herein.

19.    On the basis of the statements and representations obtained during the application process and in reliance upon Pete A. Sherlock's complete candor, honesty and openness in disclosing information in response to questions presented during the application process, AGLIC approved the issuance of the Policy.

20.    The Policy contains an issue date of July 24, 2002 and provides for a specified death benefit of $500,000.  The Policy is attached as Exhibit C and is incorporated by reference as if fully set forth herein.

21.    On December 30, 2002, Pete Sherlock completed a change of ownership form for the Policy changing the owner to Lillie Sherlock, his alleged wife.  On the change of ownership form, Pete Sherlock indicates that his Social Security number is 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 and Lillie Sherlock indicates that her Social Security number is 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. The change of ownership form for the Policy is attached as Exhibit D and is incorporated by reference as if fully set forth herein.

000100

22. On January 27, 2003, the request for change of ownership was accepted. The acceptance of the change in ownership is attached as Exhibit E and is incorporated by reference as if fully set forth herein.

## FIRST COUNT

23. Following the issuance of the Policy, AGLIC discovered, for the first time, that the statements and representations contained in the written application were materially false; that Pete A. Sherlock knowingly, negligently and/or intentionally made material misstatements of fact, failed to disclose and omitted material facts; and otherwise and intentionally failed to accurately, honestly and/or truthfully answer and disclose material information in response to the questions presented on the written application. Had Pete A. Sherlock completed the application truthfully and provided AGLIC with the correct answers, the Policy would have been denied.

24. Specifically, and on information and belief, Pete A. Sherlock failed to disclose information pertaining to his true identity.

25. Specifically, and on information and belief, the driver's license number provided during the application process by Pete A. Sherlock is not his own, is false and/or is used by another.

26. Specifically, and on information and belief, Pete A. Sherlock does not and/or did not reside at the address listed on the application.

27. Specifically, and on information and belief, Pete A. Sherlock misrepresented his net worth and his personal income to AGLIC.

28. Specifically, and on information and belief, Pete A. Sherlock uses several different Social Security number (*i.e.* 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; 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; 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; and 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).

000101

-5-

29.     Specifically, and on information and belief, Pete A. Sherlock misrepresented his date of birth.

30.     Specifically, and on information and belief, Pete A. Sherlock has been charged with and/or pled guilty or no contest to a felony.

31.     The misstatements, misrepresentations, errors and omissions described above in paragraphs 1 through 30 were made with the actual intent to deceive. Had AGLIC known of the misstatements, misrepresentations, errors and omissions at the time of underwriting or reinstatement, it would have materially affected AGLIC's the acceptance of the risk and/or hazard assumed. Had AGLIC known of the misstatements, misrepresentations, errors and omissions at the time of underwriting or reinstatement, it would have issued the Policy under materially different terms, if at all.

32.     AGLIC has no adequate remedy at law and therefore requests that the Policy be declared null and void and rescinded, *ab initio*, and that the Court grant leave to deposit with the Clerk of the Court all premiums heretofore paid for coverage under the policy of life insurance and any interest owed pursuant to applicable law.

WHEREFORE, AGLIC demands judgment against Pete A. Sherlock or in the alternative for relief more particularly described as follows:

(a)     An order declaring and adjudging the policy of life insurance bearing the number MM0353786 to be null and void and rescinded, *ab initio*;

(b)     An order permitting AGLIC to deposit with the Clerk of the Court all premiums heretofore paid for coverage under the policy of life insurance and any interest owed pursuant to applicable law; and

000102

(c)    An order awarding prejudgment interest, post judgment interest, cost of suit, reasonable attorneys' fees and such other relief as this Court deems equitable and just to AGLIC.

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.

By: _Christina Rampey_

C. Mitchell Brown
Federal Bar No. 5283
E. Christina Rampey
Federal Bar No. 7859
Meridian, 17th Floor
1320 Main Street
Post Office Box 11070 (29211)
Columbia, SC  29201
(803) 799-2000

July 21, 2004

OF COUNSEL:

Bracewell & Patterson, L.L.P.

David T. McDowell
State Bar No. 00791222
Kirsten Barron Cohoon
State Bar No. 24034382

South Tower Pennzoil Place
711 Louisiana, Suite 2900
Houston, Texas 77002
(713) 223-2900 (Telephone)
(713) 221-1212 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**
**AMERICAN GENERAL LIFE INSURANCE COMPANY**

000103

**AMERICAN GENERAL FINANCIAL GROUP**

ATTACHMENT A

## Part A  Life Insurance Application

☐ American General Life Insurance Company, Houston, TX
☐ AIG American Life Insurance Company, Springfield, IL
☑ The Old Line Life Insurance Company of America, Milwaukee, WI
☐ The American Franklin Life Insurance Company, Springfield, IL
☐ The Franklin Life Insurance Company, Springfield, IL
☑ The United States Life Insurance Company in the City of New York, New York, NY

Members American General Financial Group. American General Financial Group is the marketing name for American General Corporation and its subsidiaries.

In this application, "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

| Personal Information |
| --- |

**1. Primary Proposed Insured**

Name KETE A SHELLOCK                Social Security # 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    Sex ☑ M ☐ F

Birthplace (state, country) S C.                Date of Birth 1-31-52    Age 46

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☑ no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License No. 205564 9    State SC  U.S.Citizen ☑ yes ☐ no  If no, Date of Entry _____    Visa Type _____

Address 101 Thistle Court            City, State N. AUG, SC        ZIP 28861

Home Phone (803) 279-7537  Work Phone (   )            E-mail Address _____

Employer SELF EMPLOYED (PUTM)  Occupation _____            Length of Employment 20y

Employer Address Same            City, State            ZIP _____

Duties PAINTER

Personal Income $ 60/00 75K    Household Income $ actual        Net Worth $ 200,000

**2. Other Proposed Insured**

Name _____                Social Security # _____    Sex ☐ M ☐ F

Birthplace (state, country) _____                Date of Birth _____    Age _____

Relationship to Primary Proposed Insured _____

Tobacco use  Have you ever used any form of tobacco or nicotine products? ☐ yes ☐ no  If yes, date of last use _____

If yes, type and quantity of tobacco or nicotine products used _____

Driver's License No. _____    State _____  U.S.Citizen ☐ yes ☐ no  If no, Date of Entry _____    Visa Type _____

Address _____            City, State            ZIP _____

Home Phone (   )            Work Phone (   )            E-mail Address _____

Employer _____            Occupation _____            Length of Employment _____

Employer Address _____            City, State            ZIP _____

Duties _____

Personal Income $ _____    Household Income $ _____        Net Worth $ _____

**3. Child Rider (Complete if a proposed insured requests child riders. If more than three children, list information in the Remarks section. Remember to complete Part B, sections 3-7, for all proposed insured children.)**

| Child Name | Sex | Birthplace (state, country) | Date of Birth |
| --- | --- | --- | --- |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |
| _____ | ☐ M ☐ F | _____ | _____ |

AGLC 0006-2001

Page 1 of 4

000104

## Ownership

4. Owner  ☒ Primary Proposed Insured   ☐ Other Proposed Insured   ☐ Trust   ☐ Other than a Proposed Insured or Trust
   A. Complete if the proposed insured is not the owner (If contingent owner is required, use Remarks section.)
   Name _____ Social Security or Tax ID # _____ Date of Birth _____
   Address _____ City, State _____ ZIP _____
   Home Phone (_____) _____ Relationship to Primary Proposed Insured _____
   B. Complete if owner is a trust (If trustee is premium payor, also complete section 14 D.)
   Exact Name of Trust _____ Trust Tax ID # _____
   Current Trustee(s) _____ Date of Trust _____

## Product Information

5. Plan of Insurance   Product Name (If variable, complete appropriate supplement.) _Boys Term_
   Amount Applied For: Base Coverage $ _500,000_ _____ Supplemental Coverage (if applicable) $ _____
   Death Benefit Compliance Test Used (if applicable): ☐ Guideline Premium  ☐ Cash Value Accumulation _Minimum_
   Premium Class Quoted _3 N/S_
   Reason for Insurance _Personal_

6. Dividend Options (For participating policy only)
   ☐ Cash   ☐ Premium Reduction   ☐ Paid-up Additions   ☐ Deposit Earning Interest   ☐ Other (Explain) _____

7. Death Benefit Options (For universal life & variable universal life only)   ☒ Option 1 - Level   ☐ Option 2 - Increasing

8. Riders   ☐ Waiver of Premium   ☐ Waiver of Monthly Deduction   ☒ Waiver of Monthly Guarantee Premium
   ☐ Maturity Extension Rider – Accumulation Value   ☐ Maturity Extension Rider – Death Benefit   ☐ Terminal Illness Rider
   ☐ Accidental Death Benefit $ _____   ☐ Other Insured $ _____   ☐ Child $ _____
   ☐ Spouse $ _____ Plan _____   ☐ Other Rider(s) _____

## Beneficiary

9. Primary   Name _Lillie Shraker_   Relationship _Wife_   % Share _100_
   Name _____   Relationship _____   % Share _____

10. Contingent   Name _____   Relationship _____   % Share _____
    Name _____   Relationship _____   % Share _____

11. Trust Information   Exact Name of Trust _____   Trust Tax ID # _____
    Current Trustee(s) _____   Date of Trust _____

12. Rider Beneficiaries   Spouse Rider _____   Child Rider _____

## Business Coverage

13. Business Details (Complete only if applying for business coverage.)
    Does any proposed insured have an ownership interest in the business? ☒ yes ☐ no
    If yes, what is the percentage of ownership for the: Primary Proposed Insured _100 %_   Other Proposed Insured _____
    If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no
    Describe any special circumstances _____

## Premium

14. Premium Payment   ☒ Modal _Military_   ☐ Single $ _____   ☐ Additional Initial $ _____
    A. Frequency of modal premium:   ☐ Annual   ☐ Semi-annual   ☐ Quarterly   ☒ Monthly (Bank draft)
    B. Method:   ☐ Direct Billing   ☒ Bank Draft (Complete Bank Draft Authorization.)   ☐ List Bill: Number _____
    ☐ Other (Please explain) _____
    C. Amount submitted with application $ _0_
    D. Premium Payor (Complete if other than proposed insured.)
    Name _____ Social Security or Tax ID # _____ Home Phone (_____) _____
    Address _____ City, State _____ ZIP _____

AGLC 0334-2001

Page 2 of 8

000105

## Existing Coverage

**15. Other Life Insurance or Annuities**   *(Indicate life insurance policies or annuities in force or pending for the proposed insured(s).)*
☐ Check if none
Type: i = individual, b = business, g = group, p = pending life insurance or annuity

| Name of Proposed Insured | Policy Number | Insurance Company | Type(s) (see above) | Year of Issue | Face Amount | Replace* | 1035 Ex |
|---|---|---|---|---|---|---|---|
| _____ | _____ | _____ | ___ | ___ | _____ | ☐ yes | ☐ yes |
| _____ | _____ | _____ | ___ | ___ | _____ | ☐ yes | ☐ yes |
| _____ | _____ | _____ | ___ | ___ | _____ | ☐ yes | ☐ yes |

\* Replace means that the insurance being applied for may replace, change or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms. Please note: certain states require completion of replacement related forms even when other life insurance or annuities are not being replaced by the policy being applied for.

## Limited Temporary Life Insurance Eligibility

**16. Health and Age Questions**   *(If any proposed insured answers yes to either question, temporary insurance is not available, the agreement will be void and any payment submitted will be refunded.)*

A. Has any proposed insured ever had a heart attack, stroke, cancer, diabetes or disorder of the immune system, or during the last two years been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?   ☐ yes ☐ no

B. Is any proposed insured age 71 or above?   ☐ yes ☐ no

## Nonmedical Questions

**17. Background Information**   *(Complete questions A through F for all proposed insureds who are applying. If yes answer applies to any proposed insured, provide details specified after each question.)*

A. Do any proposed insureds intend to travel or reside outside of the United States or Canada within the next two years?
*(If yes, list proposed insured's name, country, date, length of stay and purpose.)*   ☐ yes ☐ no
_____

B. In the past five years, have any proposed insureds participated in, or do they intend to participate in: any flights as a trainee, pilot or crew member, scuba diving, skydiving or parachuting, ultralight aviation, auto racing, cave exploration, hang gliding, boat racing, mountaineering, extreme sports or other hazardous activities?
*(If yes, circle the applicable activities and complete the Aviation and/or Avocation Questionnaire.)*   ☐ yes ☐ no

C. Have any proposed insureds:

1) During the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?
*(If yes, list proposed insured's name, company name, amount applied for, purpose of insurance and if app will be placed.)*   ☐ yes ☐ no
_____

2) Ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled or refused for renewal?
*(If yes, list proposed insured's name, date and reason.)*   ☐ yes ☐ no
_____

D. Have any proposed insureds ever filed for bankruptcy? *(If yes, list proposed insured's name, chapter filed, date, reason and if discharged.)*   ☐ yes ☐ no
_____

E. In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations? *(If yes, list proposed insured's name, date, state, license no. and specific violation.)*   ☐ yes ☐ no
_____

F. Have any proposed insureds ever been convicted of, or pled guilty or no contest to a felony, or do they have any such charges pending against them? *(If yes, list proposed insured name, date, state and felony.)*   ☐ yes ☐ no
_____

## Remarks

**18. Details and Explanations**   REQUEST ALTERNATE 200,000 AG CLASSIC
_____

000106

## Authorization and Signatures

**Authorization to Obtain and Disclose Information and Declaration**

I hereby give my consent to all of the entities listed below to give American General Life Companies (AGLC), (a corporation providing services to affiliated life insurance companies that are members of American General Financial Group), its legal representative or its affiliated life insurance companies, all information they have pertaining to medical consultations, treatments, or surgeries; hospital confinements for any physical and mental conditions; use of drugs or alcohol; or any other nonmedical information; for me, my spouse, or my minor children. Nonmedical information could include items such as: personal finances, habits, hazardous avocations, motor-vehicle records from the Department of Motor Vehicles or court records, foreign travel, etc. The list of entities for which I give my consent to provide the information above is as follows: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by AGLC and its affiliated insurers to determine eligibility for insurance and eligibility for benefits under an existing policy. AGLC or its affiliated insurers may disclose such information and any information developed during its evaluation of my application to: its reinsurers, MIB, other persons or organizations performing business or legal services in connection with my application or claim, me, any physician designated by me, or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may, upon written request, obtain a copy of this consent from AGLC.

This consent will be valid for 24 months from the date of this application. I agree that a photocopy of this consent will be as valid as the original. I authorize AGLC to obtain an investigative consumer report on me. I understand that I may: request to be interviewed in connection with the preparation of the report; and receive, upon written request, a copy of such report. ☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. The above statements are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued on this application. I understand that any misrepresentation contained in this application and relied on by the insurer issuing the policy may be used to reduce or deny a claim or void the policy, if it is within its contestable period and if such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA) for which all eligibility requirements are met, I understand and agree that no insurance will be in effect pursuant to this application, or under any new policy issued by the insurer, unless or until the policy has been delivered and accepted, the full first modal premium for the issued policy has been paid, and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability, make or modify contracts, or waive any of the insurer's rights or requirements.

I have received a copy of the Notice to Proposed Insured regarding Fair Credit Reporting Act, the MIB, Insurance Information Practices, and Telephone Interview Information.

Limited Temporary Life Insurance Agreement – If eligible, I have received and accepted the LTLIA. Temporary insurance is available only if the full first modal premium is submitted with this application and only "no" answers have been given by any proposed insured to the Health and Age questions in section 16.

Under penalties of perjury, I certify: (1) that the number shown on this application is my correct Social Security or Tax ID number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code; and (3) that I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require my consent to any provision of this document other than the certifications required to avoid backup withholding. You must cross out item (2) if you are subject to backup withholding and cross-out item (3) if you are not a U.S. person (including a U.S. resident alien).

Proposed Insured(s)/Owner Signature(s)

Signed at (city, state) _____ On (date) 5/28/2002

X _____   X _____
Primary Proposed Insured (if under age 15, signature of parent or guardian)     Other Proposed Insured (if under age 15, signature of parent or guardian)

X _____
Owner (if other than proposed insured)

**Agent(s) Signature(s)**

I certify that the information supplied by the proposed insured(s)/owner has been truthfully and accurately recorded on the Part A application.

Writing Agent Name (please print) C MERCIEL          Writing Agent # OAK60

X _____   X _____
Writing Agent Signature     Countersigned (Licensed resident agent if state required)

If the Company needs to contact the proposed insured(s), when would be the best time to call?

Time _____   Day of the Week _____   Date _____   Phone # ( ___ ) _____

000107

# Single Insured
# Life Insurance Application

AMERICAN
GENERAL
FINANCIAL GROUP

☐ American General Life Insurance Company, Houston, TX
☑ The Old Line Life Insurance Company of America, Milwaukee, WI
☐ All American Life Insurance Company, Springfield, IL
☐ The Franklin Life Insurance Company, Springfield, IL
☐ The American Franklin Life Insurance Company, Springfield, IL

Members of American General Financial Group. American General Financial Group is a marketing name for American General Corporation and its subsidiaries.

In this application, the "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

## Personal and Employer Information

**Proposed Insured**

Name _Pete A. Sherlock_

Social Security # _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_    Date of birth _1-31-52_

Employer _Self Employed_

Employer address _101 Thistle Ct., N. Augusta, S.C. 29860_

Zip _29841_    Phone # _843-279-7537_    Length of employment _35 years_

Net worth $ _600,000_    Household income $ _35,000_

## Background Information

*Provide any additional details to "yes" answers for questions 1–6 in the "Remarks" section on page 4.*

_Pete A. Sherlock_
**Proposed Insured**

1. Do you intend to travel or reside outside of the United States or Canada within the next two years?
   ☐ yes ☑ no
   Country, purpose, and date

2. In the past five years, have you participated in, or do you intend to participate in: any flights as a trainee, pilot or crew member; scuba diving; skydiving or parachuting; ultralight aviation; auto racing; cave exploration; hang gliding; boat racing; mountaineering; or other hazardous activities?
   ☐ yes ☑ no    If yes, complete the Aviation and/or Avocation Questionnaire.

3. Has proposed insured:
   a) during the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?
   ☐ yes ☑ no    If yes, explain.

   b) ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled, or refused for renewal?
   ☐ yes ☑ no    If yes, explain.

AGLC 0034-41

Page 1

**Background Information continued**

4. Have you ever filed for bankruptcy?

☐ yes   ☒ no

Type of bankruptcy _____

Date _____   Date of discharge _____

5. In the past five years, have you been charged with or convicted of driving under the influence of alcohol or drugs, or had two or more driving violations?

☐ yes   ☒ no   *If yes, explain.*

State _____   License # _____

_____

_____

6. Have you ever been convicted of or plead guilty or "no contest" to a felony or do you have any such charge pending against you?

☐ yes   ☒ no   *If yes, explain.*

State _____   Date _____

_____

_____

## Medical History

*Provide any additional details for answers to questions 7-9 in the "Remarks" section on page 4.*

Proposed Insured *Rolin A. Shydock*

7. Name and address of your personal physician(s).  *Write "none" if you don't have one.*

Dr. William Thurmond

309 West Aven., N. Augusta, S.C. 29841

Date, reason, findings of last visit.

9/2001  Routine annual checkup for N.B.R. Normal. continue
Zestril 10 mg ʒd. Controlled

8. Height and weight.

ft. 5' 10" in.   182 lbs.

Have you had any weight change in excess of 10 lbs. in the past year?

☐ yes   ☒ no   *If yes, explain.* _____

_____

_____

9. What is your family history?

| | Age if living | Age at death | Current condition or cause of death |
|---|---|---|---|
| **Proposed Insured** | | | |
| Father | | 82 | States Cause unknown |
| Mother | | 81 | States Cause unknown |

AGLC 0034-41

000109

**Medical History Continued**

*For questions 10-16, provide additional information as requested in the "Remarks" section on page 4.*

Pete A. Sherlock
Proposed
Insured

10. Have you ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

   a) any heart disease, heart attack, chest pain, irregular heart beat, high cholesterol, high blood pressure, or any other disorder of the heart or blood vessels? ☑ yes ☐ no

   b) any blood clot, aneurysm, stroke, or other disease, disorder, or blockage of the arteries or veins? ☐ yes ☑ no

   c) any cancer, cysts, tumors, masses, or other such abnormalities? ☐ yes ☑ no

   d) diabetes, disorder of the thyroid or other glands, immune system disorder, or blood or lymphatic system disorder? ☐ yes ☑ no

   e) any disorder of the stomach or liver, colitis, hepatitis, or any disorder of the digestive system or other such organs? ☐ yes ☑ no

   f) any disorder of the kidneys, prostate, urinary system, or reproductive organs? ☐ yes ☑ no

   g) any asthma, bronchitis, emphysema, sleep apnea, or other breathing or lung disorders? ☐ yes ☑ no

   h) any brain or spinal cord disorders, seizures, or other nervous system abnormalities including mental and nervous disorders? ☐ yes ☑ no

   i) arthritis, muscle disorders, or other bone or joint disorders? ☐ yes ☑ no

11. Are you currently taking any medication, treatment, or therapy, or are you under medical observation? ☑ yes ☐ no

12. Have you in the past three years had:

   a) fainting spells, nervous disorders, headaches, convulsions, or paralysis? ☐ yes ☑ no

   b) any pain or discomfort in the chest or shortness of breath? ☐ yes ☑ no

   c) disorders of the stomach, intestines, or rectum, or blood in the urine? ☐ yes ☑ no

13. Have you ever:

   a) sought or received advice, counseling, or treatment by a medical professional for the use of alcohol or drugs including prescription drugs? ☐ yes ☑ no

   b) used cocaine, marijuana, heroin, controlled substances, or any other drug except as legally prescribed by a physician? ☐ yes ☑ no

   *(If "yes" answered to a or b, complete Drug/Alcohol Questionnaire.)*

14. Have you ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)? ☐ yes ☑ no

15. In the past 10 years, have you:

   a) been hospitalized, consulted a health care provider, or had any illness, injury, or surgery? ☐ yes ☑ no

   b) had any laboratory tests, treatments, or diagnostic procedures, including x-rays, scans, or EKGs? ☐ yes ☑ no

   c) been advised to have any diagnostic test, hospitalization, or treatment that was not completed? ☐ yes ☑ no

   d) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability, or impaired condition? ☐ yes ☑ no

AGLC 0234-41

Page 3

000110

**Medical History continued**

Peter A. Sherlock
Proposed
Insured

**16.** Do you have any symptoms or knowledge of any other condition that is not disclosed above?

☐ yes  ☒ no

### Remarks

*Identify question number and provide details to any questions answered "yes" in the "Background Information" and "Medical History" sections. Include such details as: date of first diagnosis; name and address of doctor; tests performed; test results; medication(s) or recommended treatment. If necessary, attach additional pages to record responses.*

10. 1) BP onset 1998
See dr + med. # 1. Controlled

AGLC 0034-41

Page 4

000111

**Your Signature**

**Statements by the proposed insured**

I have read the above statements or they have been read to me. The above statements are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and, if applicable, Part C and related forms; and (2) shall be the basis for any policy issued on this application. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA) for which all eligibility requirements are met, I understand and agree that no insurance will be in effect pursuant to this application, or under any policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has

been no change in the health of the proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the Company's rights or requirements.

**Insurance fraud**

Any person who, with intent to defraud or facilitate a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Signatures**

X Owner _Pete A Shelost_ Date _5-28-02_

Signed at (city, state) _N. Augusta, S.C._

X Witness _Barbara Bryant (Barbara Gomez, 70-_ Date _5-28-02_

X Proposed insured _Pete A Shelost_ Date _5-28-02_

(If under age 15, signature of parent or guardian)

I certify that I have truthfully and accurately recorded on the Part B application the information supplied by the proposed insured.

Agent name (please print) _Tony Mercer_

Agent # _____ State license # _____

X Agent _____ Date _____

AGLC 0034-41

000112

**CLINICAL REFERENCE LABORATORY**
8433 Quivira Road, Lenexa, Kansas 66215

LAB CODE

0032753858

**INSURANCE COMPANY NAME** — OLD LINE LIFE
**REGIONAL OFFICE**
**AGENT NUMBER OR CODE**

**CITY** — Milwaukee
**STATE** — WI
**AGENT NAME** — TONY MERCIER

**TYPE OF INSURANCE**
INDIVIDUAL ☒  GROUP ☐  LIFE ☒  HEALTH ☐  OTHER ☐  DISABILITY ☐  MAJOR MED ☐  LONG TERM CARE ☐  CRITICAL ILLNESS ☐  BROKERAGE ☐

**POLICY NUMBER**
**AGENCY NAME**
**POLICY AMOUNT**

**LAST NAME** — SHERLOCK
**FIRST NAME** — ACE
**DATE OF BIRTH** — 04/30/1952
**SOCIAL SECURITY NUMBER** — 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
**GENDER** — M ☐ F ☒

**DRIVERS LICENSE NUMBER** — 007 645649
**STATE** — SK
**PICTURE VERIFIED** — YES ☒ NO ☐

**STREET ADDRESS** — 101 THISTLE CT
**CITY** — Milwaukee
**STATE** — SK

**ZIP CODE** — 29167
**E MAIL ADDRESS**

**DATE AND TIME OF LAST FOOD AND DRINK** — 05/27/02 12H 70 PM
**DATE AND TIME SPECIMEN WAS OBTAINED** — 05/28/2002 8H 04 PM
**DATE AND TIME BLOOD CENTRIFUGED** — 05/20/2002 8H 00 PM

1 DO YOU SMOKE CIGARETTES? ☐ YES ☒ NO
- IF NO, HOW LONG SINCE YOU LAST SMOKED CIGARETTES?
- DO YOU USE ANY TOBACCO PRODUCTS? ☐ YES ☒ NO
- IF NO, HOW LONG SINCE YOU LAST USED TOBACCO PRODUCTS?
- DO YOU USE A NICOTINE SUBSTITUTE ☐ YES ☒ NO

2 Any history of Diabetes? ☐ YES ☒ NO   High blood pressure? ☒ YES ☐ NO
   Heart disease? ☐ YES ☒ NO   Protein/Album in in urine? ☐ YES ☒ NO
3 In the past 5 years have you had a moving violation or your driver's license restricted, suspended or revoked? ☐ YES ☒ NO
4 Are you currently taking any prescription medications? ☒ YES ☐ NO   If yes, please list: Zocor
5 Current woman? ☐ YES ☒ NO

**SPECIMEN ID NO** — 0032753858

**DO NOT COMPLETE THIS SECTION UNLESS INSTRUCTED BY THE INSURANCE COMPANY**

**HEIGHT** — 5' 10"
**WEIGHT** — 178
**BLOOD PRESSURE** — 128/86
**PULSE** — RATE AT REST 64   IRREGULAR? 0

**MALE APPLICANT ONLY**
CHEST (if in spdse) — 45   CHEST (if not in spdse) — 40   ABS (if in spdse) — 37

**EXAMINER COMPANY** — APPS ☐ EMSI ☐ EXAMONE ☐ PORTAMEDIC ☒ Other
**PHONE** — (706) 787-7696
**EXAMINER NAME** — A GRAVES, RN 1
**CITY** — AUGUSTA
**STATE** — GA
**ZIP** — 30809-

**SPECIAL TESTS** — FULL DRUG ☐ MICROALBUMIN ☐ A1C ☐ OGD ☐ COT ☐ HIV ONLY ☐ PSA ☐ OTHER ☐
**COMMENTS**

**NOTICE TO LAB USE ONLY**

**CHECK LAB USE ONLY**
SS ☐ ML ☐ UL ☐ SERUM ML ☒ UL ☐ PURPLE TOP ML ☐ UL ☐
SALIVA SS ☐ PG ☐ IN ☐ NS ☐ US ☐ URINE SS ☒ PG ☐ IN ☐ NS ☒ US ☐

L SMAY 29 02

TAMPER EVIDENT TAPE
PROPOSED INSURED SIGNATURE X
PLACE OVER CAP
0032753858

COLLECTOR INITIALS —   DATE

**ATTACHMENT B**

**ORIGINAL TO LAB**

10/01

000113

**ATTACHMENT**

_C_

DEBBIE

NO AGENT ADDRESS FOUND

AGENCY: *
AGENT : X DEBBIE
MAILTO: NONE
POLICY: MM0353786

000114

PO Box 401
Milwaukee WI 53201-0401
888 653 5463

## THE OLD LINE LIFE Insurance Company of America

**POLICY DELIVERY RECEIPT**

Contract/Certificate Number: _____  MM0353786

Owner: _____  LILLIE SHERLOCK

**My life or annuity contract/certificate has been delivered to me.**

Date: _____

Owner Signature: _____

**IMPORTANT NOTICE:   The laws of your state may require the completed Policy Delivery
Receipt be returned to the Insurance Company.**

SOUTH CAROLINA

000115

# AMERICAN GENERAL LIFE INSURANCE COMPANY

LILLIE SHERLOCK
PO BOX 7033
NORTH AUGUSTA SC    29861

Company: OLD LINE LIFE INSURANCE COMPANY
Policy Number: MM0353786
Insured or Annuitant: LILLIE SHERLOCK

## ASSUMPTION CERTIFICATE

This certificate has been issued as a result of a merger on March 31, 2003 of:

THE OLD LINE INSURANCE COMPANY OF AMERICA, a Wisconsin insurance corporation
(Old Line Life);

Into

AMERICAN GENERAL LIFE INSURANCE COMPANY, a Texas insurance corporation (American General
Life), the surviving company.

This is to certify that American General Life hereby assumes all liability for the insurance policy,
certificate or annuity contract identified above issued by Old Line Life (or any predecessor company) the
same as if it had been issued originally by American General Life. Benefits under the policy, certificate
or annuity contract identified above will not change as a result of this merger.

This certificate is effective March 31, 2003.

Signed at the Home Office of American General Life Insurance Company,

_Elizabeth M. Snell_
Secretary

**IMPORTANT**

_P._
President

This certificate becomes a part of your policy, certificate or annuity contract, and should be attached
thereto. All inquiries should be directed to American General Life Insurance Company, 2727-A Allen
Parkway, Houston, Texas 77019 (Mailing Address: P.O.Box 4373, Houston, TX 77210-4373).

FOR INFORMATION OR TO MAKE A COMPLAINT, CALL US AT 1-800-937-2351.

AGLC 8204-2003

000116

**AIG AMERICAN GENERAL**

**Life Insurance Buyers Guide**

**The Old Line Life Insurance Company of America**
Member of American International Group, Inc.
P.O. Box 401 • Milwaukee, WI 53201-0401
1-888-653-5463

This guide can show you how to save money when you shop for life insurance. It helps you to:
- Decide how much life insurance you should buy,
- Decide what kind of life insurance policy you need, and
- Compare the cost of similar life insurance policies.

The National Association of Insurance Commissioners is an association of state insurance regulatory officials. This association helps the various Insurance Departments to coordinate insurance laws for the benefit of all consumers. You are urged to use this Guide in making a life insurance purchase.

## This Guide Does Not Endorse Any Company or Policy.

### BUYING LIFE INSURANCE

When you buy life insurance, you want a policy which fits your needs without costing too much. Your first step is to decide how much you need, how much you can afford to pay and the kind of policy you want. Then, find out what various companies charge for that kind of policy. You can find important differences in the cost of life insurance by using the life insurance cost indexes which are described in this guide. A good life insurance agent or company will be able and willing to help you with each of these shopping steps.

If you are going to make a good choice when you buy life insurance, you need to understand which kinds are available. If one kind does not seem to fit your needs, ask about the other kinds which are described in this guide. If you feel that you need more information than is given here, you may want to check with a life insurance agent or company or books on life insurance in your public library.

### Choosing the Amount

One way to decide how much life insurance you need is to figure how much cash and income your dependents would need if you were to die. You should think of life insurance as a source of cash needed for expenses of final illnesses, paying taxes, mortgages or other debts. It can also provide income for your family's living expenses, educational costs and other future expenses. Your new policy should come as close as you can afford to making up the difference between (1) what your dependents would have if you were to die now, and (2) what they would actually need.

### Choosing the Right Kind

All life insurance policies agree to pay an amount of money if you die. But all policies are not the same. There are three basic kinds of life insurance:
1. Term insurance
2. Whole life insurance
3. Endowment insurance

Remember, no matter how fancy the policy title or sales presentation might appear, all life insurance policies contain one or more of the three basic kinds. If you are confused about a policy that sounds complicated, ask the agent or company if it combines more than one kind of life insurance. The following is a brief description of the three basic kinds:

### TERM INSURANCE

Term Insurance is death protection for a "term" of one or more years. Death benefits will be paid only if you die within that term of years. Term insurance generally provides the largest immediate death protection for your premium dollar.

Some term insurance policies are "renewable" for one or more additional terms even if your health has changed. Each time you renew the policy for a new term, premiums will be higher. You should check the premiums at older ages and the length of time the policy can be continued.

Some term insurance policies are also "convertible." This means that before the end of the conversion period, you may trade the term policy for a whole life or endowment insurance policy even if you are not in good health. Premiums for the new policy will be higher than you have been paying for the term insurance.

### WHOLE LIFE INSURANCE

Whole life insurance gives death protection for as long as you live. The most common type is called "straight life" or "ordinary life" insurance, for which you pay the same premiums for as long as you live. These premiums can be several times higher than you would pay initially for the same amount of term insurance. But they are smaller than the premiums you would eventually pay if you were to keep renewing a term insurance policy until your later years.

Some whole life policies let you pay premiums for a shorter period such as 20 years, or until age 65. Premiums for these policies are higher than for ordinary life insurance since the premium payments are squeezed into a shorter period.

Although you pay higher premiums to begin with for whole life insurance than for term insurance, whole life insurance policies develop "cash values" which you may have if you stop paying premiums. You can generally either take the cash or use it to buy some continuing insurance protection. Technically speaking, these values are called "nonforfeiture benefits". This refers to benefits you do not lose (or "forfeit") when you stop paying premiums. The amount of these benefits depends on the kind of policy you have, its size, and how long you have owned it.

A policy with cash values may also be used as collateral for a loan. If you borrow from the life insurance company, the rate of interest is shown in your policy. Any money which you owe on a policy loan would be deducted from the benefits if you were to die, or from the cash value if you were to stop paying premiums.

### ENDOWMENT INSURANCE

An endowment insurance policy pays a sum or income to you — the policyholder — if you live to a certain age. If you were to die before then, the death benefit would be paid to your beneficiary. Premiums and cash values for endowment insurance are higher than for the same amount for whole life insurance. Thus endowment insurance gives you the least amount of death protection for your premium dollar.

FF- 04002000-1020-0602 (Page 1 of 2)
Supply Ordering Number- 04201000-1052-0602 (Front)

000117

# STATEMENT OF POLICY COST AND BENEFIT INFORMATION

## ULTRA 2002 30YR
### U2LT30

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA
P.O. BOX 401
MILWAUKEE, WI 53201-0401

POLICY NO MMD353786
INSURED PETE A SHERLOCK

DEBBIE
NO CITY
AGE 50

| POLICY YEAR | ANNUAL PREMIUM (CURRENT RATES) | ANNUAL PREMIUM (MAXIMUM RATES) (SHALL NOT EXCEED RATES SHOWN BELOW) | GUARANTEED DEATH PAYMENT BEGIN. OF YR. |
|---|---|---|---|
| 1 | 2650.00 | 2650.00 | 500000 |
| 2 | 2650.00 | 2650.00 | 500000 |
| 3 | 2650.00 | 2650.00 | 500000 |
| 4 | 2650.00 | 2650.00 | 500000 |
| 5 | 2650.00 | 2650.00 | 500000 |
| 6 | 2650.00 | 2650.00 | 500000 |
| 7 | 2650.00 | 2650.00 | 500000 |
| 8 | 2650.00 | 2650.00 | 500000 |
| 9 | 2650.00 | 2650.00 | 500000 |
| 10 | 2650.00 | 2650.00 | 500000 |
| 11 | 2650.00 | 2650.00 | 500000 |
| 12 | 2650.00 | 2650.00 | 500000 |
| 13 | 2650.00 | 2650.00 | 500000 |
| 14 | 2650.00 | 2650.00 | 500000 |
| 15 | 2650.00 | 2650.00 | 500000 |
| 16 | 2650.00 | 2650.00 | 500000 |
| 17 | 2650.00 | 2650.00 | 500000 |
| 18 | 2650.00 | 2650.00 | 500000 |
| 19 | 2650.00 | 2650.00 | 500000 |
| 20 | 2650.00 | 2650.00 | 500000 |
| AT AGE 62 | 2650.00 | 2650.00 | 500000 |
| AT AGE 85 | 2650.00 | 2650.00 | 500000 |

| COST INDEXES | LIFE INSUR. NET PAYMENT COST INDEX | | LIFE INSUR. SURRENDER COST INDEX | |
|---|---|---|---|---|
| | 10TH YR.* | 20TH YR.* | 10TH YR.* | 20TH YR.* |
| CURRENT RATES | 5.30 | 5.30 | 5.30 | 5.30 |
| MAXIMUM RATES | 5.30 | 5.30 | 5.30 | .00 |

THE CURRENT PREMIUMS ILLUSTRATED ASSUME ANNUAL RENEWABLE PREMIUMS AFTER THE LEVEL TERM PERIOD.

THE COLUMNS OF THIS REPRESENTATION DO NOT REFLECT THE FACT THAT, BECAUSE OF INTEREST, A DOLLAR IN THE FUTURE HAS LESS VALUE THAN A DOLLAR TODAY.

*AN EXPLANATION OF THE INTENDED USE OF THE LIFE INSURANCE COST INDEXES IS PROVIDED IN THE LIFE INSURANCE BUYERS GUIDE.

IMPORTANT NOTICE - DURING THE THIRTY DAY PERIOD FROM THE DATE OF DELIVERY OF THIS POLICY, IT MAY BE SURRENDERED TO THE COMPANY FOR CANCELLATION AND A FULL REFUND OF ANY MONEY PAID.

SC

12/11/2003

000118

# THE OLD LINE LIFE Insurance Company of America

1200 North Mayfair Road ▪ Suite 300▪ Milwaukee WI 53226-3282▪ 1 800 487 5433

The Old Line Life Insurance Company of America, a stock company, referred to in this policy as we/us/our, will pay the benefits of this policy subject to its provisions. This page and the pages that follow are part of this policy.

Signed at our home office at 1200 North Mayfair Road, Suite 300, Milwaukee, Wisconsin 53226-3282.

*General Counsel and Secretary*

*President*

**READ YOUR POLICY**

This policy is a legal contract between the owner and The Old Line Life Insurance Company of America. Read your policy carefully.

**RIGHT TO RETURN POLICY**

The owner may return this policy to us at the above address or to the agent from whom it was purchased within 30 days after receipt. This policy will then be cancelled as of its date of issue and any premium paid will be refunded.

Renewable Level Benefit Term Life Policy
Premiums Payable During Term
Insurance Payable in Event of Death Prior to Expiry Date
Premiums May Change Subject to the Maximum Premiums

No Dividends
Re-Entry Option
Conversion Option

LTG 2000D.12

**Page 1**

000119

**TABLE OF CONTENTS**

| Page | Title of Provision |
|------|--------------------|
| 8 | Assignment |
| 8 | Beneficiary |
| 8 | Change of Owner or Beneficiary |
| 8 | Claims of Creditors |
| 8 | Contract |
| 6 | Conversion Option |
| 8 | Correspondence |
| 5 | Definitions |
| 5 | Grace Period |
| 5 | Incontestability |
| 8 | Misstatement of Age or Sex |
| 8 | Nonparticipating |
| 8 | Owner |
| 5 | Payment of Proceeds |
| 8 | Policy Settlement |
| 3 | Policy Specifications |
| 5 | Premium Payment |
| 1 | Read Your Policy |
| 7 | Re-Entry Option |
| 5 | Reinstatement |
| 6 | Renewal Option |
| 6 | Right to Change Premium |
| 1 | Right to Return Policy |
| 3 | Schedule of Benefits and Premiums |
| 5 | Suicide |
| 4 | Table of Premiums |

See Supplemental Benefit Pages For Riders, If Any.

LTG 2000-2.5

000120

**Policy Specifications**

| | | | |
|---|---|---|---|
| Insured | Pete A Sherlock | Policy Number | MM0353786 |
| Face Amount | $500,000 | Date of Issue | 07/24/2002 |
| Sex | Male | Age at Issue | 50 |
| Underwriting Class | Select 2 Non-tobacco | | |

## Schedule of Benefits and Premiums

| Benefits | Benefit Amounts | Annual Premium | Years Payable |
|---|---|---|---|
| Life Insurance | $500,000 | $2,650.00 | 30 Years* |

Total Initial Annual Premium          $2,650.00

Premiums payable other than annually are equal to a percentage of the annual premium. These premiums are shown on page 4. Premiums for this policy are initially payable at quarterly intervals. The first quarterly premium is $702.25.

*Annual renewal premiums are shown in the table of premiums on page 4. On the thirtieth policy anniversary and any later policy anniversary we have a right to change the premium. See the Right to Change Premium provision.

Expiry Dates. The initial expiry date is 07/24/2032. Subsequent expiry dates will occur at the end of each one year renewable term period. The final expiry date is 07/24/2047.

Conversion Option. This policy may be converted to a new policy as specified in the Conversion Option provision. This option is available until the thirtieth policy anniversary, provided the insured is age 75 or less on the conversion date.

Re-Entry Option. This policy may be exchanged for a new policy as specified in the Re-Entry Option provision. This option is available only on the thirtieth policy anniversary, provided the insured is age 50 or less on the date of exchange.

000121

TABLE OF PREMIUMS

| Policy Year | Current Annual Life Insurance Premium | Maximum Annual Life Insurance Premium |
|---|---|---|
| 1- 30 | 2,650.00 | 2,650.00 |
| 31 | 77,575.00 | 93,730.00 |
| 32 | 82,450.00 | 102,580.00 |
| 33 | 86,725.00 | 112,580.00 |
| 34 | 91,660.00 | 123,850.00 |
| 35 | 98,385.00 | 136,170.00 |
| 36 | 108,035.00 | 149,260.00 |
| 37 | 120,560.00 | 162,860.00 |
| 38 | 135,270.00 | 176,850.00 |
| 39 | 152,015.00 | 190,950.00 |
| 40 | 170,790.00 | 205,350.00 |
| 41 | 174,295.00 | 220,250.00 |
| 42 | 176,525.00 | 235,900.00 |
| 43 | 178,565.00 | 252,810.00 |
| 44 | 180,475.00 | 271,690.00 |
| 45 | 182,295.00 | 295,710.00 |

The premiums shown above are annual life insurance premiums. Premiums payable other than annually are computed by multiplying the applicable annual premium by the premium percentages shown below.

| Premium Interval | Premium Percentage |
|---|---|
| Semi-annual | 52.00% |
| Quarterly | 26.50% |
| Monthly (Pre-authorized checking) | 8.75% |

000122