Anthony G Mercier

506 Georgia Avenue

North Augusta, SC 29841

*United States District Court*
*Southern District of Texas*
*Filed*
FEB 2 7 2007
*Michael N. Milby, Clerk*
RMK

Judge Gray H. Miller

Federal Court Building

515 Rusk Road

Houston, TX 77002

RE: Civil Action H-05-1268 regarding judgment amount

Dear Sir:

The Assumption of risk is what the company took on when they issued these policies. Each policy has gone through a rigorous underwriting process before they were issued. With the aid of computers, underwriters analyzed the information contained in the insurance applications that were submitted and determined whether the risk is acceptable and will not result in a loss. The applications were supplemented with reports from medical records from a doctor and an exam from a paramedical service (i.e. Portamedic and EMSI) and in some instances a telephone history interview was completed before a decision was rendered. Then they decided whether to issue the policy In the case of the policies listed (they were approved after the underwriting process was completed) and the appropriate premium was charged. In making this determination, these underwriters serve as the main link between the insurance carrier and the insurance agent.

Mr. Timothy Donovan has listed in appendix 1 (enclosure 1) of section 2 eleven policies listed with All American life and 49 policies listed with Old Line Life. I am assuming that these were the policies used to calculate the results in the "Expected Mortality Percentage of 1991 Population Table" and this is also the "block of policies" he is referring to throughout his document (Enclosure 2). However, enclosed you will find three renewal commission statements (Enclosure 3) with current policy holders for Old Line Life policies and All American Life policies.

These are the only active policies that I have with American General at this time. I have highlighted the policies that are active with each company on Mr. Donovan's Appendix 1 based on my commission statements. There are a total of five policies with All American Life and eight policies with Old Line Life for a total of thirteen policies.

Mr. Donovan states in section two states that, "this block of policies, it is assumed that the underwriting and data collected for each policy was not valid." The policies in question in Mr. Donovan's report are more than two years old and therefore the validity of the data collected at the time these policies were underwritten by the company is invalid as each of these policies issued by the company contains a clause in the contract called an "incontestability" clause (see attached policy page 9(Enclosure 4)) which states:

*We will not contest this policy after it has been in force during the lifetime of the insured for two years from the date of issue. If we successfully contest this policy, our liability will be limited to the premiums paid less any debt and any withdrawals from the accumulated value.*

*We will not contest reinstatement after the reinstatement has been in force during the lifetime of the insured for two years from the date of reinstatement. If we contest a reinstatement, we will contest only statements made in the reinstatement application.*

*We will not contest an increase in specified amount or a change from death benefit option 1 to option 2 after such increase or change has been in force during the lifetime of the insured for two years from the date of such increase or change. If we successfully contest a change in death benefit option, the death benefit will be the death benefit that would have been payable if the change had not taken effect.*

Based on this information these policies are more than two years old and cannot be contested according to what the company has placed in their policy and what most state governments require to be placed in a policy contract. (i.e. South Carolina Code of Laws Title 38-63-220(d) which states the following:

*A provision that the policy and any rider or supplemental benefits attached to the policy are incontestable as to the truth of the application for insurance and to the representations of the insured individual after they have been in force during the lifetime of the insured for a period of two years from their date of issue. Any rider or*

*supplemental benefits subsequently attached to the policy are incontestable as to the truth of the application for the rider or supplemental benefits and to the representations of the insured individual after they have been in force during the lifetime of the insured for a period of two years from their date of issue. If an insurer institutes proceedings to vacate a policy on the ground of the falsity of the representations contained in the application for the policy, the proceedings must commence within the time permitted in this subsection;)*

These policies are assumed to have data that was collected, but is considered by Mr. Donovan in his statement as "not valid"; however, according to the company's incontestability clause and state laws, the company cannot contest the validity of the data collected at the time the policies were underwritten.

In my conversation with Mr. Randall Stephenson, Chief Actuary for the National Association of Insurance Commissioners, on February 26, 2007, he endorsed the fact that the cost of risk to all policy holders for suicide and fraud has to be paid for in the first two years of all contracts. However the company chooses to charge for the premium rates structure is completely in their profit and loss structure of calculating premiums in future mortality risk cost.

In the enclosed Old Line Life Policy/ American General (enclosure 4), there are specifically two provisions parallel to each other, one the incontestability clause, this pertains to fraud, the other is the Suicide clause both on page nine. The incontestability clause states that a claim will not be contested after two years. The suicide clause states:

*In the event of the suicide of the insured, while sane or insane, within two years from the date of issue, our liability will be limited to the premiums paid less any debt and any withdrawals from the accumulated value.*

*In the event of the suicide of the insured, while sane or insane, within two years from the date of an increase in specified amount or within two years from the date of a change from death benefit option 1 to option 2, our liability will be limited to the death benefit that would have been payable had no such increase or change taken effect. We will refund any additional cost of insurance deductions resulting from such change.*

The claim will be paid for suicide if it occurs after two years. The basics of these statements are that the charges and risk are the accumulated values in these clauses. The total claimed by Mr. Donovan is completely unfounded based on a certain guaranteed fact that all companies and all classes of life insurance have been paid in the first two years for fraud and suicide for all policies. There are no risks for any of the policies we have sold as all of these policies are more than five years old.

As to the fees regarding the cases that were rescinded as a result of American General taking these customers to court because the policy was less than two years old and the company was contesting the validity of these policies. These policies at the time were underwritten by the company. All of these cases required an exam by a paramedical service (i.e. Portamedic, EMSI, etc.), an attending physicians statement from the customers primary physician, if the customer had one, a telephone history interview performed by a contracted company, and other underwriting requirements. These customers were served papers to go to court to prove they were not trying to fraud the company. However, each customer presented with papers could not afford an attorney to represent them to answer the interrogatories that were made in the company's claims. Therefore, judgments were rendered and a rescission of the policies was made and all premiums paid into the policies were returned. This resulted in Commission charge backs of $36,300.42.

The company was taking my customers to court because the company believed that my customers provided false information regarding their Drivers license numbers, Social Security numbers, Date of Births and names (in some cases). These are not considered insurable risk to the company. If my customers had frauded the company this would involve them not disclosing important health information that would affect their insurability (i.e. the customer is a diabetic and tells the examiner they are not a diabetic, they have had a heart attack and told the examiner they had no heart problems, etc.). These types of statements would constitute fraud and be grounds to have a policy rescinded if the company were able to prove fraud (enclosure 5).

The customers that are referred to in section 3 table "Fees on Mercier Matters" (Enclosure 6) are known as "Irish Travelers". They have been attacked by other insurance companies; however, they have not fought against any of these companies do to limited resources. This lawsuit began within 24 hours of my filing a lawsuit against American Fidelity Life Insurance Company, because they rescinded all policies

that were written on "Irish Travelers" without going to court within the two year contestability period. They charged back the commissions to me. American General began to maliciously go after each customer's policy to have the policy rescinded through the legal system. The company had unlimited resources to have these policies rescinded while my customers were victims of there malicious acts.

I had one customer, Ms. Mamie Carroll (number 11 on the "Fees on Mercier Matters" table) try to fight to keep her policy. She responded to the Three interrogatories regarding her Social Security number, Her Date of Birth and her Name. She provided legal documentation in court and won her case at her expense of $5000. The company then responded with more interrogatories. She went back to her attorney with the 87 new interrogatories and he told her that the estimated cost to answer all 87 interrogatories was $25,000. She then gave up and all premiums paid into her policy were returned.

Even if my customers had the ability to fight the interrogatories to keep there policies American General would have continued in there venture to have each policy rescinded as was the case with Ms. Mamie Carroll. No one, whether "Irish Traveler" or not, can fight this company when they are in pursuit of a goal. There goal in this case was a block of business known as the "Irish Travelers". Therefore judgment in the amount of nothing should be rendered against us as these were maliciously filed lawsuits against a sector of people who have been discriminated against by the life insurance industry for years.

In conclusion, we should not have to pay any expected Mortality damages as these policies are more than two years old and the validity of the information that was collected at the time the policy was underwritten is incontestable because the policies are more than two years old. We should not have to pay a judgment of $36,300.42 for commissions earned as these charge backs were a result of this company maliciously going after this block of business. Furthermore, we should not have to pay any legal fees that the company incurred due to their malicious acts of taking each customer to court to have their policy rescinded. These were decisions made by the company and the company should have to bear the damages incurred.

Sincerely,

Anthony G Mercier, Sr.