*[Handwritten annotation at top: DOB or SS #s Type "O"s are not material to risk]*


## Utmost Good Faith

Insurance is a contract of utmost good faith. Both the policyowner and the insurer must know all material facts and relevant information. There can be no attempt by either party to conceal, disguise or deceive. A consumer purchases a policy based largely on what the insurer and its agent claim are its features, benefits and advantages; an insurer issues a policy based primarily on what the applicant reveals in the application.

The concepts of *warranties, representations* and *concealment* are associated with this idea of utmost good faith. These represent grounds through which an insurer might seek to avoid payment under a contract.

**Warranty**    A warranty in insurance is a statement made by the applicant that is guaranteed to be true. It becomes part of the contract and, if found to be untrue, can be grounds for revoking the contract. Warranties are presumed to be material because they affect the insurer's decision to accept or reject an applicant.

**Representation**    A representation is a statement made by the applicant that he or she believes to be true. It is used by the insurer to evaluate whether or not to issue a policy. Unlike warranties, representations are not part of the contract and need be true only to the extent that they are material and related to the risk. Most states require that life insurance policies contain a provision that all statements made in the application be deemed representations, not warranties. If an insurance company rejects a claim on the basis of a representation, the company bears the burden of proving that the representation was material and related to risk.

**Test Topic Alert!**    Statements made by a person on an application for life or health insurance generally are representations, not warranties.

The practical distinction between a warranty and a representation is this—if a warranty is untrue, the insurer has the right to cancel the contract; if a representation is untrue, the insurer has the right to cancel the contract only if the representation was material to the creation of the contract.

✓ *For Example:* If an insured falsely stated in a life insurance application that his or her cancer was in remission when the insured was, in fact, terminally ill, this statement would be a misrepresentation. If the insurance company had known this information, it would either have rejected the application or issued the policy on substantially different terms. As a result, this misrepresentation may provide grounds for the insurer to cancel the contract. However, if an insured misstated the age at which a grandparent died, the insurer probably would not be able to rescind the contract because such misrepresentation would have had no influence on the terms of the contract.

**Concealment**    The issue of concealment also is important to insurance contracts. Concealment is defined as the applicant's failure to disclose a known material fact

*[Handwritten at bottom right: Enclosure 5]*



when applying for insurance. If the purpose for concealing information is to defraud the insurer (that is, to obtain a policy that might not be issued otherwise if the information were revealed), the insurer may have grounds for voiding the policy. Again, the insurer must prove concealment and materiality.

In most instances, life insurers have only a limited period of time to uncover false warranties, misrepresentations or concealment. After that time period passes, usually two years from policy issue, the contract cannot be voided or revoked for these reasons. (See *Incontestable Clause*, Lesson 5.) Health insurance contracts follow slightly different rules. (See *Time Limit on Certain Defenses*, Lesson 21.)

✓ **For Example:** An applicant for homeowner's insurance does not disclose that he or she manufactures firecrackers in the basement as a hobby. Although the insurance company did not specifically ask about this hobby, the applicant has an obligation to disclose extraordinary facts such as these that are within his or her scope of knowledge. Not disclosing this fact would be considered concealment.

## Insurable Interest

Another element of a valid insurance contract is insurable interest. This means that the person acquiring the contract (the applicant) must be subject to loss on the death, illness or disability of the person being insured. A policy obtained by a person not having an insurable interest in the insured is not valid and cannot be enforced.

✓ **Take Note:** Many relationships provide the basis for an insurable interest. Husbands and wives have an insurable interest in each other as do partners in a partnership. Corporations have an insurable interest in their key executives, as well.

Thus, insurable interest must exist between the applicant and the individual being insured. When the applicant is the same as the person to be insured, there is no question that insurable interest exists—individuals are presumed to have insurable interest in themselves. Questions tend to arise when the applicant is not the person to be insured. As a general rule, the consent of the person to be insured is required before a policy is issued, even if the applicant has an insurable interest. Insurers have a legal responsibility to verify insurable interest and obtain the insured's consent. (See also *Does Insurable Interest Exist?* in Lesson 8.)

☼ **Test Topic Alert!**    Insurable interest may have to exist between the policyowner, the insured and the beneficiary for the insurance company to consider the risk a pure risk.

*[Handwritten annotation: DOB / SS #'s Type O's ARE NOT MATERIAL to RISK]*

## Utmost Good Faith

Insurance is a contract of utmost good faith. Both the policyowner and the insurer must know all material facts and relevant information. There can be no attempt by either party to conceal, disguise or deceive. A consumer purchases a policy based largely on what the insurer and its agent claim are its features, benefits and advantages; an insurer issues a policy based primarily on what the applicant reveals in the application.

The concepts of *warranties*, *representations* and *concealment* are associated with this idea of utmost good faith. These represent grounds through which an insurer might seek to avoid payment under a contract.

**Warranty**    A warranty in insurance is a statement made by the applicant that is guaranteed to be true. It becomes part of the contract and, if found to be untrue, can be grounds for revoking the contract. Warranties are presumed to be material because they affect the insurer's decision to accept or reject an applicant.

**Representation**    A representation is a statement made by the applicant that he or she believes to be true. It is used by the insurer to evaluate whether or not to issue a policy. Unlike warranties, representations are not part of the contract and need be true only to the extent that they are material and related to the risk. Most states require that life insurance policies contain a provision that all statements made in the application be deemed representations, not warranties. If an insurance company rejects a claim on the basis of a representation, the company bears the burden of proving that the representation was material and related to risk.

**Test Topic Alert!**    Statements made by a person on an application for life or health insurance generally are representations, not warranties.

The practical distinction between a warranty and a representation is this—if a warranty is untrue, the insurer has the right to cancel the contract; if a representation is untrue, the insurer has the right to cancel the contract only if the representation was material to the creation of the contract.

✓ *For Example:* If an insured falsely stated in a life insurance application that his or her cancer was in remission when the insured was, in fact, terminally ill, this statement would be a misrepresentation. If the insurance company had known this information, it would either have rejected the application or issued the policy on substantially different terms. As a result, this misrepresentation may provide grounds for the insurer to cancel the contract. However, if an insured misstated the age at which a grandparent died, the insurer probably would not be able to rescind the contract because such misrepresentation would have had no influence on the terms of the contract.

**Concealment**    The issue of concealment also is important to insurance contracts. Concealment is defined as the applicant's failure to disclose a known material fact



when applying for insurance. If the purpose for concealing information is to defraud the insurer (that is, to obtain a policy that might not be issued otherwise if the information were revealed), the insurer may have grounds for voiding the policy. Again, the insurer must prove concealment and materiality.

In most instances, life insurers have only a limited period of time to uncover false warranties, misrepresentations or concealment. After that time period passes, usually two years from policy issue, the contract cannot be voided or revoked for these reasons. (See *Incontestable Clause*, Lesson 5.) Health insurance contracts follow slightly different rules. (See *Time Limit on Certain Defenses*, Lesson 21.)

 **For Example:** An applicant for homeowner's insurance does not disclose that he or she manufactures firecrackers in the basement as a hobby. Although the insurance company did not specifically ask about this hobby, the applicant has an obligation to disclose extraordinary facts such as these that are within his or her scope of knowledge. Not disclosing this fact would be considered concealment.

## Insurable Interest

Another element of a valid insurance contract is insurable interest. This means that the person acquiring the contract (the applicant) must be subject to loss on the death, illness or disability of the person being insured. A policy obtained by a person not having an insurable interest in the insured is not valid and cannot be enforced.

 **Take Note:** Many relationships provide the basis for an insurable interest. Husbands and wives have an insurable interest in each other as do partners in a partnership. Corporations have an insurable interest in their key executives, as well.

Thus, insurable interest must exist between the applicant and the individual being insured. When the applicant is the same as the person to be insured, there is no question that insurable interest exists—individuals are presumed to have insurable interest in themselves. Questions tend to arise when the applicant is not the person to be insured. As a general rule, the consent of the person to be insured is required before a policy is issued, even if the applicant has an insurable interest. Insurers have a legal responsibility to verify insurable interest and obtain the insured's consent. (See also *Does Insurable Interest Exist?* in Lesson 8.)

 **Test Topic Alert!**     Insurable interest may have to exist between the policyowner, the insured and the beneficiary for the insurance company to consider the risk a pure risk.

FIGURE 5.1  Table of Guaranteed Values

Face Amount: $100,000          Annual Premium: $2,000

| End of Policy Year | Cash or Loan Value | Reduced Paid-up | Extended Term Years | Extended Term Days |
|---|---|---|---|---|
| 1 | $0 | $0 | 0 | 0 |
| 2 | $50 | $210 | 0 | 66 |
| 3 | $960 | $3,600 | 2 | 290 |
| 4 | $2,150 | $7,250 | 6 | 9 |
| 5 | $4,000 | $12,000 | 8 | 111 |
| 6 | $5,975 | $16,110 | 10 | 147 |
| 7 | $7,210 | $19,880 | 12 | 22 |
| 8 | $9,340 | $23,800 | 14 | 18 |
| 9 | $11,415 | $27,620 | 15 | 312 |
| 10 | $13,005 | $30,990 | 16 | 362 |
| 11 | $14,770 | $34,010 | 17 | 202 |
| 12 | $16,785 | $37,880 | 18 | 116 |
| 13 | $19,430 | $40,940 | 18 | 1 |
| 14 | $23,000 | $43,985 | 17 | 144 |
| 15 | $26,990 | $47,010 | 16 | 302 |
| 16 | $30,215 | $50,600 | 15 | 347 |
| 17 | $34,600 | $53,815 | 15 | 88 |
| 18 | $38,910 | $56,910 | 14 | 117 |
| 19 | $43,020 | $60,010 | 13 | 361 |
| 20 | $47,910 | $63,715 | 13 | 47 |
| Age 65 | $56,770 | $78,700 | 11 | 36 |

This table shows how the guaranteed (nonforfeitable) values are presented in a life insurance policy. These figures reflect the values available to the policyowner at different points in the policy's life for purposes of surrendering the policy for cash, taking out a loan against the policy, purchasing a reduced paid-up policy or purchasing an extended term policy. (See also the sample policy in the Appendix.)

## Incontestable Clause

The incontestable clause, or provision, provides that after a specified period of time (usually two years from the issue date and while the insured is living), the insurer no longer has the right to contest the validity of the life insurance policy so long as the contract continues in force. This means that after the policy has been in force for the specified term, the company cannot contest a death claim or refuse payment of the proceeds even on the basis of a material misstatement, concealment or fraud. Even if the insurer learns that an error was deliberately made on the application, it must pay the death benefit at the insured's death if the policy has passed the contestable period.

✓ **Take Note:** Although the incontestable clause applies to death benefits, it generally does not apply to accidental death benefits or disability provisions if they are part of the policy. Because conditions relating to accidents vary and

## Parol Evidence Rule

Parol evidence is oral or verbal evidence, or that which is given verbally in a court of law. The parol evidence rule states that when parties put their agreement in writing, all previous verbal statements come together in that writing, and a written contract cannot be changed or modified by parol (oral) evidence. This preserves the integrity of the written contract as the final embodiment of the parties' agreement.

✓ *Take Note:* There are a few exceptions to the parol evidence rule. Parol evidence may be admissible in court when the written contract terms are incomplete or ambiguous, or when there has been a mistake or fraud in preparing the written contract. Then parol evidence is used not to change the terms, but to explain or interpret them.

## Void vs. Voidable Contracts

The terms void and voidable often are incorrectly used interchangeably. A void contract simply is an agreement without legal effect. In essence, it is not a contract at all, for it lacks one of the elements specified by law for a valid contract. A void contract cannot be enforced by either party.

A contract having an illegal object is void, and neither party to the contract can enforce it.

✓ *For Example:* Tom agrees to steal a car and sell it to Fred. The car is damaged during the theft; Fred refuses to pay the price they agreed upon. Tom cannot sue Fred to get the payment, and Fred cannot sue Tom to get another undamaged car.

In contrast, a voidable contract is an agreement which, for a reason satisfactory to the court, may be set aside by one of the parties to the contract. It is binding unless the party with the right to reject it wishes to do so. Say that a situation develops under which the insured has failed to comply with a condition of the contract: he or she ceased paying the premium. The contract then is voidable, and the insurance company has the right to void the contract and revoke the coverage.

## Fraud

In the event of fraud, insurance contracts are unique in that they run counter to a basic rule of contract law. Under most contracts, fraud is a reason to void a contract. With life insurance contracts, an insurer has only a limited period of time (usually two years from date of issue) to challenge the validity of a contract. After that period, the insurer cannot contest the policy or deny benefits based on material misrepresentations, concealment or fraud. (This is

explained in more detail in *Incontestable Clause*, Lesson 5 and *Time Limit on Certain Defenses*, Lesson 21.)

## Summary

An insurance policy is a legally binding contract between the applicant/owner and the insurance company. As such, it must contain an offer and acceptance, consideration, legal purpose and competent parties—elements required of all enforceable contracts. In addition, insurance contracts are distinguished by other features unique to the purpose and scope of insurance. Among these special features is the element of insurable interest.

Agents and brokers—and the companies they conduct business with—operate under the concept of agency and the principles of agency law. One of the most important aspects of agency law is that it gives the agent the power to act on behalf of the principal (the insurer) and to bind it to contracts. Agents are empowered by three types of authority: express, implied and apparent.

Finally, there are additional legal concepts that have direct application to insurance and insurance contracts. These include waiver, estoppel, the parol evidence rule, void vs. voidable contracts and fraud.

## Key Concepts

In preparing for their licensing examination, students should be familiar with the following concepts:

| | |
|---|---|
| offer and acceptance | consideration |
| legal purpose | competent parties |
| aleatory | adhesion |
| unilateral | conditional |
| valued vs. reimbursement | insurable interest |
| warranties | representations |
| concealment | waiver |
| estoppel | parol evidence rule |
| fraud | void vs. voidable contract |
| express authority | implied authority |
| apparent authority | personal contract |

This table shows how the Guaranteed Nonforfeiture Values are presented in a life insurance policy. These figures reflect the values available to the policyowner at different points in the policy's life for purposes of surrendering the policy for cash, taking out a loan against the policy, purchasing a reduced paid-up policy or purchasing an extended term policy. (See also the sample policy in the Appendix.)

Case 4:05-cv-01268 Document 53 Filed in TXSD on 02/27/07 Page 8 of 10

## Incontestable Clause

The incontestable clause, or provision, provides that after a specified period of time (usually two years from the issue date and while the insured is living), the insurer no longer has the right to contest the validity of the life insurance policy so long as the contract continues in force. This means that after the policy has been in force for the specified term, the company cannot contest a death claim or refuse payment of the proceeds even on the basis of a material misstatement, concealment or fraud. Even if the insurer learns that an error was deliberately made on the application, it must pay the death benefit at the insured's death if the policy has passed the contestable period.

✓ **Take Note:** Although the incontestable clause applies to death benefits, it generally does not apply to accidental death benefits or disability provisions if they are part of the policy. Because conditions relating to accidents vary and

often are uncertain, the right to investigate them usually is reserved by the company.

The incontestable clause applies to the policy face amount, plus any additional death benefit added by rider that is payable in the case of normal death.

It should be noted that there are three situations to which the incontestable clause does not apply. A policy issued under any of these circumstances is not a valid contract, which gives the insurer the right to contest and possibly void the policy at any time:

- *Impersonation.* When application for insurance is made by one person but another person signs the application or takes the medical exam, the insurer can contest the policy and its claim.
- *No insurable interest.* If no insurable interest existed between the applicant and the insured at the inception of the policy, the contract is not valid to begin with; as such, the insurer can contest the policy at any time.
- *Intent to murder.* If it is subsequently proven that the applicant applied for the policy with the intent of murdering the insured for the pro-

FIGURE 5.1 Table of Guaranteed Values

Face Amount: $100,000  Annual Premium: $2,000

| End of Policy Year | Cash or Loan Value | Reduced Paid-up | Extended Term Years | Extended Term Days |
|---|---|---|---|---|
| 1 | $0 | $0 | 0 | 0 |
| 2 | $50 | $210 | 0 | 66 |
| 3 | $960 | $3,600 | 2 | 290 |
| 4 | $2,150 | $7,250 | 6 | 9 |
| 5 | $4,000 | $12,000 | 8 | 111 |
| 6 | $5,975 | $16,110 | 10 | 147 |
| 7 | $7,210 | $19,880 | 12 | 22 |
| 8 | $9,340 | $23,800 | 14 | 18 |
| 9 | $11,415 | $27,620 | 15 | 312 |
| 10 | $13,005 | $30,990 | 16 | 362 |
| 11 | $14,770 | $34,010 | 17 | 202 |
| 12 | $16,785 | $37,880 | 18 | 116 |
| 13 | $19,430 | $40,940 | 18 | 1 |
| 14 | $23,000 | $43,985 | 17 | 144 |
| 15 | $26,990 | $47,010 | 16 | 302 |
| 16 | $30,215 | $50,600 | 15 | 347 |
| 17 | $34,600 | $53,815 | 15 | 88 |
| 18 | $38,910 | $56,910 | 14 | 117 |
| 19 | $43,020 | $60,010 | 13 | 361 |
| 20 | $47,910 | $63,715 | 13 | 47 |
| Age 65 | $56,770 | $78,700 | 11 | 36 |

This table shows how the guaranteed (nonforfeitable) values are presented in a life insurance policy. These figures reflect the values available to the policyowner at different points in the policy's life for purposes of surrendering the policy for cash, taking out a loan against the policy, purchasing a reduced paid-up policy or purchasing an extended term policy. (See also the sample policy in the Appendix.)

## Incontestable Clause

The incontestable clause, or provision, provides that after a specified period of time (usually two years from the issue date and while the insured is living), the insurer no longer has the right to contest the validity of the life insurance policy so long as the contract continues in force. This means that after the policy has been in force for the specified term, the company cannot contest a death claim or refuse payment of the proceeds even on the basis of a material misstatement, concealment or fraud. Even if the insurer learns that an error was deliberately made on the application, it must pay the death benefit at the insured's death if the policy has passed the contestable period.

✓ **Take Note:** Although the incontestable clause applies to death benefits, it generally does not apply to accidental death benefits or disability provisions if they are part of the policy. Because conditions relating to accidents vary and

## The Application

The application for insurance is the basic source of insurability informatio Regardless of what other sources of information the underwriter may dra from, the application—the first source of information to be reviewed—wi be evaluated thoroughly. Thus, it is the agent's responsibility to see that a applicant's answers to application questions are recorded fully and accurately. (A sample application appears in the Appendix.) There are three bas parts to a typical life insurance application: *Part I—General*, *Part II—Medic* and *Part III—Agent's Report*.

**Part I—General**  Part I of the application asks general questions about the proposed insure including name, age, address, birth date, sex, income, marital status and occupation. Also to be indicated here are details about the requested insurance coverage:

- type of policy;
- amount of insurance;
- name and relationship of the beneficiary;
- other insurance the proposed insured owns; and
- additional insurance applications he or she has pending.

Other information sought may indicate possible exposure to a hazardous hobby, foreign travel, aviation activity or military service. Whether the pro posed insured smokes also is indicated in Part I.

**Part II—Medical**  Part II focuses on the proposed insured's health and asks a number of ques tions about the health history of not only the proposed insured, but also his or her family. This medical section must be completed in its entirety for every application. Depending on the proposed policy face amount, this section may or may not be all that is required in the way of medical information. The individual to be insured may be required to take a medical exam.

**Part III—Agent's Report**  Part III of the application often is called the agent's report. This is where the agent reports his or her personal observations about the proposed insured. Because the agent represents the interests of the insurance company, he or she is expected to complete this part of the application fully and truthfully.

In this important section, the agent provides firsthand knowledge about the applicant's financial condition and character, the background and purpose of the sale and how long the agent has known the applicant.

The agent's report also usually asks if the proposed insurance will replace an existing policy. If it will, most states demand that certain procedures be followed to protect the rights of consumers when policy replacement is involved.