# THE OLD LINE LIFE Insurance Company of America

P.O. Box 401, Milwaukee, Wisconsin 53201-0401 1 888 653 5463

The Old Line Life Insurance Company of America, a stock company, referred to in this policy as we/us/our, will pay the benefits of this policy subject to its provisions. This page and the pages that follow are part of this policy.

Signed at our home office at P.O. Box 401, Milwaukee, Wisconsin 53201-0401.

_General Counsel and Secretary_

_President_

**READ YOUR POLICY**

This policy is a legal contract between the owner and The Old Line Life Insurance Company of America. Read your policy carefully.

**RIGHT TO RETURN POLICY**

The owner may return this policy to us at the above address or to the agent from whom it was purchased within 30 days after receipt. This policy will then be cancelled as of its date of issue and any premium paid will be refunded.

_Mary Carroll_

_Enclosure 4_

Universal Life Insurance Policy with Flexible Premium, Death Benefit and Cash Surrender Value
Premiums Payable for Life of the Insured
Death Benefit Payable at Death of the Insured

No Dividends

**UL 97D**

NOTICE PAGE

## NOTICE CONCERNING COVERAGE
## LIMITATIONS AND EXCLUSIONS UNDER THE
## TENNESSEE LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION ACT

Note:  The term "policy" and "Policyholder" as used in this Notice shall be read to mean "certificate" and "Certificateholder", respectively, as applicable to persons insured under a group insurance plan.

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

**The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.**

**Insurance companies or their agents are required by law to give or send you this notice.** *However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.*

The Tennessee Life and Health Insurance Guaranty Association
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee 37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

(continued on next page)

# COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this Association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this state;
- their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The Association also does **not** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate;
- dividends;
- credits given in connection with the administration of a policy by a group contract holder;
- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Association is obligated to pay out: The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

## NOTICE PAGE (Continued)

To present inquiries, obtain information about the insurance provided by this policy and obtain assistance in resolving complaints, you may contact us as follows:

American General Insurance Service Center
Correspondence Unit
P.O. Box 35844
Dallas, Texas 75235-0844

Toll Free Telephone Number: 1-800-487-5433
Within Dallas Area Code 214: 654-6300

**TABLE OF CONTENTS**

| Page | Title of Provision |
|---|---|
| 12 | Accumulated Value |
| 16 | Annual Report |
| 14 | Application for a Change in Underwriting Class |
| 15 | Assignment |
| 13 | Basis of Computation |
| 15 | Beneficiary |
| 15 | Change of Owner or Beneficiary |
| 10 | Changes in Insurance |
| 15 | Claims of Creditors |
| 15 | Contract |
| 15 | Correspondence |
| 13 | Cost of Insurance |
| 9 | Death Benefit |
| 14 | Deferment |
| 9 | Definitions |
| 16 | Disclosure Statement |
| 12 | Grace Period |
| 16 | Illustration of Future Benefits and Values |
| 9 | Incontestability |
| 4 | Insurance Information |
| 12 | Credited to Accumulated Value |
| 11 | Minimum Premium Periods and Conditions |
| 15 | Misstatement of Age or Sex |
| 13 | Monthly Deduction |
| 15 | Nonparticipating |
| 15 | Owner |
| 9 | Payment of Proceeds |
| 13 | Policy Cost Factors |
| 14 | Policy Loan |
| 15 | Policy Settlement |
| 3 | Policy Specifications |
| 10 | Premium Payments |
| 12 | Reinstatement |
| 15 | Riders |
| 12 | Right to Return Policy |
| 3 | Schedule of Benefits and Premiums |
| 4 | Schedule of Policy Charges |
| 9 | Suicide |
| 13 | Surrender of Policy |
| 5 | Applicable Percentages |
| 7 | Guaranteed Maximum Cost of Insurance Rates |
| 5 & 6 | Surrender Charges |
| 14 | Withdrawal from the Accumulated Value |

See Supplemental Benefit Pages For Riders, If Any.

UL 97-2

POLICY SPECIFICATIONS

| Insured | Mary Carroll | Policy Number | MMO179075L |
|---|---|---|---|
| Initial Specified Amount $100,000 | | Date of Issue | 07/16/2001 |
| Underwriting Class | Preferred Non-Tobacco | Monthly Date | 16 |
| Age at Issue | 63 | | |

SCHEDULE OF BENEFITS AND PREMIUMS

| Benefits | | Initial Premium | Planned Premium | Planned Premium Interval |
|---|---|---|---|---|
| AG CLASSIC + | Death Benefit (Option 1) | $1,609.32 | $1,609.32 | Annual |

Pour-in Guarantee Period = 07/16/2001 through 07/15/2004
Annual Benchmark Premium = $2,083.00
Monthly Minimum Premium for Initial Minimum Premium Period = $134.10
Length of Initial Minimum Premium Period = 5 Years
Minimum Specified Amount = $100,000
Monthly Interest Factor = 1.0032737
Guaranteed Annual Rate Used to Credit Interest to Accumulated Value = 4.0%

Additional Interest: At the end of the eleventh and each later policy year we will credit additional interest at an annual rate of 0.5% to the average unborrowed amount of the accumulated value for the policy year.

Preferred Loan Period = the eleventh and each later policy year
Preferred Loan Limit = 10% of the cash surrender value at the time a loan is taken

Guaranteed Annual Rate Used to Credit Interest to Borrowed Amount of Accumulated Value Resulting from Preferred Loans = 5.5%

## INSURANCE INFORMATION

This policy provides adjustable life insurance. If insurance is changed, as described on page 10, we will send a policy endorsement to the owner. Such endorsement is to be attached to and made part of this policy. A change in insurance will take effect on the date shown in the endorsement.

Certain actions may cause insurance to end before the date of death of the insured. Insurance may end before that date if planned premiums are not paid, if premiums paid are not enough to continue insurance to such date, if insurance is increased or decreased, or if there are any loans or withdrawals from the accumulated value. Insurance may also be affected by changes in cost of insurance rates or credited interest rates. The statement of policy cost and benefit information delivered with this policy shows how long insurance in force on the date of issue will continue based on current assumptions and guarantees. The annual report sent to the owner will update this information.

## SCHEDULE OF POLICY CHARGES

Premium Payment Charge = 5.0% of each premium received

Monthly Policy Fee = $6.25 monthly

Surrender Charge:  See table of surrender charges on pages 5 and 6

The surrender charge for a specified amount decrease equals the then current surrender charge multiplied by the product of (1) the percentage of decrease in the specified amount and (2) the policy year factor shown below. We will limit the charge, as needed, so that the remaining accumulated value will be large enough to cover two monthly deductions. Each future surrender charge will be reduced in proportion.

| Policy Year of Decrease | Policy Year Factor |
|---|---|
| 1 - 5 | 1.00 |
| 6 | 0.80 |
| 7 | 0.60 |
| 8 | 0.40 |
| 9 | 0.20 |
| 10 & later | 0.00 |

Surrender Charge for a Withdrawal from the Accumulated Value = 0

Maximum Fee for Each Withdrawal from the Accumulated Value = The lesser of 5% of the accumulated value being withdrawn or $25.00. This fee will not apply to the first withdrawal in each policy year.

Maximum Service Fee for Illustration of Future Benefits and Values = $25.00

Loan Interest Rate = 6.0% per year, payable in arrears

Maximum Reevaluation Charge to apply for a Change in Underwriting Class = $300.00

## TABLE OF APPLICABLE PERCENTAGES

| Attained Age | Applicable Percentage | Attained Age | Applicable Percentage | Attained Age | Applicable Percentage |
|---|---|---|---|---|---|
| 63 | 124 | 76 | 105 | 88 | 105 |
| 64 | 122 | 77 | 105 | 89 | 105 |
| 65 | 120 | 78 | 105 | 90 | 105 |
| 66 | 119 | 79 | 105 | 91 | 104 |
| 67 | 118 | 80 | 105 | 92 | 103 |
| 68 | 117 | 81 | 105 | 93 | 102 |
| 69 | 116 | 82 | 105 | 94 | 101 |
| 70 | 115 | 83 | 105 | 95 | 100 |
| 71 | 113 | 84 | 105 | 96 | 100 |
| 72 | 111 | 85 | 105 | 97 | 100 |
| 73 | 109 | 86 | 105 | 98 | 100 |
| 74 | 107 | 87 | 105 | 99 & over | 100 |
| 75 | 105 | | | | |

### TABLE OF SURRENDER CHARGES

In the table on the next page, Month refers to the policy month beginning in the calendar month shown.

The table applies to the initial specified amount. If the specified amount is increased or decreased, or if a withdrawal is made from the cash surrender value, we will provide a new table.

A statement of the method of calculating surrender charges has been filed with the insurance official of the state in which this policy is delivered.

(continued on next page)

## TABLE OF SURRENDER CHARGES (Continued)

| Mo. | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|-----|------|------|------|------|------|------|------|------|------|------|
| Jan |      | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3970 | 3652 | 3334 |
| Feb |      | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3943 | 3625 | 3307 |
| Mar |      | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3917 | 3599 | 3281 |
| Apr |      | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3890 | 3572 | 3254 |
| May |      | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3864 | 3546 | 3228 |
| Jun |      | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3837 | 3519 | 3201 |
| Jul | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3811 | 3493 | 3175 |
| Aug | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 4102 | 3784 | 3466 | 3148 |
| Sep | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 4076 | 3758 | 3440 | 3122 |
| Oct | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 4049 | 3731 | 3413 | 3096 |
| Nov | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 4023 | 3705 | 3387 | 3069 |
| Dec | 4129 | 4129 | 4129 | 4129 | 4129 | 4129 | 3996 | 3678 | 3360 | 3043 |

| Mo. | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|-----|------|------|------|------|------|------|------|------|------|------|
| Jan | 3016 | 2698 | 2380 | 2064 | 1749 | 1431 | 1113 | 795 | 477 | 159 |
| Feb | 2990 | 2672 | 2354 | 2038 | 1722 | 1404 | 1086 | 768 | 450 | 132 |
| Mar | 2963 | 2645 | 2327 | 2012 | 1696 | 1378 | 1060 | 742 | 424 | 106 |
| Apr | 2937 | 2619 | 2301 | 1986 | 1669 | 1351 | 1033 | 715 | 397 | 79 |
| May | 2910 | 2592 | 2274 | 1960 | 1643 | 1325 | 1007 | 689 | 371 | 53 |
| Jun | 2884 | 2566 | 2248 | 1934 | 1616 | 1298 | 980 | 662 | 344 | 27 |
| Jul | 2857 | 2539 | 2221 | 1907 | 1590 | 1272 | 954 | 636 | 318 |   |
| Aug | 2831 | 2513 | 2195 | 1881 | 1563 | 1245 | 927 | 609 | 291 |   |
| Sep | 2804 | 2486 | 2169 | 1854 | 1537 | 1219 | 901 | 583 | 265 |   |
| Oct | 2778 | 2460 | 2143 | 1828 | 1510 | 1192 | 874 | 556 | 238 |   |
| Nov | 2751 | 2433 | 2117 | 1801 | 1484 | 1166 | 848 | 530 | 212 |   |
| Dec | 2725 | 2407 | 2090 | 1775 | 1457 | 1139 | 821 | 503 | 185 |   |

UL 97-6

TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES PER $1,000 OF AMOUNT AT RISK, EXCLUDING RIDERS

| Attained Age | Insured's Monthly Rate | Attained Age | Insured's Monthly Rate |
|---|---|---|---|
| 63 | 0.97450 | 82 | 6.70040 |
| 64 | 1.08170 | 83 | 7.56410 |
| 65 | 1.19760 | 84 | 8.55010 |
| 66 | 1.31790 | 85 | 9.65170 |
| 67 | 1.44090 | 86 | 10.86110 |
| 68 | 1.56840 | 87 | 12.17440 |
| 69 | 1.71050 | 88 | 13.59460 |
| 70 | 1.87770 | 89 | 15.12830 |
| 71 | 2.08210 | 90 | 16.79400 |
| 72 | 2.33330 | 91 | 18.61340 |
| 73 | 2.63540 | 92 | 20.64000 |
| 74 | 2.98460 | 93 | 22.96850 |
| 75 | 3.37630 | 94 | 25.79730 |
| 76 | 3.80230 | 95 | 29.58620 |
| 77 | 4.26160 | 96 | 35.36620 |
| 78 | 4.76170 | 97 | 45.52510 |
| 79 | 5.31950 | 98 | 66.31870 |
| 80 | 5.95870 | 99 & over | 83.33000 |
| 81 | 6.70040 | | |

For attained ages below 20 the guaranteed maximum cost of insurance rates are calculated from the Commissioners 1980 Standard Ordinary Mortality Table. For attained ages 20 and above, the guaranteed maximum cost of insurance rates are calculated from the 1980 CSO Smoker Mortality Table or the 1980 CSO Nonsmoker Mortality Table, in accordance with the insured's underwriting class.

This page is intentionally left blank

## DEFINITIONS

**Age or attained age** means the insured's age last birthday at the beginning of a policy year.

**Policy months, policy years and monthly dates.** The first policy month and first policy year begin on the date of issue shown on page 3. Subsequent policy months and years begin on the same day of each subsequent calendar month and year, respectively. The monthly date shown on page 3 is the date in a calendar month on which a policy month begins.

## PAYMENT OF PROCEEDS

Proceeds will be payable and this policy will terminate upon the earlier of (1) the date of death of the insured, or (2) the surrender of this policy.

The death benefit less debt will be paid to the beneficiary upon receipt of due proof of the insured's death. If the insured dies during a grace period when a minimum premium period is in effect, the death benefit will be reduced by any unpaid monthly minimum premiums. If the insured dies during a grace period when a minimum premium period is not in effect, the death benefit will be reduced by any unpaid monthly deductions.

Due proof of the insured's death must include our company claim form completed by the beneficiary and a certified copy of the death certificate of the insured.

The cash surrender value will be paid to the owner if this policy is surrendered.

## DEATH BENEFIT

The owner will choose one of the following options for this policy:

**Option 1.** The death benefit will be the greater of (a) the specified amount or (b) the corridor death benefit.

**Option 2.** The death benefit will be the greater of (a) the sum of the specified amount and the accumulated value or (b) the corridor death benefit.

**Corridor death benefit.** The corridor death benefit is the applicable percentage of the accumulated value. The applicable percentage is based on the insured's attained age, as shown in the Table of Applicable Percentages on page 5.

**Qualification as life insurance.** This policy is intended by the owner to qualify as a life insurance contract under the Internal Revenue Code. At no time will the death benefit ever be less than the amount needed to ensure such qualification. If an increase in the death benefit is required as of any date, we will increase the specified amount as of that date and make the resulting adjustments to the costs of insurance charged and interest credited to the accumulated value subsequent to that date.

## SUICIDE

In the event of the suicide of the insured, while sane or insane, within two years from the date of issue, our liability will be limited to the premiums paid less any debt and any withdrawals from the accumulated value.

In the event of the suicide of the insured, while sane or insane, within two years from the date of an increase in specified amount or within two years from the date of a change from death benefit option 1 to option 2, our liability will be limited to the death benefit that would have been payable had no such increase or change taken effect. We will refund any additional cost of insurance deductions resulting from such change.

## INCONTESTABILITY

We will not contest this policy after it has been in force during the lifetime of the insured for two years from the date of issue. If we successfully contest this policy, our liability will be limited to the premiums paid less any debt and any withdrawals from the accumulated value.

We will not contest a reinstatement after the reinstatement has been in force during the lifetime of the insured for two years from the date of reinstatement. If we contest a reinstatement, we will contest only statements made in the reinstatement application.

We will not contest an increase in specified amount or a change from death benefit option 1 to option 2 after such increase or change has been in force during the lifetime of the insured for two years from the date of such increase or change. If we successfully contest a change in death benefit option, the death benefit will be the death benefit that would have been payable if the change had not taken effect.

UL 97-9.18

## CHANGES IN INSURANCE

The owner may, by written request, change the specified amount or the death benefit option. A change may be made on any monthly date after the first policy year, subject to the following conditions:

**Increase in specified amount.** An increase in specified amount will be subject to evidence of insurability satisfactory to us. The cash surrender value cannot be less than the next two monthly minimum premiums.

**Decrease in specified amount.** A decrease in specified amount will first reduce any previous specified amount increases in the reverse order in which they took effect, and then will reduce the initial specified amount. After a decrease the specified amount cannot be less than the minimum specified amount shown on page 3, unless we permit a lower amount under our rules. If the specified amount is decreased when a policy surrender charge is in effect, we will apply a surrender charge to the decrease, as described on page 4.

**Change from option 1 to option 2.** A change from option 1 to option 2 will be subject to evidence of insurability satisfactory to us. The cash surrender value must be large enough to cover the next two monthly deductions. The specified amount under option 2 will equal the death benefit that was in force under option 1 less the accumulated value on the date of change.

**Change from option 2 to option 1.** If there is a change from option 2 to option 1, the specified amount under option 1 will equal the death benefit that was in force under option 2 on the date of change.

**Qualification as life insurance.** If the owner requests a decrease in specified amount or a change in death benefit option which would cause this policy to lose its qualification as a life insurance contract under the Internal Revenue Code, we will withdraw from this policy's accumulated value and pay to the owner the amount required to maintain such qualification.

## PREMIUM PAYMENTS

The initial premium is due on the date of issue and is payable at our home office or to an authorized agent. This premium cannot be less than the monthly minimum premium shown on page 3. Insurance will not take effect before this premium is paid. Subject to the limits specified below, later premiums may be paid at our home office at any time prior to the death of the insured.

**Planned premiums.** The amount and interval of planned premiums are shown on page 3. The owner may change the amount or interval. Premiums must be at least $50, unless we permit lower amounts under our rules. We may limit the amount of a planned premium increase. We may refuse a planned premium that would cause an immediate increase in the amount at risk until we receive evidence of insurability satisfactory to us.

**Additional premiums.** Premiums must be at least $50, unless we permit a lower amount under our rules. We may limit the number and amount of additional premiums. We will not accept an additional premium that would cause an immediate increase in the amount at risk until we receive evidence of insurability satisfactory to us.

**Qualification as life insurance.** We will not accept any premium that would require us to increase the specified amount in order to maintain this policy's qualification as a life insurance contract under the Internal Revenue Code.

**MINIMUM PREMIUM PERIODS AND CONDITIONS**

This policy will not lapse as long as its cash surrender value is large enough to cover each monthly deduction when due. Even if this condition is not met, this policy will not lapse during a minimum premium period if the applicable minimum premium condition is met.

**Initial minimum premium period.** The initial minimum premium period starts on the date of issue. The length of the initial minimum premium period is shown on page 3.

**Initial minimum premium condition.** This policy will not lapse during the initial minimum premium period if the sum of the premiums that have been paid as of each monthly date is not less than (1) plus (2) plus (3) where:

(1) is the monthly minimum premium shown on page 3, times the number of monthly dates which have occurred, starting with the date of issue;

(2) is the amount of current debt; and

(3) is the amount of accumulated value withdrawn since the date of issue.

**New minimum premium period.** A new minimum premium period will start on a new minimum premium date and will supersede any existing minimum premium period. A new minimum premium date is a monthly date (a) on which insurance is increased, or (b) on which, during a minimum premium period, insurance is decreased or the insured's underwriting class is improved. If insurance is increased, the length of the new minimum premium period will be the same as that of the initial minimum premium period. If, during a minimum premium period, insurance is decreased or the insured's underwriting class is improved, the new minimum premium period will retain the expiry date of the existing minimum premium period.

Insurance is increased if:

1.  this policy's specified amount is increased (unless such increase results from an automatic increase rider);

2.  a new rider is added to this policy; or

3.  insurance under an existing rider is increased.

Insurance is decreased if:

1.  this policy's specified amount is decreased;

2.  an existing rider is removed from this policy; or

3.  insurance under an existing rider is decreased.

**New minimum premium condition.** This policy will not lapse during a new minimum premium period if the accumulated premiums that have been paid as of each monthly date since the new minimum premium date are not less than (1) plus (2) plus (3) minus (4) where:

(1) is the new monthly minimum premium, which we will provide at the start of the new minimum premium period, times the number of monthly dates which have occurred, starting with the new minimum premium date;

(2) is the increase in debt since the new minimum premium date;

(3) is the amount of accumulated value withdrawn since the new minimum premium date; and

(4) is the minimum premium prepayment credit.

The minimum premium prepayment credit is the new monthly minimum premium, times the number of future policy months (including fractions) for which the old monthly minimum premium was prepaid beyond the new minimum premium date. We will not give credit for prepayments beyond the earlier of (a) the end of the current policy year, or (b) the expiry date of the new minimum premium period.

**Waiver of monthly deductions.** If we waive monthly deductions under a disability benefit rider attached to this policy, any existing minimum premium period will be suspended on the monthly date following the start of disability. Such minimum premium period will resume on the monthly date following the end of disability.

UL 97-11.2

## GRACE PERIOD

If a minimum premium period is in effect, a grace period will start on a monthly date on which (1) the cash surrender value is not large enough to cover the next monthly deduction and (2) the applicable minimum premium condition is not met. To maintain this policy in force, we must receive before the end of the grace period a payment equalling at least two monthly minimum premiums. If a sufficient payment is not made, the grace period will end 61 days after it began, at which time all insurance will end and this policy will lapse without value.

If a minimum premium period is not in effect, a grace period will start on a monthly date on which the cash surrender value is not large enough to cover the next monthly deduction. To maintain this policy in force, we must receive before the end of the grace period a payment large enough to increase the cash surrender value to an amount equal to two times the current monthly deduction. If a sufficient payment is not made, the grace period will end 61 days after it began, at which time all insurance will end and this policy will lapse without value.

We will mail a premium reminder notice and at least 30 days' advance written notice of lapse to the last known address of the owner and any assignee on record with us.

## REINSTATEMENT

If this policy lapses it may be reinstated within five years after the end of the grace period. We must receive evidence of insurability satisfactory to us. All debt must be paid or reinstated. Interest will not be charged on any debt for the period of lapse. A reinstatement premium must be paid. No premiums will be due for the period of lapse. The date of reinstatement will be the monthly date that falls on or next follows the date we approve the reinstatement application.

The length of any remaining period during which a surrender charge will apply and the amounts of any remaining surrender charges will be the same on the date of reinstatement as on the date of lapse. We will provide a new table of surrender charges.

The accumulated value on the date of reinstatement will be the amount paid at reinstatement, less any premium payment charge shown on page 4 and one monthly deduction. No interest will be credited and no monthly deductions will be made for the period of lapse.

If this policy lapses during a minimum premium period, this period will be suspended on the date of lapse. It will resume on the date of reinstatement. The reinstatement premium must equal at least two monthly minimum premiums.

If a minimum premium period is not in effect when this policy lapses, the reinstatement premium must be large enough to increase the cash surrender value to at least two times the current monthly deduction.

## ACCUMULATED VALUE

The accumulated value on the date of issue will equal the initial premium paid, less the monthly deduction for the first policy month, less any premium payment charge shown on page 4.

On any date after the date of issue the accumulated value will equal (a) minus (b) plus (c) where:

(a) is the accumulated value on the last monthly date, plus accrued interest to the date of determination;

(b) is any withdrawal made from the accumulated value since the last monthly date, plus accrued interest on the amount withdrawn from the date of the withdrawal to the date of determination; and

(c) is all premiums paid since the monthly date, less any premium payment charge, plus accrued interest on such premiums from the date of receipt to the date of determination.

If the date of determination is a monthly date, we will also subtract from the accumulated value any surrender charge for a decrease in the specified amount that takes effect on the monthly date and the monthly deduction for the next policy month.

## INTEREST CREDITED TO ACCUMULATED VALUE

The guaranteed rate used to credit interest to the accumulated value is shown on page 3.

We may credit excess interest to the accumulated value on a monthly basis. A separate rate will be used to credit interest to any borrowed amount of the accumulated value. This separate rate will never be less than the guaranteed rate used to credit interest to the accumulated value, as shown on page 3.

Additional interest will be credited to the accumulated value during the period and at the rate stated on page 3.

UL 97-12.2

## BASIS OF COMPUTATION

Minimum cash surrender values are based on the mortality tables specified on page 7, with interest at the guaranteed rate shown on page 3. Deaths are assumed to occur at the end of a policy month. A statement of the method of calculating cash surrender values has been filed with the insurance official of the state in which this policy is delivered. Cash surrender values under this policy are equal to or greater than the values required by law.

## MONTHLY DEDUCTION

The monthly deduction is the sum of (1) the cost of insurance for the policy month, (2) the policy fee shown on page 4, and (3) the cost of any riders for the policy month.

## COST OF INSURANCE

The cost of insurance for a policy month is calculated as follows:

1. Divide the death benefit at the beginning of the policy month by the monthly interest factor shown on page 3, then subtract the accumulated value at the beginning of the policy month.

2. Multiply that result (called the amount at risk) by the monthly cost of insurance rate, with the result divided by 1,000.

We will calculate the cost of insurance separately for the initial specified amount and each later specified amount increase. If the specified amount includes the accumulated value (death benefit option 1), and there have been increases in the specified amount, the accumulated value will be first considered part of the initial specified amount. If the accumulated value exceeds the initial specified amount, the excess will be considered part of the specified amount increases, in the order of the increases.

**Cost of insurance rates.** The monthly cost of insurance rates applicable to the amount at risk associated with the initial specified amount or with a later specified amount increase are based on the insured's sex, attained age, underwriting class and current death benefit, and the number of policy years that have elapsed since the date of issue or date of specified amount increase.

The guaranteed maximum cost of insurance rates are shown on page 7.

**Right to change cost of insurance rates.** We may change cost of insurance rates as described in the Policy Cost Factors provision below. However, such rates will never be more than the guaranteed maximum cost of insurance rates. Any change in rates will apply to all insureds with the same benefits and provisions who have the same date of issue, age at issue, sex, and underwriting class. We will not change rates for insurance already in force because of a change in the insured's health, occupation, or avocation.

## POLICY COST FACTORS

We may change cost of insurance rates and excess interest rates. Any such changes will be determined according to the procedures and standards on file with the insurance department of the state in which this policy is delivered. Changes will be made by class and will be based on changes in our expectations of future investment earnings, mortality, persistency, administrative and maintenance expenses, premium taxes, corporate taxes or interest rates. We will not change the policy charges shown on page 4 of this policy.

## SURRENDER OF POLICY

The owner may, by written request, surrender this policy for its cash surrender value on any date while the insured is alive. The cash surrender value will equal the accumulated value less any debt and any surrender charge, as shown in the Table of Surrender Charges on pages 5 and 6.

During the pour-in guarantee period shown on page 3 the cash surrender value will not be less than the sum of premiums paid since the date of issue, less any withdrawals from the accumulated value since the date of issue, less debt, and less the cumulative benchmark premium. The cumulative benchmark premium is the product of (a) and (b) where (a) is the annual benchmark premium shown on page 3, and (b) is the number of policy years that have elapsed since the date of issue plus one.

If insurance is increased during the pour-in guarantee period, we will calculate a new annual benchmark premium.

UL 97-13

## WITHDRAWAL FROM THE ACCUMULATED VALUE

The owner may, by written request, make a withdrawal from the accumulated value on any date while the insured is alive.

The withdrawal may be for any amount that does not exceed the cash surrender value less $350. If death benefit option 1 is in effect, the specified amount will be reduced by the amount of the withdrawal. Withdrawals will first reduce the initial specified amount, then any past specified amount increases in the order in which they occurred. The specified amount after any withdrawal must equal or exceed the minimum specified amount shown on page 3, unless we permit a lower amount under our rules.

If a surrender charge for a withdrawal is shown on page 4, the charge will be deducted from the amount withdrawn. In such event we will provide a new table of surrender charges.

We may limit the number of withdrawals in a policy year to three. In addition to any surrender charge, we may charge a fee for a withdrawal. The maximum fee is shown on page 4. We may specify a lower fee under our rules. Any fee will be deducted from the amount withdrawn.

## POLICY LOAN

The owner may, by written request, borrow on this policy using this policy as sole security. The amount of a loan may not exceed the cash surrender value at the time the loan is made.

We will charge loan interest at the rate shown on page 4.

Debt consists of unpaid policy loans, plus loan interest due or accrued. Any debt may be repaid at any time this policy is in force. Interest not paid when due will be added to the debt and will bear interest at the same rate. If the debt equals or exceeds the accumulated value less the surrender charge, this policy will lapse, subject to the Grace Period provision.

**Preferred Loans.** The first loan applied for in each year of the preferred loan period stated on page 3 will be treated as a preferred loan, up to the preferred loan limit stated on page 3. If the first loan in a policy year exceeds the preferred loan limit, only the amount not exceeding such limit will be treated as a preferred loan. Taking a preferred loan for an amount less than such limit will not increase such limit for any future preferred loan. Loan repayments will first reduce any debt resulting from loans other than preferred loans.

The guaranteed annual rate used to credit interest to any borrowed amount of the accumulated value resulting from preferred loans is shown on page 3.

## DEFERMENT

We may defer payment of proceeds for the period permitted by law, up to six months, in the case of a policy surrender, withdrawal from the accumulated value or policy loan. We will not defer a payment which is to be applied to pay required premiums on policies in force with us.

## APPLICATION FOR A CHANGE IN UNDERWRITING CLASS

At any time after the date of issue the owner can apply to have the insured's underwriting class improved, in order to qualify for a cost of insurance decrease. We will require evidence of insurability satisfactory to us. The owner will be required to pay a reevaluation charge, whether or not we approve the underwriting class change. The maximum reevaluation charge is shown on page 4. An approved change will become effective on the monthly date that falls on or next follows the date we approve such change.

We will not adversely change the insured's underwriting class or increase cost of insurance rates as a result of any evidence of insurability provided in applying for the underwriting class improvement.

We will not contest an underwriting class change after such change has been in force during the lifetime of the insured for two years. If we contest a change, we will contest only statements made in the application for the change.

If we successfully contest an underwriting class change while the insured is living, the insured's underwriting class will revert to the underwriting class that was in effect immediately prior to the change. Future monthly deductions will be adjusted to reflect such underwriting class reversion. If we successfully contest a change after the insured's death, the death benefit will be adjusted to reflect the amount at risk that would have been provided by the monthly deduction and the cost of insurance rate in effect at the date of death, for the insured's underwriting class that was in effect immediately prior to the change.

## NONPARTICIPATING

This policy does not pay dividends. Any change in cost of insurance rates or excess interest rates will take effect prospectively. We will not recoup prior losses nor distribute prior gains, if any, by changing cost of insurance rates or excess interest rates.

## RIDERS

Additional benefits may be provided by riders attached to this policy. If the word "premium" appears in a rider, it will be deemed to refer to the cost of the benefit provided by the rider.

## OWNER

The owner is as shown in the application unless changed. The owner has all rights under this policy while the insured is alive. These rights are subject to the consent of any living irrevocable beneficiary.

## BENEFICIARY

The beneficiary is as shown in the application unless changed. If no beneficiary survives the insured, the owner or the estate of the owner will be the beneficiary. However, if a trust is the owner and no beneficiary survives the insured, the estate of the insured will be the beneficiary.

## CHANGE OF OWNER OR BENEFICIARY

While this policy is in force the owner may change the beneficiary or ownership by written notice to us. When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording.

## CORRESPONDENCE

Any request, notice or proof shall be filed with our home office.

## ASSIGNMENT

No assignment of this policy will be binding on us until filed with us in writing and recorded by us. No assignment will affect any payment we made before we recorded the assignment. We will not be responsible for the validity of an assignment.

All rights of the owner and any revocable beneficiary are subject to the rights of any assignee on record with us.

## POLICY SETTLEMENT

In any settlement we may require the return of this policy.

## THE CONTRACT

This policy, including any riders and endorsements, the original application, and any supplemental applications and declarations, is the entire contract.

All statements in an application are representations and not warranties. No statement will be used to void this policy or to contest a claim unless it appears in an application or declaration which is attached to and made part of this policy.

This policy may not be changed, nor may any of our rights or requirements be waived, except in writing by one of our authorized officers.

## MISSTATEMENT OF AGE OR SEX

If the insured's age or sex has been misstated, we will adjust the death benefit to reflect the amount at risk that would have been provided by the most recent monthly deduction made and the most recent cost of insurance rate for the insured's correct age and sex.

## CLAIMS OF CREDITORS

All payments under this policy are exempt from the claims of creditors to the extent permitted by law.

UL 97-15

**DISCLOSURE STATEMENT**

We will deliver with this policy a statement of policy cost and benefit information. This statement will include any information required by the state in which this policy is delivered.

**ANNUAL REPORT**

We will send a report to the owner once each year. The report will show this policy's current benefits and values, the policy activity for the previous year, and any other information required by the state in which this policy is delivered.

**ILLUSTRATION OF FUTURE BENEFITS AND VALUES**

Upon the owner's written request and payment of the service fee then in effect, we will provide an illustration of future benefits and values for this policy. The maximum service fee is shown on page 4.

Universal Life Insurance Policy with Flexible Premium, Death Benefit and Cash Surrender Value
Premiums Payable for Life of the Insured
Death Benefit Payable at Death of the Insured

No Dividends

**ENDORSEMENT**

The Payment Options of the policy to which this endorsement is attached will be as follows:

**PAYMENT OPTIONS**

The term "annuitant/insured" as used in the following paragraph means the person named in the Policy Specifications as annuitant or insured, as the case may be.

Proceeds of less than $5,000 will be paid in one lump sum. Proceeds of $5,000 or more may be paid under an option. When proceeds are placed under an option the payee will receive a settlement contract. The date of the contract will be the date the proceeds become payable. The owner may choose the option only while the annuitant/insured is living. After the death of the annuitant/insured, the beneficiary may choose the option if proceeds are payable in one sum. Payment options for death proceeds must be chosen within six months after the annuitant's/insured's death. Payment options for other proceeds must be chosen within two months of the date they are payable. All elections must be filed with us in writing. Payments may be requested at 1, 3, 6 or 12 month intervals. Each payment must be at least $50. Each payee must be a living person receiving payments in his own right.

The interest rate for options 1, 2 and 3 will be declared by us each year. This rate will never be less than 3% per year. For options 1 and 3 any interest in excess of 3% will be used to increase payment amounts; for option 2 any excess interest will be used to lengthen the payment period.

For options 4, 5, 6 and 7 the payments will be based on rates declared by us from time to time. These rates will be 3 1/2% less than the published rates in effect for immediate annuities on the date of the settlement contract. Payments under these rates will never be less than the amount according to the tables of minimum monthly income in this endorsement. The rates in the tables are derived from a projection of the 1983 Table "a", and an annual interest rate of 3.00%.

**Option 1. Interest.** We will hold the proceeds on deposit. Interest will be paid while the payee is living. Sums of $500 or more may be withdrawn up to four times a year.

**Option 2. Specified Income.** We will pay a stated income amount until the proceeds, with interest on the unpaid balance, are used up. The income each year may not be less than 10% of the proceeds.

**Option 3. Income for Specified Period.** We will pay an income for a stated period, up to 30 years.

**Option 4. Life Income with Guaranteed Period.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period may be 10, 15 or 20 years.

**Option 5. Life Income without Guaranteed Period.** We will pay an income for the payee's lifetime. Payments will end at the death of the payee. However, if the payee dies within one year of the date of the settlement contract, payments will be continued to a contingent payee until 10 years from the date of the settlement contract.

**Option 6. Life Income with Installment Refund.** We will pay an income for a guaranteed period and for the rest of the payee's life. The guaranteed period is the period required for the sum of income payments to equal the proceeds applied.

**Option 7. Joint Life Income with 2/3 to Survivor.** We will pay an income while both payees are living. When one payee dies we will pay 2/3 of the income for the rest of the survivor's life. However, if one payee dies within one year from the date of the settlement contract, income will be paid to the survivor thereafter as if the survivor had chosen option 5 on the date of the settlement contract.

**Additional Option to Buy Single Premium Immediate Life Annuity at Reduced Rate.** If proceeds of at least $5,000 are applied under option 4, 5, 6 or 7, additional money may be used to buy a single premium immediate life annuity. The cost of this annuity will be 3 1/2% less than the then published rate. The monthly income from this annuity together with the monthly income from option 4, 5, 6 or 7 may not exceed 3 times the monthly income which could be bought solely by applying the policy proceeds. Written request must be made within 31 days from the date proceeds are payable.

**(Continued on page 2)**

**PO3-NQ 79-1D**

**PAYMENT OPTIONS (Continued)**

**Payment Provisions.** The first payment under options 2, 3, 4, 5, 6 or 7 will be due as of the date of the settlement contract. The first payment under option 1 will be due at the end of the first interest period. If any payments remain under an option at the death of the payee, or at the death of the surviving payee in regard to option 7, the amount stated below will be paid in one sum to the payee's executors or administrators, unless otherwise directed in the election of the option:

**Option 1.** Any amount left on deposit with accrued interest.

**Option 2.** The unpaid balance of proceeds with accrued interest.

**Option 3.** The commuted value, based on interest at 3% per year, of any future income payments for the stated guaranteed period.

**Options 4, 5, 6 or 7.** The commuted value of any future income payments for the stated guaranteed period, based on interest as follows:

1. if payments are made according to the tables of minimum monthly income in this endorsement, 3% per year; or

2. if payments are based on the published rates in effect for immediate annuities, the interest rate shown in the settlement contract.

**Evidence of Age and Survival.** We may require due proof of age and continued survival of a payee under options 4, 5, 6 or 7.

**Special Agreements.** Policy proceeds may be paid in any other manner agreed to by us.

THE OLD LINE LIFE Insurance Company
of America

*Chairman of the Board*

PO3 79-2D

## TABLE OF MINIMUM MONTHLY INCOME FOR FEMALE PAYEES
### UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

| OPTION 3 INCOME FOR SPECIFIED PERIOD | | AGE AT FIRST PAYMENT | OPTION 4 LIFE INCOME WITH GUARANTEED PERIOD | | | OPTION 5 LIFE INCOME WITHOUT GUARANTEED PERIOD | OPTION 6 LIFE INCOME WITH INSTALLMENT REFUND |
|---|---|---|---|---|---|---|---|
| Year | Income | | 10 Years | 15 Years | 20 Years | | |
| 1 | $84.47 | 5 and under | 2.72 | 2.72 | 2.72 | 2.72 | 2.79 |
| 2 | 42.86 | 6 | 2.73 | 2.73 | 2.73 | 2.73 | 2.79 |
| 3 | 28.99 | 7 | 2.74 | 2.74 | 2.74 | 2.74 | 2.79 |
| 4 | 22.06 | 8 | 2.75 | 2.75 | 2.75 | 2.75 | 2.79 |
| 5 | 17.91 | 9 | 2.76 | 2.76 | 2.76 | 2.76 | 2.79 |
| 6 | 15.14 | 10 | 2.77 | 2.77 | 2.77 | 2.77 | 2.79 |
| 7 | 13.16 | 11 | 2.78 | 2.78 | 2.78 | 2.78 | 2.79 |
| 8 | 11.68 | 12 | 2.79 | 2.79 | 2.79 | 2.79 | 2.80 |
| 9 | 10.53 | 13 | 2.80 | 2.80 | 2.80 | 2.80 | 2.80 |
| 10 | 9.61 | 14 | 2.81 | 2.81 | 2.81 | 2.81 | 2.81 |
| 11 | 8.86 | 15 | 2.82 | 2.82 | 2.82 | 2.82 | 2.82 |
| 12 | 8.24 | 16 | 2.83 | 2.83 | 2.83 | 2.83 | 2.83 |
| 13 | 7.71 | 17 | 2.85 | 2.85 | 2.84 | 2.85 | 2.84 |
| 14 | 7.26 | 18 | 2.86 | 2.86 | 2.86 | 2.86 | 2.86 |
| 15 | 6.87 | 19 | 2.87 | 2.87 | 2.87 | 2.87 | 2.87 |
| 16 | 6.53 | 20 | 2.89 | 2.89 | 2.89 | 2.89 | 2.88 |
| 17 | 6.23 | 21 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 |
| 18 | 5.96 | 22 | 2.92 | 2.92 | 2.92 | 2.92 | 2.91 |
| 19 | 5.73 | 23 | 2.93 | 2.93 | 2.93 | 2.93 | 2.93 |
| 20 | 5.51 | 24 | 2.95 | 2.95 | 2.95 | 2.95 | 2.95 |
| 21 | 5.32 | 25 | 2.97 | 2.97 | 2.96 | 2.97 | 2.96 |
| 22 | 5.15 | 26 | 2.98 | 2.98 | 2.98 | 2.98 | 2.98 |
| 23 | 4.99 | 27 | 3.00 | 3.00 | 3.00 | 3.00 | 3.00 |
| 24 | 4.84 | 28 | 3.02 | 3.02 | 3.02 | 3.02 | 3.02 |
| 25 | 4.71 | 29 | 3.04 | 3.04 | 3.04 | 3.04 | 3.04 |
| 26 | 4.59 | 30 | 3.06 | 3.06 | 3.06 | 3.06 | 3.06 |
| 27 | 4.48 | 31 | 3.09 | 3.08 | 3.08 | 3.09 | 3.08 |
| 28 | 4.37 | 32 | 3.11 | 3.11 | 3.11 | 3.11 | 3.10 |
| 29 | 4.27 | 33 | 3.13 | 3.13 | 3.13 | 3.13 | 3.13 |
| 30 | 4.18 | 34 | 3.16 | 3.16 | 3.15 | 3.16 | 3.15 |
| | | 35 | 3.18 | 3.18 | 3.18 | 3.18 | 3.18 |
| | | 36 | 3.21 | 3.21 | 3.21 | 3.21 | 3.20 |
| | | 37 | 3.24 | 3.24 | 3.24 | 3.24 | 3.23 |
| | | 38 | 3.27 | 3.27 | 3.27 | 3.27 | 3.26 |
| | | 39 | 3.30 | 3.30 | 3.30 | 3.30 | 3.29 |
| | | 40 | 3.34 | 3.33 | 3.33 | 3.34 | 3.32 |
| | | 41 | 3.37 | 3.37 | 3.36 | 3.37 | 3.35 |
| | | 42 | 3.41 | 3.40 | 3.40 | 3.41 | 3.39 |
| | | 43 | 3.44 | 3.44 | 3.43 | 3.45 | 3.42 |
| | | 44 | 3.49 | 3.48 | 3.47 | 3.49 | 3.46 |
| | | 45 | 3.53 | 3.52 | 3.51 | 3.53 | 3.50 |
| | | 46 | 3.57 | 3.57 | 3.55 | 3.58 | 3.54 |
| | | 47 | 3.62 | 3.61 | 3.60 | 3.62 | 3.58 |
| | | 48 | 3.67 | 3.66 | 3.64 | 3.67 | 3.63 |
| | | 49 | 3.72 | 3.71 | 3.69 | 3.73 | 3.68 |
| | | 50 | 3.78 | 3.76 | 3.74 | 3.78 | 3.73 |
| | | 51 | 3.83 | 3.82 | 3.79 | 3.84 | 3.78 |
| | | 52 | 3.90 | 3.88 | 3.85 | 3.90 | 3.83 |
| | | 53 | 3.96 | 3.94 | 3.90 | 3.97 | 3.89 |
| | | 54 | 4.03 | 4.00 | 3.96 | 4.04 | 3.95 |
| | | 55 | 4.10 | 4.07 | 4.02 | 4.12 | 4.02 |
| | | 56 | 4.17 | 4.14 | 4.09 | 4.19 | 4.08 |
| | | 57 | 4.25 | 4.22 | 4.15 | 4.28 | 4.15 |
| | | 58 | 4.34 | 4.29 | 4.22 | 4.36 | 4.23 |
| | | 59 | 4.42 | 4.37 | 4.29 | 4.46 | 4.30 |
| | | 60 | 4.52 | 4.46 | 4.36 | 4.56 | 4.39 |
| | | 61 | 4.62 | 4.55 | 4.44 | 4.66 | 4.47 |
| | | 62 | 4.72 | 4.64 | 4.51 | 4.78 | 4.56 |
| | | 63 | 4.84 | 4.74 | 4.59 | 4.90 | 4.66 |
| | | 64 | 4.95 | 4.84 | 4.66 | 5.03 | 4.76 |
| | | 65 | 5.08 | 4.95 | 4.74 | 5.17 | 4.87 |
| | | 66 | 5.21 | 5.06 | 4.81 | 5.31 | 4.98 |
| | | 67 | 5.35 | 5.17 | 4.89 | 5.47 | 5.10 |
| | | 68 | 5.50 | 5.28 | 4.96 | 5.65 | 5.23 |
| | | 69 | 5.66 | 5.40 | 5.03 | 5.83 | 5.36 |
| | | 70 | 5.82 | 5.52 | 5.09 | 6.03 | 5.51 |
| | | 71 | 6.00 | 5.64 | 5.15 | 6.25 | 5.66 |
| | | 72 | 6.18 | 5.75 | 5.21 | 6.49 | 5.82 |
| | | 73 | 6.37 | 5.87 | 5.26 | 6.74 | 5.99 |
| | | 74 | 6.56 | 5.98 | 5.30 | 7.02 | 6.17 |
| | | 75 | 6.76 | 6.09 | 5.34 | 7.33 | 6.37 |
| | | 76 | 6.97 | 6.19 | 5.38 | 7.65 | 6.57 |
| | | 77 | 7.17 | 6.29 | 5.41 | 8.01 | 6.78 |
| | | 78 | 7.39 | 6.38 | 5.43 | 8.40 | 7.02 |
| | | 79 | 7.59 | 6.46 | 5.46 | 8.82 | 7.26 |
| | | 80 | 7.79 | 6.53 | 5.47 | 9.28 | 7.52 |
| | | 81 and over | 7.99 | 6.59 | 5.49 | 9.78 | 7.79 |

MINIMUM INCOME AMOUNTS PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

PO3-F 79-3

## TABLE OF MINIMUM MONTHLY INCOME FOR MALE PAYEES
### UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

| OPTION 3 INCOME FOR SPECIFIED PERIOD | | AGE AT FIRST PAYMENT | OPTION 4 LIFE INCOME WITH GUARANTEED PERIOD | | | OPTION 5 LIFE INCOME WITHOUT GUARANTEED PERIOD | OPTION 6 LIFE INCOME WITH INSTALLMENT REFUND |
|---|---|---|---|---|---|---|---|
| Year | Income | | 10 Years | 15 Years | 20 Years | | |
| 1 | $84.47 | 5 and under | $2.78 | $2.78 | $2.78 | $ 2.78 | $2.79 |
| 2 | 42.86 | 6 | 2.79 | 2.79 | 2.79 | 2.79 | 2.79 |
| 3 | 28.99 | 7 | 2.80 | 2.80 | 2.80 | 2.80 | 2.80 |
| 4 | 22.06 | 8 | 2.81 | 2.81 | 2.81 | 2.81 | 2.81 |
| 5 | 17.91 | 9 | 2.82 | 2.82 | 2.82 | 2.82 | 2.82 |
| 6 | 15.14 | 10 | 2.84 | 2.84 | 2.83 | 2.84 | 2.83 |
| 7 | 13.16 | 11 | 2.85 | 2.85 | 2.85 | 2.85 | 2.84 |
| 8 | 11.68 | 12 | 2.86 | 2.86 | 2.85 | 2.86 | 2.86 |
| 9 | 10.53 | 13 | 2.87 | 2.87 | 2.87 | 2.88 | 2.87 |
| 10 | 9.61 | 14 | 2.89 | 2.89 | 2.89 | 2.89 | 2.88 |
| 11 | 8.86 | 15 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 |
| 12 | 8.24 | 16 | 2.92 | 2.92 | 2.91 | 2.92 | 2.91 |
| 13 | 7.71 | 17 | 2.93 | 2.93 | 2.93 | 2.93 | 2.93 |
| 14 | 7.26 | 18 | 2.95 | 2.95 | 2.95 | 2.95 | 2.94 |
| 15 | 6.87 | 19 | 2.97 | 2.96 | 2.96 | 2.97 | 2.96 |
| 16 | 6.53 | 20 | 2.98 | 2.98 | 2.98 | 2.98 | 2.97 |
| 17 | 6.23 | 21 | 3.00 | 3.00 | 3.00 | 3.00 | 2.99 |
| 18 | 5.96 | 22 | 3.02 | 3.02 | 3.02 | 3.02 | 3.01 |
| 19 | 5.73 | 23 | 3.04 | 3.04 | 3.03 | 3.04 | 3.03 |
| 20 | 5.51 | 24 | 3.06 | 3.06 | 3.06 | 3.06 | 3.05 |
| 21 | 5.32 | 25 | 3.08 | 3.08 | 3.08 | 3.08 | 3.07 |
| 22 | 5.15 | 26 | 3.10 | 3.10 | 3.10 | 3.10 | 3.09 |
| 23 | 4.99 | 27 | 3.13 | 3.12 | 3.12 | 3.13 | 3.11 |
| 24 | 4.84 | 28 | 3.15 | 3.15 | 3.14 | 3.15 | 3.14 |
| 25 | 4.71 | 29 | 3.18 | 3.17 | 3.17 | 3.18 | 3.16 |
| 26 | 4.59 | 30 | 3.20 | 3.20 | 3.19 | 3.20 | 3.19 |
| 27 | 4.48 | 31 | 3.23 | 3.23 | 3.22 | 3.23 | 3.21 |
| 28 | 4.37 | 32 | 3.26 | 3.26 | 3.25 | 3.26 | 3.24 |
| 29 | 4.27 | 33 | 3.29 | 3.29 | 3.28 | 3.29 | 3.27 |
| 30 | 4.18 | 34 | 3.32 | 3.32 | 3.31 | 3.32 | 3.30 |
| | | 35 | 3.35 | 3.35 | 3.34 | 3.36 | 3.33 |
| | | 36 | 3.39 | 3.38 | 3.37 | 3.39 | 3.36 |
| | | 37 | 3.43 | 3.42 | 3.41 | 3.43 | 3.39 |
| | | 38 | 3.46 | 3.46 | 3.44 | 3.47 | 3.43 |
| | | 39 | 3.50 | 3.50 | 3.48 | 3.51 | 3.47 |
| | | 40 | 3.55 | 3.54 | 3.52 | 3.55 | 3.50 |
| | | 41 | 3.59 | 3.58 | 3.56 | 3.60 | 3.54 |
| | | 42 | 3.64 | 3.62 | 3.60 | 3.64 | 3.58 |
| | | 43 | 3.68 | 3.67 | 3.65 | 3.69 | 3.63 |
| | | 44 | 3.74 | 3.72 | 3.69 | 3.75 | 3.67 |
| | | 45 | 3.79 | 3.77 | 3.74 | 3.80 | 3.72 |
| | | 46 | 3.84 | 3.82 | 3.79 | 3.86 | 3.77 |
| | | 47 | 3.90 | 3.88 | 3.84 | 3.92 | 3.82 |
| | | 48 | 3.97 | 3.94 | 3.89 | 3.99 | 3.88 |
| | | 49 | 4.03 | 4.00 | 3.95 | 4.05 | 3.93 |
| | | 50 | 4.10 | 4.06 | 4.00 | 4.12 | 3.99 |
| | | 51 | 4.17 | 4.13 | 4.06 | 4.20 | 4.06 |
| | | 52 | 4.24 | 4.20 | 4.12 | 4.28 | 4.12 |
| | | 53 | 4.32 | 4.27 | 4.19 | 4.36 | 4.19 |
| | | 54 | 4.41 | 4.35 | 4.25 | 4.45 | 4.26 |
| | | 55 | 4.49 | 4.42 | 4.32 | 4.55 | 4.33 |
| | | 56 | 4.59 | 4.51 | 4.38 | 4.64 | 4.41 |
| | | 57 | 4.68 | 4.59 | 4.45 | 4.75 | 4.50 |
| | | 58 | 4.79 | 4.68 | 4.52 | 4.86 | 4.58 |
| | | 59 | 4.89 | 4.77 | 4.59 | 4.98 | 4.68 |
| | | 60 | 5.01 | 4.87 | 4.66 | 5.11 | 4.77 |
| | | 61 | 5.13 | 4.97 | 4.73 | 5.25 | 4.87 |
| | | 62 | 5.25 | 5.07 | 4.80 | 5.39 | 4.98 |
| | | 63 | 5.39 | 5.17 | 4.86 | 5.55 | 5.09 |
| | | 64 | 5.53 | 5.27 | 4.93 | 5.72 | 5.21 |
| | | 65 | 5.67 | 5.38 | 4.99 | 5.90 | 5.34 |
| | | 66 | 5.83 | 5.49 | 5.05 | 6.09 | 5.47 |
| | | 67 | 5.98 | 5.60 | 5.11 | 6.30 | 5.61 |
| | | 68 | 6.15 | 5.70 | 5.17 | 6.52 | 5.76 |
| | | 69 | 6.32 | 5.81 | 5.21 | 6.76 | 5.91 |
| | | 70 | 6.50 | 5.91 | 5.26 | 7.02 | 6.08 |
| | | 71 | 6.68 | 6.01 | 5.30 | 7.29 | 6.25 |
| | | 72 | 6.86 | 6.11 | 5.34 | 7.59 | 6.43 |
| | | 73 | 7.05 | 6.20 | 5.37 | 7.91 | 6.62 |
| | | 74 | 7.24 | 6.29 | 5.40 | 8.24 | 6.82 |
| | | 75 | 7.42 | 6.37 | 5.42 | 8.61 | 7.04 |
| | | 76 | 7.61 | 6.44 | 5.44 | 9.01 | 7.26 |
| | | 77 | 7.79 | 6.51 | 5.46 | 9.43 | 7.49 |
| | | 78 | 7.97 | 6.57 | 5.48 | 9.89 | 7.74 |
| | | 79 | 8.14 | 6.62 | 5.49 | 10.38 | 7.99 |
| | | 80 | 8.30 | 6.67 | 5.50 | 10.91 | 8.27 |
| | | 81 and over | 8.45 | 6.71 | 5.51 | 11.47 | 8.55 |

MINIMUM INCOME AMOUNTS PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

PO3-M 79-4

TABLE OF MINIMUM MONTHLY INCOME UNDER PAYMENT OPTIONS FOR EACH $1,000 OF PROCEEDS

OPTION 7 — JOINT LIFE INCOME WITH TWO-THIRDS TO SURVIVOR

| Female | 40 | 45 | 50 | 55 | 60 | 65 | 70 | 75 | 80 |
|--------|------|------|------|------|------|------|------|------|------|
| **Male** | | | | | | | | | |
| 40 | $3.35 | $3.45 | $3.55 | $3.67 | $3.80 | $3.94 | $4.10 | $4.28 | $4.47 |
| 41 | 3.37 | 3.47 | 3.58 | 3.70 | 3.83 | 3.97 | 4.14 | 4.32 | 4.51 |
| 42 | 3.39 | 3.49 | 3.60 | 3.72 | 3.86 | 4.01 | 4.18 | 4.37 | 4.56 |
| 43 | 3.41 | 3.51 | 3.62 | 3.75 | 3.89 | 4.05 | 4.22 | 4.41 | 4.61 |
| 44 | 3.42 | 3.53 | 3.65 | 3.78 | 3.92 | 4.08 | 4.26 | 4.46 | 4.67 |
| 45 | 3.44 | 3.55 | 3.67 | 3.81 | 3.96 | 4.12 | 4.31 | 4.51 | 4.72 |
| 46 | 3.46 | 3.57 | 3.70 | 3.84 | 3.99 | 4.16 | 4.35 | 4.56 | 4.78 |
| 47 | 3.48 | 3.59 | 3.72 | 3.87 | 4.03 | 4.20 | 4.40 | 4.61 | 4.84 |
| 48 | 3.50 | 3.62 | 3.75 | 3.90 | 4.07 | 4.25 | 4.45 | 4.67 | 4.90 |
| 49 | 3.52 | 3.64 | 3.78 | 3.93 | 4.10 | 4.29 | 4.50 | 4.73 | 4.97 |
| 50 | 3.54 | 3.66 | 3.80 | 3.96 | 4.14 | 4.34 | 4.55 | 4.79 | 5.04 |
| 51 | 3.56 | 3.69 | 3.83 | 4.00 | 4.18 | 4.38 | 4.61 | 4.85 | 5.11 |
| 52 | 3.58 | 3.71 | 3.86 | 4.03 | 4.22 | 4.43 | 4.66 | 4.92 | 5.19 |
| 53 | 3.60 | 3.73 | 3.89 | 4.07 | 4.26 | 4.48 | 4.72 | 4.99 | 5.27 |
| 54 | 3.62 | 3.76 | 3.92 | 4.10 | 4.31 | 4.53 | 4.78 | 5.06 | 5.35 |
| 55 | 3.65 | 3.78 | 3.95 | 4.14 | 4.35 | 4.59 | 4.85 | 5.13 | 5.43 |
| 56 | 3.67 | 3.81 | 3.98 | 4.17 | 4.39 | 4.64 | 4.91 | 5.21 | 5.52 |
| 57 | 3.69 | 3.84 | 4.01 | 4.21 | 4.44 | 4.69 | 4.98 | 5.29 | 5.62 |
| 58 | 3.72 | 3.86 | 4.04 | 4.24 | 4.48 | 4.75 | 5.05 | 5.37 | 5.72 |
| 59 | 3.74 | 3.89 | 4.07 | 4.28 | 4.53 | 4.81 | 5.12 | 5.46 | 5.82 |
| 60 | 3.76 | 3.92 | 4.10 | 4.32 | 4.58 | 4.87 | 5.19 | 5.55 | 5.93 |
| 61 | 3.79 | 3.95 | 4.13 | 4.36 | 4.62 | 4.93 | 5.27 | 5.64 | 6.04 |
| 62 | 3.82 | 3.97 | 4.17 | 4.40 | 4.67 | 4.99 | 5.34 | 5.74 | 6.16 |
| 63 | 3.84 | 4.00 | 4.20 | 4.44 | 4.72 | 5.05 | 5.42 | 5.84 | 6.28 |
| 64 | 3.87 | 4.03 | 4.24 | 4.48 | 4.77 | 5.11 | 5.51 | 5.94 | 6.41 |
| 65 | 3.90 | 4.06 | 4.27 | 4.52 | 4.82 | 5.18 | 5.59 | 6.05 | 6.54 |
| 66 | 3.92 | 4.10 | 4.31 | 4.57 | 4.88 | 5.25 | 5.68 | 6.16 | 6.68 |
| 67 | 3.95 | 4.13 | 4.34 | 4.61 | 4.93 | 5.31 | 5.76 | 6.28 | 6.83 |
| 68 | 3.98 | 4.16 | 4.38 | 4.65 | 4.98 | 5.38 | 5.85 | 6.39 | 6.98 |
| 69 | 4.01 | 4.19 | 4.42 | 4.70 | 5.04 | 5.45 | 5.94 | 6.51 | 7.13 |
| 70 | 4.04 | 4.23 | 4.45 | 4.74 | 5.09 | 5.52 | 6.03 | 6.63 | 7.29 |
| 71 | 4.07 | 4.26 | 4.49 | 4.78 | 5.14 | 5.59 | 6.12 | 6.76 | 7.45 |
| 72 | 4.10 | 4.29 | 4.53 | 4.83 | 5.20 | 5.66 | 6.22 | 6.88 | 7.62 |
| 73 | 4.13 | 4.33 | 4.57 | 4.87 | 5.25 | 5.73 | 6.31 | 7.01 | 7.80 |
| 74 | 4.16 | 4.36 | 4.61 | 4.92 | 5.31 | 5.80 | 6.40 | 7.14 | 7.97 |
| 75 | 4.19 | 4.39 | 4.65 | 4.96 | 5.36 | 5.87 | 6.50 | 7.27 | 8.15 |
| 76 | 4.22 | 4.43 | 4.68 | 5.01 | 5.42 | 5.94 | 6.59 | 7.40 | 8.33 |
| 77 | 4.25 | 4.46 | 4.72 | 5.05 | 5.47 | 6.00 | 6.68 | 7.53 | 8.52 |
| 78 | 4.28 | 4.49 | 4.76 | 5.10 | 5.52 | 6.07 | 6.77 | 7.66 | 8.71 |
| 79 | 4.31 | 4.53 | 4.80 | 5.14 | 5.58 | 6.14 | 6.87 | 7.79 | 8.89 |
| 80 | 4.34 | 4.56 | 4.83 | 5.18 | 5.63 | 6.21 | 6.96 | 7.92 | 9.08 |

MINIMUM INCOME AMOUNTS FOR AGES NOT SHOWN AND MINIMUM INCOME AMOUNTS PAYABLE OTHER THAN MONTHLY WILL BE FURNISHED ON REQUEST.

**ENDORSEMENT ADDING AN ACCELERATED BENEFIT FOR TERMINAL ILLNESS**

The policy to which this endorsement is attached is amended to add the following provisions:

### NOTICE

Benefits paid under this endorsement may or may not be taxable. Whether or not a tax liability will be incurred when benefits are paid depends on how the Internal Revenue Service interprets applicable portions of the Internal Revenue Code. As with all tax matters, the owner should consult a personal tax advisor to assess the impact of this benefit.

### DEFINITIONS

**Eligible Death Benefit** means the proceeds payable under this policy upon the death of the insured before deducting any unpaid policy loans and loan interest, excluding any term insurance and accidental death benefits.

**Terminal Illness** means a medical condition which is expected to result in the insured's death within 12 months.

**Claim Approval Date** means the date we approve a claim for an accelerated benefit.

**Physician** means an individual who is licensed to practice medicine in the United States or Canada and who is acting within the scope of such license. A physician does not include:

1. the insured;
2. the owner;
3. a person who lives with the insured or the owner;
4. a person who is a member of the insured's or the owner's immediate family.

**Immediate Family** means a spouse, child, parent, grandparent, grandchild, brother or sister of the insured or the owner and the spouses of such persons.

### ACCELERATED BENEFIT

An accelerated benefit is the payment of any part of the eligible death benefit before the insured's death. If the insured is terminally ill, we will pay an accelerated benefit in the amount requested by the owner, up to the maximum accelerated benefit stated below. We will pay an accelerated benefit under this policy only once and in one lump sum. Payment will be subject to the conditions stated below.

#### Maximum Accelerated Benefit

The maximum accelerated benefit, which we will determine on the claim approval date, will be equal to the lesser of

1. 75% of the eligible death benefit less any unpaid policy loans and loan interest; or

2. $250,000.

The total amount of accelerated benefit payments under all policies issued by us on the life of the insured shall not exceed $250,000.

### POLICY LIEN

If we pay an accelerated benefit, we will establish a lien against the eligible death benefit. The lien at any time will be equal to the accelerated benefit plus any administration charge plus any premium we may pay in advance plus accrued interest less any amount repaid. We will charge interest at the lien interest rate described below.

### LIEN INTEREST RATE

The lien interest rate will be the same as the policy loan interest rate on the claim approval date, but not to exceed the greater of the following on such date:

1. the yield on a 90-day treasury bill; or

2. the maximum adjustable policy loan interest rate permitted in the state in which this policy is delivered.

### ADMINISTRATION CHARGE

If we pay an accelerated benefit we will make our then current administration charge, up to $300.00. Such charge will be added to the lien. If we pay an accelerated benefit under more than one policy issued on the life of the insured, we will make an administration charge under only one policy.

**E-ACCB 79-1D**

## CONDITIONS FOR ACCELERATED BENEFIT PAYMENT

The payment of an accelerated benefit will be subject to the following conditions:

1. This policy must not be in force as extended term insurance or reduced paid-up life insurance.

2. This policy must not be assigned except to us as security for the lien. We must receive an assignment form making us assignee of this policy.

3. All irrevocable beneficiaries must give us written consent to pay an accelerated benefit. We reserve the right to require any other person's consent which we deem necessary.

## EXCLUSIONS

We will not pay an accelerated benefit if:

1. terminal illness results from intentionally self-inflicted injury;

2. either the owner or the insured is required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise;

3. either the owner or the insured is required by a government agency to use this benefit to apply for, obtain, or otherwise keep a government benefit or entitlement; or

4. we are paying benefits for long term care under a rider attached to this policy.

## POLICY PREMIUMS AND MONTHLY DEDUCTIONS

Payment of an accelerated benefit will have no effect on the amount of future premiums or monthly deductions, if any, required under this policy.

If this policy is a fixed premium policy, the owner may elect to have us pay in advance any policy premiums and rider premiums not yet paid for the 12 month period following the claim approval date. Such premiums will be added to the lien. If such election is not made, the owner must pay premiums when due, unless premiums are being waived under a disability benefit rider.

If this policy is a flexible premium adjustable life policy, we will make monthly deductions unless they are being waived under a disability benefit rider. If the surrender value of this policy is not large enough to cover a monthly deduction, we will pay in advance a premium large enough to keep this policy in force until the end of the 12 month period following the claim approval date. Such premium will be added to the lien. The method of calculating such premium has been filed with the insurance official of the state in which this policy is delivered.

## EFFECT OF LIEN ON DEATH BENEFIT

Upon the death of the insured, the death benefit payable to the beneficiary will be reduced by the amount of the lien.

## EFFECT OF LIEN ON ACCESS TO SURRENDER VALUE

The owner's access to this policy's surrender value, with respect to any policy loans, partial surrenders or full surrender, will be limited to any excess of the surrender value over the amount of the lien.

## EXTENSION OF LIEN TO TERM RIDERS

At any time the lien equals this policy's death benefit, we will extend the lien to the death benefit of any term insurance rider in force under this policy, other than an accidental death benefit rider, in order to keep this policy in force.

## REPAYMENT OF LIEN

The owner may repay all or any part of the lien at any time this policy is in force. The lien must be immediately repaid:

1. upon the death of the insured by deducting the amount of the lien from the death benefit; or

2. upon the termination of this policy by deducting the amount of the lien from the surrender value.

## SUICIDE AND INCONTESTABILITY PROVISIONS

Payment of an accelerated benefit will not invalidate or modify our rights under this policy's suicide and incontestability provisions.

E-ACCB 79-2

**NOTICE OF CLAIM**

Written notice of claim for an accelerated benefit may be given to us at our home office at any time after the insured develops a terminal illness.

**PROOF OF CLAIM**

After we receive written notice of claim, we will send a proof of claim form to the owner. The owner should receive the form within 15 days after the date we received the notice of claim.

If the form is received within such time, it should be completed, as instructed, by all persons required to do so. Additional proof, if required should be attached to the form.

If the form is not received within such time, the owner can provide proof of claim on any reasonable form. Such proof must include a written statement from a physician certifying the insured's terminal illness and describing the nature and extent of the illness. We may request additional medical information from the physician submitting the certification.

After we receive a physician's certification of terminal illness, we may require the insured to be examined by a physician of our choice, at our expense. If the two physicians differ in their opinions, we may require the insured to be examined by another physician of our choice, at our expense. The opinion of the third physician will be final.

**TIME OF PAYMENT OF CLAIM**

We will pay an accelerated benefit upon our acceptance of proof of the insured's terminal illness during the insured's lifetime.

**PAYMENT OF CLAIM**

An accelerated benefit will be paid to the owner or the owner's estate.

**LEGAL ACTIONS**

No legal action can be brought against us until after 60 days from the date written proof of claim is given to us.

**POLICY TERMINATION**

This policy will terminate at any time the amount of the lien equals the total death benefit under this policy and any term insurance rider to which the lien was extended. Termination will occur 31 days after we have mailed notice to the last known address of the owner.

THE OLD LINE LIFE Insurance Company
of America

*Chairman of the Board*

OLD LINE LIFE INSURANCE COMPANY
P.O. BOX 401
MILWAUKEE, WISCONSIN  53201-0401
HOME OFFICE NO.: (888) 653-5463

MERCIER ANTHONY G
PO BOX 1506
AUGUSTA, GA 30903

IMPORTANT NOTICE

THE ACTUAL RESULTS OF YOUR INSURANCE POLICY MAY BE DIFFERENT FROM THE PROJECTED
RESULTS DUE TO CHANGES IN THE COST OF INSURANCE RATES,  INTEREST RATES AND THE
FREQUENCY, TIMING AND AMOUNT OF PREMIUM PAYMENTS.  PLEASE TAKE THE TIME TO READ
YOUR POLICY AND THIS POLICY SUMMARY.

| INITIAL PREMIUM | $1,609.32 | PLANNED ANNUAL PREMIUM | $1,609.32 |
|---|---|---|---|
| POLICY NO. | MM0179075L | POLICY FORM NO. | UL 97D |
| DEATH BENEFIT OPTION  1 | | | |

| INSURED | ISSUE AGE/SEX | UNDERWRITING CLASS | INITIAL SPECIFIED AMOUNT |
|---|---|---|---|
| MARY CARROLL | 63  FEMALE | PREFERRED NON-TOBACCO | $100,000 |

UNDER DEATH BENEFIT OPTION 1, THE DEATH BENEFIT WILL BE THE GREATER OF (1) THE
SPECIFIED AMOUNT AND (2) THE DEATH BENEFIT SHOWN ON PAGE 2 FOR ANY GIVEN
POLICY YEAR.

THE EFFECTIVE POLICY LOAN INTEREST RATE IS 6.00% PER YEAR PAYABLE IN ARREARS.

PART 1 - YEARLY VALUES AND BENEFITS

| END OF POLICY YEAR | PREMIUM PAID FOR YR. SHOWN | GUARANTEED BASIS* | | | CURRENT ASSUMPTION BASIS* | | |
|---|---|---|---|---|---|---|---|
| | | ACCUMULATED VALUE | CASH SURRENDER VALUE | DEATH BENEFIT | ACCUMULATED VALUE | CASH SURRENDER VALUE | DEATH BENEFIT |
| 1 | $ 1,609.32 | $ 334 | $ 0 | $ 100000 | $ 794 | $ 0 | $ 100000 |
| 2 | 1,609.32 | 556 | 0 | 100000 | 1648 | 0 | 100000 |
| 3 | 1,609.32 | 650 | 0 | 100000 | 2576 | 0 | 100000 |
| 4 | 1,609.32 | 603 | 0 | 100000 | 3600 | 0 | 100000 |
| 5 | 1,609.32 | 403 | 0 | 100000 | 4743 | 614 | 100000 |
| 6 | 1,609.32 | 0 | 0 | 0 | 6032 | 1903 | 100000 |
| 7 | 1,609.32 | 0 | 0 | 0 | 7360 | 3549 | 100000 |
| 8 | 1,609.32 | 0 | 0 | 0 | 8724 | 5231 | 100000 |
| 9 | 1,609.32 | 0 | 0 | 0 | 10116 | 6941 | 100000 |
| 10 | 1,609.32 | 0 | 0 | 0 | 11525 | 8668 | 100000 |
| 11 | 1,609.32 | 0 | 0 | 0 | 12998 | 10459 | 100000 |
| 12 | 1,609.32 | 0 | 0 | 0 | 14482 | 12260 | 100000 |
| 13 | 1,609.32 | 0 | 0 | 0 | 15962 | 14054 | 100000 |
| 14 | 1,609.32 | 0 | 0 | 0 | 17433 | 15844 | 100000 |
| 15 | 1,609.32 | 0 | 0 | 0 | 18889 | 17618 | 100000 |
| 16 | 1,609.32 | 0 | 0 | 0 | 20323 | 19369 | 100000 |
| 17 | 1,609.32 | 0 | 0 | 0 | 21718 | 21082 | 100000 |
| 18 | 1,609.32 | 0 | 0 | 0 | 23055 | 22737 | 100000 |
| 19 | 1,609.32 | 0 | 0 | 0 | 24307 | 24307 | 100000 |
| 20 | 1,609.32 | 0 | 0 | 0 | 25438 | 25438 | 100000 |
| 21 | 1,609.32 | 0 | 0 | 0 | 26416 | 26416 | 100000 |
| 22 | 1,609.32 | 0 | 0 | 0 | 27204 | 27204 | 100000 |
| 23 | 1,609.32 | 0 | 0 | 0 | 27760 | 27760 | 100000 |
| 24 | 1,609.32 | 0 | 0 | 0 | 28039 | 28039 | 100000 |
| 25 | 1,609.32 | 0 | 0 | 0 | 27986 | 27986 | 100000 |
| AGE 60 | .00 | 0 | 0 | 0 | 0 | 0 | 0 |
| AGE 62 | .00 | 0 | 0 | 0 | 0 | 0 | 0 |
| AGE 65 | 1,609.32 | 556 | 0 | 100000 | 1648 | 0 | 100000 |
| AGE 70 | 1,609.32 | 0 | 0 | 0 | 7360 | 3549 | 100000 |

*GUARANTEED BASIS:          4.00% INTEREST; GUARANTEED COST OF INSURANCE RATES.
 CURRENT ASSUMPTION BASIS:  6.25% INTEREST; CURRENT COST OF INSURANCE RATES.

INTEREST RATES ARE EFFECTIVE ANNUAL RATES APPLIED ON A DAILY BASIS TO THE ACCU-
MULATED VALUE AFTER THE DEDUCTION OF COST OF INSURANCE AND POLICY CHARGES. CASH
SURRENDER VALUES ARE ACCUMULATED VALUES NET OF ANY APPLICABLE SURRENDER CHARGE.

THE VALUES SHOWN ABOVE REFLECT THE DEDUCTION OF THE COST OF ANY RIDERS SHOWN IN
THE RIDER BENEFITS SECTION OF THIS ILLUSTRATION.

BENEFITS AND VALUES ILLUSTRATED ASSUME THAT: (1) CURRENT NONGUARANTEED
INTEREST RATES AND COST OF INSURANCE RATES REMAIN UNCHANGED (2) THERE ARE NO
POLICY LOANS (3) NO CHANGES ARE MADE IN THE INITIAL SPECIFIED AMOUNT, AND (4)
PREMIUM PAYMENTS SHOWN ARE RECEIVED BY US ON THE PLANNED PAYMENT DATE.

THE COLUMNS OF THIS ILLUSTRATION DO NOT REFLECT THE FACT THAT, BECAUSE OF
INTEREST, A DOLLAR IN THE FUTURE HAS LESS VALUE THAN A DOLLAR TODAY.

IMPORTANT NOTE - DURING THE THIRTY DAY PERIOD FROM THE DATE OF DELIVERY OF THIS
POLICY, IT MAY BE SURRENDERED TO THE COMPANY FOR CANCELLATION AND A FULL REFUND
OF ANY MONEY PAID.
07/16/2001                     MM0179075L                    PAGE 2 OF 4

PART 2: SUMMARY

BASED ON THE PLANNED PREMIUM AND THE CURRENT INTEREST RATES AND COST OF
INSURANCE RATES, INSURANCE UNDER THE POLICY WILL
TERMINATE ON 07/16/2034.

BASED ON THE PLANNED PREMIUM AND THE GUARANTEED INTEREST RATES AND COST OF
INSURANCE RATES, INSURANCE UNDER THE POLICY WILL
TERMINATE ON 09/16/2006.

COST INDEXES = SCI - SURRENDER COST INDEX, NPI - NET PAYMENT INDEX

|                                | 10 YR SCI | 10 YR NPI | 20 YR SCI | 20 YR NPI |
|--------------------------------|-----------|-----------|-----------|-----------|
| GUARANTEED ASSUMPTIONS BASIS   | .00       | .00       | .00       | .00       |
| CURRENT ASSUMPTIONS BASIS      | 9.53      | 16.09     | 8.77      | 16.09     |
| EQUIVALENT LEVEL               |           |           |           |           |
| NON-GUARANTEED ELEMENT:        | -9.53     | -16.09    | -8.77     | -16.09    |

AN EXPLANATION OF THE INTENDED USE OF THE EQUIVALENT LEVEL NON-GUARANTEED
ELEMENT AND THE LIFE INSURANCE COST INDEXES IS PROVIDED IN THE LIFE INSURANCE
BUYERS GUIDE.

### PART 3: POLICY CHARGES

PREMIUM PAYMENT CHARGE =  5.0% OF EACH PREMIUM RECEIVED

POLICY FEE =       $6.25 PER MONTH

MAXIMUM FEE FOR EACH WITHDRAWAL FROM THE ACCUMULATED VALUE = THE LESSER OF 5%
OF THE ACCUMULATED VALUE BEING WITHDRAWN OR $25.00.  THIS FEE WILL NOT APPLY
TO THE FIRST WITHDRAWAL IN EACH POLICY YEAR.

MAXIMUM SERVICE FEE FOR ILLUSTRATION OF FUTURE BENEFITS AND VALUES = $25.00
MAXIMUM REEVALUATION CHARGE TO APPLY FOR A CHANGE IN UNDERWRITING CLASS= $300.00

SURRENDER CHARGES ARE CHARGES YOU MAY PAY WHEN YOUR POLICY IS SURRENDERED.  THE
INITIAL CHARGE IS       $4,129 AND THE MAXIMUM CHARGE IS       $4,129.  SURRENDER
CHARGES ARE ASSESSED FOR 19 YEARS.  SEE THE TABLE OF SURRENDER CHARGES ON PAGES
5 AND 6 OF YOUR POLICY.

THE SURRENDER CHARGE FOR A SPECIFIED AMOUNT DECREASE EQUALS THE THEN CURRENT
SURRENDER CHARGE MULTIPLIED BY THE PRODUCT OF (1) THE PERCENTAGE OF DECREASE IN
THE SPECIFIED AMOUNT AND (2) THE POLICY YEAR FACTOR SHOWN BELOW.  WE WILL LIMIT
THE CHARGE, AS NEEDED, SO THAT THE REMAINING ACCUMULATED VALUE WILL BE LARGE
ENOUGH TO COVER TWO MONTHLY DEDUCTIONS.  EACH FUTURE SURRENDER CHARGE WILL BE
REDUCED IN PROPORTION.

| POLICY YEAR OF DECREASE | POLICY YEAR FACTOR |
|-------------------------|--------------------|
| 1 - 5                   | 1.00               |
| 6                       | 0.80               |
| 7                       | 0.60               |
| 8                       | 0.40               |
| 9                       | 0.20               |
| 10 & LATER              | 0.00               |

SURRENDER CHARGE FOR A WITHDRAWAL FROM THE ACCUMULATED VALUE =$0

THE COST OF INSURANCE RATE IS THE AMOUNT USED TO PAY FOR THE BASIC INSURANCE
DEATH BENEFIT.  THE CURRENT COST OF INSURANCE FOR YOUR POLICY IS       $728.35
FOR THE FIRST YEAR, SO THIS MUCH OF YOUR FIRST YEAR PREMIUM PAYS FOR THE POLICY
DEATH BENEFIT.  THIS AMOUNT MAY INCREASE AS THE INSURED GETS OLDER.  IN ADDI-
TION, THE COST OF INSURANCE RATES CAN CHANGE.  THE MAXIMUM FIRST YEAR COST OF
INSURANCE FOR THE INSURED'S CURRENT AGE IS       $1,154.12.  THE COMPANY REVIEWS
COST OF INSURANCE RATES AT LEAST ONCE EVERY FIVE YEARS.

THE INFORMATION IN THIS STATEMENT IS NOT INTENDED TO BE USED IN TAX PLANNING NOR IS IT INTENDED FOR THE PURPOSE OF PROVIDING TAX ADVICE.  THE POSSIBILITY OF FUTURE CHANGES IN TAX LAWS MUST BE RECOGNIZED AND TAKEN INTO CONSIDERATION.

# Single Insured
# Life Insurance Application    MM0218763 ✓

**AMERICAN GENERAL FINANCIAL GROUP**

☐ American General Life Insurance Company, Houston, TX
☑ The Old Line Life Insurance Company of America, Milwaukee, WI
☐ All American Life Insurance Company, Springfield, IL
☐ The Franklin Life Insurance Company, Springfield, IL
☐ The American Franklin Life Insurance Company, Springfield, IL

Members of American General Financial Group. American General Financial Group is a marketing name for American General Corporation and its subsidiaries.

In this application, the "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

## Personal Information

**Proposed insured**

Name *MARY CARTER*                          Social Security # 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

Address 4481 MATTY Cole, MEMPHIS TENN _____ Zip _____

Home phone # 901 542 0760          Work phone # _____

E-mail address _____

Sex: ☐ male ☑ female    Birthplace (city, state, country) ILL

Date of birth 8-28-37    Drivers license # C64059/37845    State ILL

U.S. citizen: ☑ yes ☐ no    If no, date of entry _____    Type of visa _____

Employer *Ret'red*

Occupation and duties _____    Income: _____

**Tobacco use**

Have you ever used any form of tobacco or nicotine products? ☐ yes ☑ no

Date of last use _____    Type of tobacco or nicotine products _____

## Product Information

Product name AG-CLASSIC

(If a variable product, complete appropriate supplement.)

Amount applied for $ 100,000    Reason for insurance (If more space is needed, use "Remarks" section.)

_____
_____
_____
_____

**Business coverage**

Does the proposed insured have an ownership interest in the business? ☐ yes ☑ no

(Complete only if applying for business coverage)

If yes, what is proposed insured's percentage of ownership? _____ %

If buy-sell, stock redemption, or key person insurance, will all partners or key people be covered? ☐ yes ☐ no

Describe any special circumstances. _____

_____

**Riders**

☐ Waiver of premium
☐ Waiver of monthly deduction
☐ Waiver of monthly guarantee premium

☐ Accidental death benefit $ _____
☐ Other rider(s) _____
_____

**Dividend options**

For participating policy only

☐ Cash ☐ Premium reduction ☐ Paid-up additions ☐ Deposit earning interest ☐ Other (explain)

**Death benefit options**

For universal life only

☑ Level                          ☐ Increasing

AGLC 0033-99                                                                 Page 1

Bene0014rts6:57A
502856 301306

**Primary**

Name _SARAH Filey_     Relationship _Awhh_     ____ % share

Name _____ Relationship _____ ____ % share

**Contingent**

Name _____ Relationship _____ ____ % share

Name _____ Relationship _____ ____ % share

**Complete if beneficiary is a trust.**

Exact name of trust _____ Date of trust _____

Trust ID # _____

Current trustee(s) _____

---

## Other life insurance or annuities

☐ **Check if none**

Indicate life insurance policies or annuities in force or pending for the proposed insured.

Type: *i* = individual, *b* = business, *g* = group, *p* = pending life insurance or annuity

| Policy number | Insurance company | Type | Year of issue | Amount | Replacement* |
|---|---|---|---|---|---|
| | | | | $ | ☐ yes ☐ no |
| | | | | $ | ☐ yes ☐ no |
| | | | | $ | ☐ yes ☐ no |
| | | | | $ | ☐ yes ☐ no |

*Replacement means that the insurance being applied for may replace, change, or use any monetary value of any existing or pending life insurance policy or annuity. If replacement may be involved, complete and submit replacement-related forms.*

---

## Owner

☐ Primary proposed insured    ☐ Someone other than a proposed insured or trust

☐ Trust:

**Complete if owner is a trust.**

Exact name of trust _____

Trust ID # _____ Date of trust _____

Current trustee(s) _____

**Complete if someone other than the proposed insured or trust is the owner.**

Name _____ Home phone # _____

Address _____ City, State _____ Zip _____

Social Security or Tax ID # _____ Date of birth _____

Relationship to proposed insured · _____

---

## Premium payment

☐ Single premium: $ _____ ☐ Modal premium: $ _____ ☐ Additional initial premium: $ _____

**Frequency of modal premium**

☑ Annual ☐ Semi-annual ☐ Quarterly ☐ Monthly    Amount submitted with application $ _____

**Method**

☐ Direct billing    ☐ Automatic bank draft

☐ List bill: number _____

☐ Other _____

**Premium payor**

*Complete if other than owner.*

Name _____ Social Security # _____

Address _____

Zip _____ Home phone # _____

---

## Remarks

_____

_____

_____

_____

_____

[illegible stamp]
50f5ff0e1307

have read the above statements or they have been read to me. The above statements are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B and, if applicable, Part C and related forms; and (2) shall be the basis for any policy issued on this application. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy, if it is within its contestable period and if such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA) for which all eligibility requirements are met, I understand and agree that no insurance will be in effect pursuant to this application, or under any policy issued by the Company, unless or until the

policy has been delivered and accepted, the full first modal premium for the issued policy has been paid, and there has been no change in the health of the proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to accept risks or pass upon insurability, make or modify contracts or waive any of the Company's rights or requirements.

**Insurance fraud**

Any person who, with intent to defraud or facilitate a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Signatures**

| | |
|---|---|
| X Owner | |
| Signed re (city, state) M Cmalin Temi | Date |
| X Witness | |
| X Proposed insured Mary Causale | Date 4/22/200 |
| (If under age 15, signature of parent or guardian) | Date 4/29/200 |

I certify that I have truthfully and accurately recorded on the Part B application the information supplied by the proposed insured.

Agent name (please print) A. MERCIER

Agent # 02394

State license # 004447805

X Agent [signature]     Date 4/22/...

## Limited Temporary Life Insurance Agreement

30/850 J01506

☐ American General Life Insurance Company, Houston, TX

☑ The Old Line Life Insurance Company of America, Milwaukee, WI

☐ All American Life Insurance Company, Springfield, IL

☐ The Franklin Life Insurance Company, Springfield, IL

☐ The American Franklin Life Insurance Company, Springfield, IL

In this application, the "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is solely responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

---

**Health and Age questions**

If the proposed insured answers "yes" to either question, temporary insurance is not available, this agreement will be void, and any payment submitted will be refunded.

During the last two years, have you had a heart attack, stroke, cancer, diabetes, or been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC); or have you been confined in a hospital or other health care facility or been advised to have any diagnostic test or surgery not yet performed?

Are you age 71 or above?

**Proposed insured**

☐ yes ☑ no

☑ yes ☐ no

---

**Premium payment**

Received $ _____   Date _____

All premium checks must be made payable to the Company. Do not make check payable to the agent or leave payee blank.

**Note:** Agent does not have the authority to accept a premium (including automatic bank draft check, salary savings, or government allotment) with this application if the conditions in "Authorization to obtain and disclose information and declaration" cannot be met or if any part of the "Health and Age questions" have been answered "yes" by the proposed insured, answered falsely, or left blank.

---

**Conditions of temporary life insurance**

1. The first modal premium must be paid with Part A of the application.
2. The answer to both of the above "Health and Age questions" must be "no".
3. Upon receiving proof of the death of the proposed insured during the period covered by this agreement, the total amount that will be paid by the Company pursuant to this and any other limited temporary life insurance agreements covering the proposed insured will be the lesser of:
   - the plan amount the proposed insured applied for; or
   - $500,000 plus the amount of any premium paid for coverage in excess of $500,000.

   The Company will pay this sum to the beneficiary named in the application. If death is due to suicide, payment will be limited to the amount of premium paid.
4. Coverage under this agreement will begin on the date the later of the following events have been completed:
   - this Limited Temporary Life Insurance Agreement (LTLIA) has been signed by the proposed insured; or
   - all required medical examinations have been taken.

5. Coverage under this agreement will end on the earliest of the following dates:
   - the date the policy as applied for is delivered and accepted;
   - the date the Company declines the application;
   - the date the Company states the application will not be considered on a prepaid basis;
   - 60 days from the date coverage begins under this agreement; or
   - the date the Company issues a policy other than as applied for.
6. The prepayment for this temporary insurance will be:
   - applied to the first premium due if the policy is issued as applied for; or
   - refunded if the Company declines the application or if the owner does not accept the policy; or
   - applied to the first premium if a policy is issued other than as applied for and is accepted.
7. Any misrepresentation contained in this agreement and relied on by the Company may be used to deny a claim on or void this agreement.

   No changes may be made in the terms and conditions of this agreement. No statement that tries to make such a change will bind the Company.

---

**X** Owner _____   Date _____

Signed at (city, state)  Memphis  Ten

**X** Witness _____   Date 4/22/200

**X** Proposed insured  Mary  Callall   Date 4/22/200

(If under age 15, signature of parent or guardian)

I certify that I have truthfully and accurately recorded on the LTLIA the information supplied by the proposed insured.

Agent name (please print)  H. MERCIEL

Agent #  02 394   State license #  004 44 7800

**X** Agent _____   Date 4/22/200

**Your Signature**

**Authorization to obtain and disclose information and declaration**

I hereby give my consent to any of the entities listed below to give to the Company or its legal representative, all information they have pertaining to: my medical consultations, treatments, or surgeries; hospital confinements, which concern my physical and mental condition; my use of drugs or alcohol; or any other non-medical information. Non-medical information could include items such as: personal finances; habits; hazardous avocations; motor vehicle or court records; or foreign travel, etc. The list of entities for which I give my consent to provide the information above is as follows: any physician or medical practitioner; any hospital, clinic or other health care facility; any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB).

I understand the information obtained will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy. The Company may disclose such information and any information developed during its evaluation of my application to: its reinsurers; MIB; other insurance companies; other persons or organizations performing business or legal services in connection with my application or claim; me; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I, as well as any person authorized to act on my behalf, may upon written request, obtain a copy of this consent from the Company.

This consent will be valid for 30 months from the date of this application. I agree that a photocopy of this consent will be as valid as the original. I authorize the Company to obtain an investigative consumer report on me. I understand that I may: request to be interviewed in connection with the preparation of the report; and receive, upon written request, a copy of such report.

☐ Check if you wish to be interviewed.

I have read the above statements or they have been read to me. The above statements are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and, if applicable, Part C and related forms; and (2) shall be the basis for any policy issued on this application. I understand that any misrepresentation contained in this application and relied on by the Company may be used to: reduce or deny a claim or void the policy, if it is within its contestable period and if such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA) for which all eligibility requirements are met, I understand and agree that no insurance will be in effect pursuant to this application, or under any policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of any proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the Company's rights or requirements.

I have received a copy of the Notice to Proposed Insured regarding Fair Credit Reporting Act; the MIB; Insurance information practices; and telephone interview information.

Limited Temporary Life Insurance - If eligible, I have received and accepted the LTLIA. Temporary insurance is available only if: the full first modal premium is submitted with this application and only "no" answers have been given by the proposed insured to the "Health and Age" questions in the LTLIA.

Under penalties of perjury, I certify: that the number shown on this application is my correct Social Security or Tax ID number; and that I am not subject to backup withholding under Section 3405(a)(1)(C) of the Internal Revenue Code. The Internal Revenue Service does not require my consent to any provision of this document other than the certifications required to avoid backup withholding.

**Signatures**

X Owner _____ Date _____

Signed at (city, state) _Memphis, Tenn_____

X Witness _____ Date 4/22/200/

X Proposed insured _Mary Cannole_____ Date 4/22/200/

(If under age 15, signature of parent or guardian)

If the Company needs to contact the proposed insured, when would be the best time to call ?

Time _____ Day of the week _____

Date _____ Phone number _____

I certify that I have truthfully and accurately recorded on the Part A application the information supplied by the proposed insured.

Agent name (please print) _A. MERCiEr_____

Agent # _02-394_____  State license # _00444 7801_____

X Agent _____ Date 4/22/200/

# Single Insured
# Life Insurance Application

AMERICAN
GENERAL
FINANCIAL GROUP

- ☐ American General Life Insurance Company, Houston, TX
- ☒ The Old Line Life Insurance Company of America, Milwaukee, WI
- ☐ All American Life Insurance Company, Springfield, IL
- ☐ The Franklin Life Insurance Company, Springfield, IL        mmo818763L
- ☐ The American Franklin Life Insurance Company, Springfield, IL

Members of American General Financial Group. American General Financial Group is a marketing name for American General Corporation and its subsidiaries.

In this application, the "Company" refers to the insurance company whose name is checked above.

The insurance company checked above is <u>solely</u> responsible for the obligation and payment of benefits under any policy that it may issue. No other company shown is responsible for such obligations or payments.

## Personal and Employer Information

**Proposed insured**

Name  MARY   K.  CARROLL

Social Security #  431 - 37 - 4157                    Date of birth  08/28/1937

Employer  HOMEMAKER

Employer address

Zip _____ Phone # _____                    Length of employment

Net worth $ _____                    Household income $ _____

## Background Information

*Provide any additional details to "yes" answers for questions 1–6 in the "Remarks" section on page 4.*

MARY   K.  CARROLL
**Proposed insured**

1. Do you intend to travel or reside outside of the United States or Canada within the next two years?

   ☐ yes  ☒ no

   Country, purpose, and date _____

2. In the past five years, have you participated in, or do you intend to participate in: any flights as a trainee, pilot or crew member; scuba diving; skydiving or parachuting; ultralight aviation; auto racing; cave exploration; hang gliding; boat racing; mountaineering; or other hazardous activities?

   ☐ yes  ☒ no   *If yes, complete the Aviation and/or Avocation Questionnaire.*

3. Has proposed insured:

   a) during the past 90 days submitted an application for life insurance to any other company or begun the process of filling out an application?

   ☐ yes  ☒ no   *If yes, explain.*

   b) ever had a life or disability insurance application modified, rated, declined, postponed, withdrawn, canceled, or refused for renewal?

   ☐ yes  ☒ no   *If yes, explain.*

AGLC 0034-99                                                                                    Page 1

**Background Information continued**

4. Have you ever filed for bankruptcy?

☐ yes ☒ no

Type of bankruptcy _____

Date _____ Date of discharge _____

5. In the past five years, have you been charged with or convicted of driving under the influence of alcohol or drugs, or had two or more driving violations?

☐ yes ☒ no  *If yes, explain.*

State _____ License # _____

6. Have you ever been convicted of or pled guilty or "no contest" to a felony or do you have any such charge pending against you?

☐ yes ☒ no  *If yes, explain.*

State _____ Date _____

## Medical History

*Provide any additional details for answers to questions 7-9 in the "Remarks" section on page 4.*

**Proposed insured**

7. Name and address of your personal physician(s).  *Write "none" if you don't have one.*

DR. HENRY WAOSWORTH    UNABLE TO FIND ADDRESS

Date, reason, findings of last visit.  9 mos Ago  for  BP CHECK UP

REFILLED  ZIAC  10 mg / 6.25 mg  po  ½ tab ꝗ day

8. Height and weight.

ft.  5    in.  2    lbs.  140

Have you had any weight change in excess of 10 lbs. in the past year?

☐ yes ☐ no  *If yes, explain.* _____

9. What is your family history?

**Proposed insured**

| | Age if living | Age at death | Current condition or cause of death |
|---|---|---|---|
| Father | | 70's | PNEUMONIA |
| Mother | 97 | | GOOD HEALTH / HTN |

Medical History Continued

*For questions 10-16, provide additional information as requested in the "Remarks" section on page 4.*

MARY K. CARROLL
**Proposed Insured** .

**10.** Have you ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

a) any heart disease, heart attack, chest pain, irregular heart beat, high cholesterol, high blood pressure, or any other disorder of the heart or blood vessels? ☒ yes ☐ no

b) any blood clot, aneurysm, stroke, or other disease, disorder, or blockage of the arteries or veins? ☐ yes ☒ no

c) any cancer, cysts, tumors, masses, or other such abnormalities? ☐ yes ☒ no

d) diabetes, disorder of the thyroid or other glands, immune system disorder, or blood or lymphatic system disorder? ☐ yes ☒ no

e) any disorder of the stomach or liver, colitis, hepatitis, or any disorder of the digestive system or other such organs? ☐ yes ☒ no

f) any disorder of the kidneys, prostate, urinary system, or reproductive organs? ☐ yes ☒ no

g) any asthma, bronchitis, emphysema, sleep apnea, or other breathing or lung disorders? ☐ yes ☒ no

h) any brain or spinal cord disorders, seizures, or other nervous system abnormalities including mental and nervous disorders? ☐ yes ☒ no

i) arthritis, muscle disorders, or other bone or joint disorders? ☐ yes ☒ no

**11.** Are you currently taking any medication, treatment, or therapy, or are you under medical observation? ☒ yes ☐ no

**12.** Have you in the past three years had:

a) fainting spells, nervous disorders, headaches, convulsions, or paralysis? ☐ yes ☒ no

b) any pain or discomfort in the chest or shortness of breath? ☐ yes ☒ no

c) disorders of the stomach, intestines, or rectum, or blood in the urine? ☐ yes ☒ no

**13.** Have you ever:

a) sought or received advice, counseling, or treatment by a medical professional for the use of alcohol or drugs including prescription drugs? ☐ yes ☒ no

b) used cocaine, marijuana, heroin, controlled substances, or any other drug except as legally prescribed by a physician? ☐ yes ☒ no

*(If "yes" answered to a or b, complete Drug/Alcohol Questionnaire.)*

**14.** Have you ever been diagnosed or treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)? ☐ yes ☒ no

**15.** In the past 10 years, have you:

a) been hospitalized, consulted a health care provider, or had any illness, injury, or surgery? ☐ yes ☒ no

b) had any laboratory tests, treatments, or diagnostic procedures, including x-rays, scans, or EKGs? ☐ yes ☒ no

c) been advised to have any diagnostic test, hospitalization, or treatment that was not completed? ☐ yes ☒ no

d) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability, or impaired condition? ☐ yes ☒ no

**Medical History continued**

MARY K. CARROLL
**Proposed insured**

**16.** Do you have any symptoms or knowledge of any other condition that is not disclosed above?

☐ yes  ☒ no

## Remarks

*Identify question number and provide details to any questions answered "yes" in the "Background Information" and "Medical History" sections. Include such details as: date of first diagnosis; name and address of doctor; tests performed; test results; medication(s) or recommended treatment. If necessary, attach additional pages to record responses.*

10A. Dx c̄ HTN approx 3 years ago per DR. HENRY WADSWORTH.
TAKES ZIAC 10 mg / 6.25 mg ½ tab po q̄ day. BP c̄/in
NORMAL RANGE c̄ diet, exercise and medication. HAS
Routine check up c̄ DR. WADSWORTH q̄ year.
11 SEE ABOVE.

**Your Signature**

**Statements by the proposed insured**

I have read the above statements or they have been read to me. The above statements are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and, if applicable, Part C and related forms; and (2) shall be the basis for any policy issued on this application. I understand that any misrepresentation contained in this application and relied on by the Company may be used to: reduce or deny a claim or void the policy, if it is within its contestable period and if such misrepresentation materially affects the acceptance of the risk. Except as may be provided in a Limited Temporary Life Insurance Agreement (LTLIA) for which all eligibility requirements are met, I understand and agree that no insurance will be in effect pursuant to this application, or under any policy issued by the Company, unless or until: the policy has been delivered and accepted; the full first modal premium for the issued policy has been paid; and there has been no change in the health of the proposed insured that would change the answers to any questions in the application.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the Company's rights or requirements.

**Insurance fraud**

Any person who, with intent to defraud or facilitate a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud.

**Signatures**

X Owner _____

Signed at (city, state)  MEMPHIS  TN

Date _____

X Witness _____  Date 5/26/01

X Proposed insured  Mary M. Caudell  Date 5-26-01
(If under age 15, signature of parent or guardian)

**I certify that I have truthfully and accurately recorded on the Part B application the information supplied by the proposed insured.**

Agent name (please print) _____

Agent # _____  State license # _____

X Agent _____  Date _____

AGLC 0034-99